UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE COMPANY (f/k/a CHARTIS SPECIALTY INSURANCE COMPANY) | * * * * * | CIVIL ACTION NO. |
| | * | JUDGE |
| VERSUS | * * | |
| | * | MAGISTRATE |
| KNIGHT OIL TOOLS, INC. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR DECLARATORY JUDGMENT

AIG Specialty Insurance Company ("ASIC"), formerly known as Chartis Specialty Insurance Company ("CSIC"), brings this action for declaratory judgment against defendant, Knight Oil Tools, Inc. ("Knight").

1.

ASIC brings this Complaint for Declaratory Judgment in accordance with 28 U.S.C. §§ 2201 and 2202. An actual case or controversy exists between ASIC and Knight.

## PARTIES

2.

A.  Plaintiff, AIG Specialty Insurance Company, is a foreign insurance company organized under the laws of the State of Illinois with its principal place of business in New York.

B.  Defendant, Knight Oil Tools, Inc., was, at all relevant times, organized and incorporated in the State of Louisiana with its principal place of business in the State of Louisiana. Knight Oil Tools, Inc. conducts business in Louisiana and has a registered office and principal business establishment in Louisiana.

## JURISDICTION

3.

This complaint is brought pursuant to the Declaratory Judgment Act, Title §§ 2201, 2202 of the United States Code, because there is an actual controversy among the parties. This Court also has jurisdiction over this complaint pursuant to 28 U.S.C. 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.

## VENUE

4.

Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because the Policy at issue was issued in the State of Louisiana.

## BACKGROUND

### The Underlying Lawsuit

5.

On or about December 23, 2010, Rippy Oil Company; Rippy Interest LLC; The Genecov Group, Inc.; and John D. Proctor (collectively "Rippy") filed suit against Knight and Pioneer Drilling in the 12th Judicial District Court in Leon, Texas ("the Underlying Lawsuit"). See, Exhibit A. Rippy filed an amended complaint on October 26, 2016. See, Exhibit B.

6.

According to the petition, Rippy sought drilling services and drill pipe for use in its well known as the Easterling No. 1-H well located in Leon County, Texas ("the Well"). The Well was allegedly the first of a multi-well program planned for the Aguila Vado Field, which comprised approximately 14,000 acres in Leon County.

7.

Knight supplied the drill pipe, which was utilized by Pioneer, and allegedly represented that the drill pipe satisfied API Specification 5D 3 1/2" O.D. 13.30-PPF Grade S-135 drill pipe.

8.

Knight allegedly also marked the pipe as API premium and represented that the pipe had been inspected.

9.

According to Rippy, Knight and Pioneer knew the purpose for which Rippy sought the drilling pipe and the drilling services and knew that Rippy was relying on Knight and Pioneer to furnish drill pipe and drilling services suitable and fit for that purpose.

10.

According to Rippy, on May 11, 2010, Pioneer was using the drill pipe supplied by Knight during drilling operations when that drill pipe catastrophically failed, destroying a valuable portion of the Well, which prevented its completion and subsequent production of oil reserves from the target intervals.

11.

According to the petition, after notifying Knight of the drill pipe failure, Rippy attempted to mitigate its damages by attempting to fish the failed drilled pipe, separated drill pipe string, bottom-hole assembly, and drill bit.

12.

According to the petition, despite Rippy's salvage efforts, Rippy "could not reproduce [the Well] with resulting loss of use of well bore and hydrocarbon reserves…."

13.

In the Underlying Lawsuit, Rippy claimed that Knight was negligent in the selection, inspection, labeling, marking, distribution, representation, and use of the drill pipe.  Rippy also made a products liability claim against Knight, claiming that the drill pipe was defective in that it failed to conform to its design, specifications, and represented qualities and characteristics; was not properly API inspected or labeled; was not API Premium Class; had undersized O.D. and I.D. tool joints that exceeded the maximum I.D. for API Premium Class drill pipe; and was excessively worn, corroded, pitted, and cracked.  Rippy also asserted claims for breach of express warranty, breach of implied warranty of merchantability and fitness for a particular purpose, violation of Texas Deceptive Trade Practices Act, gross negligence, breach of contract, fraud, aiding and abetting, civil conspiracy, concert of action, spoliation, and successor liability.

14.

As damages, Rippy sought cash market value damages for destruction of that portion of the Well, which is the market value of the Well less any salvage value, because reproducing that portion of the Well was impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the Well.  In the alternative, and should it be determined that the Well could be reproduced, Rippy sought recovery of the reasonable and necessary cost to reproduce the Well.  Rippy also sought direct and/or consequential damages, including lost profits, loss of use, the loss of the lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole—all of which were allegedly caused by the drill pipe failure.  In addition, Rippy sought punitive damages and attorneys' fees.

**The Lifting of the Bankruptcy Stay**

15.

On October 24, 2017, the United States District Court for the Western District of Louisiana lifted the automatic bankruptcy stay for the limited purpose of allowing the prosecution of *Rippy Oil Co., et al. v. Knight Oil Tools, Inc., et al.*, Case No. 0-10-498, pending in the 369th JDC in Leon County, Texas.  Pursuant to the Order of the Bankruptcy Court, Rippy was only entitled to seek recovery to the extent the claims were covered by Knight's applicable insurance policies and that Knight's liability was to be limited to the extent of any coverage provided by Knight's insurance policies.  See, Exhibit C.

**The Judgment**

16.

The Underlying Lawsuit proceeded to trial before a jury on May 1, 2018.  On May 10, 2018, after the close of the evidence at trial, the jury found that Knight breached its implied warranty of fitness for a particular purpose and made a negligent misrepresentation with respect to the condition of the drill pipe.  The jury found that neither Rippy nor Gyrodata contributed to the separation of the drill pipe.  See, Exhibit D.

17.

The jury found that the Well was not capable of being reproduced by drilling another well and that the reasonable and necessary costs for drilling and equipping the Well were $1.5 million.  The jury also found that the fair market value of the Well before the pipe separation was $5.9 million and that the fair market value of the Well after the pipe separation was $0.  The jury also found that Rippy failed to pay Knight $361,356.87 in invoices.

18.

Rippy filed a Motion for Judgment, and on June 4, 2018, the court entered a Final Judgment ordering Knight to pay Rippy $5,538,643.13, plus prejudgment interest in the amount of $2,056,885.14 through June 1, 2017 and an additional $758.72 per day until the day before the final judgment is signed, with 5% interest, compounded annually, in post-judgment interest. *See,* Exhibit E.

19.

On or about July 3, 2018, Knight filed a Motion to Disregard Certain Jury Findings and for Entry of Judgment.  See, Exhibit F.  This motion was not granted.

20.

On or about July 3, 2018, Knight filed a Motion for New Trial and an Alternative Motion for Remitittur.  See, Exhibit G.  This motion was not granted.

21.

Knight appealed the Judgment to the Court of Appeals, Tenth District of Texas, Case No. 10-18-00284-cv.

22.

The appellate court affirmed the trial court's Judgment on December 30, 2020. *See,* Exhibit H.

23.

On rehearing, the appellate court affirmed the trial court's Judgment on November 10, 2021. *See*, Exhibit I.

24.

ACE American Insurance Company ("ACE"), Knight's primary insurer, has not exhausted its $1 million CGL limits of liability.

## The ASIC Policy

25.

Chartis Specialty Insurance Company, now known as AIG Specialty Insurance Company, issued Commercial Umbrella Liability Policy No. BE 13074559 to Knight Oil Tools, Inc. in effect from March 31, 2010 to March 31, 2011 ("the ASIC Policy").  See, Exhibit J.

26.

The ASIC Policy is subject to a $25 million per occurrence/general aggregate limit of liability in excess of the $1 million commercial general liability policy issued by ACE.

27.

In relevant part, the ASIC Policy provides as follows:

**I.  INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY**

A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B. This policy applies, only if:

1. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

\*\*\*

7

### III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

\*\*\*

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

1. investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

    a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    b. premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    c. all court costs taxed against the **Insured** in the **Suit**;

    d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

    e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    f. the **Insured's** expenses incurred at our request or with our consent.

### IV. LIMITS OF INSURANCE

\*\*\*

M. We will not make any payment under this policy unless and until:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss**; or

2. the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

\*\*\*

## V. EXCLUSIONS

\*\*\*

D. **Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

\*\*\*

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

\*\*\*

## VII. DEFINITIONS

\*\*\*

L. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

\*\*\*

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

\*\*\*

S. **Occurrence** means:

1. as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

\*\*\*

Y. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

\*\*\*

\*\*\*

### Architects and Engineers Professional Liability Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Architects and Engineers**

This insurance does not apply to any liability arising out of any act, error or omission, malpractice or mistake committed or alleged to have been committed by or on behalf of the **Insured** in the performance of architectural or engineering services, including but not limited to:

1. the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

2. supervisory, inspection or engineering services.

It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

\*\*\*

### SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC                                                           Policy Number: BE     13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY (Knight Oil Tools, Inc.) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $10,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY |

Defense Expenses are in addition to the limit

**Professional Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Professional Liability**

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

\*\*\*

**Testing or Consulting Errors and Omissions Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Testing or consulting**

This insurance does not apply to **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** arising out of:

1. An error, omission, defect or deficiency in:

    a. any test performed; or

    b. an evaluation, a consultation or advice given,

    by or on behalf of any **Insured;**

2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the **Insured's** interpretation of such data.

\*\*\*

# THE DISPUTE
28.

ASIC avers that a real and justiciable controversy exists between ASIC and Knight with regard to ASIC's obligations under the ASIC Policy, as follows:

11

## COUNT ONE - DECLARATORY RELIEF
### (Coverage under the ASIC Policy—The Impaired Property Exclusion)

29.

ASIC re-alleges and incorporates by reference paragraphs 1-28 of this Complaint, as if set forth here in full.

30.

The ASIC Policy excludes coverage for Knight's liability.

31.

Pursuant to Exclusion D. Damage to Impaired Property or Property Not Physically Injured, the Policy excludes coverage for Property Damage to Impaired Property or to property that has not been physically injured, arising out of:

a. a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

b. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

32.

Here, the testimony and exhibits introduced at trial failed to find any physical damage to the well or any surrounding property.

33.

Further, the jury concluded that the Property Damage (i.e., loss of use) relating to the property that was not physically injured (i.e., the Well) arose out of a defect, deficiency, inadequacy or dangerous condition in Knight's Product or Work.

34.

In addition, the jury concluded that the Property Damage (i.e., loss of use) relating to the property that was not physically injured (i.e., the Well) arose out of a failure by Knight to perform a contract or agreement in accordance with its terms.

35.

Because Knight's liability is excluded from coverage by operation of the Damage to Impaired Property or Property Not Physically Injured Exclusion, coverage is not available under the ASIC Policy.

36.

Accordingly, ASIC seeks a declaration that coverage is not owed to Knight under the ASIC Policy.

**COUNT TWO - DECLARATORY RELIEF**
**(Coverage under the ASIC Policy—Lack of an Occurrence)**

37.

ASIC re-alleges and incorporates by reference paragraphs 1-36 of this Complaint, as if set forth here in full.

38.

The ASIC Policy only provides coverage, if at all, for Property Damage caused by an Occurrence, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

39.

Here, the jury found that Knight breached its implied warranty of fitness for a particular purpose and that Knight made negligent misrepresentations with respect to the condition of the pipe.

40.

The alleged Property Damage was therefore not caused by an Occurrence, as that term is defined by the ASIC Policy, and as such, coverage is not available under the ASIC Policy.

41.

Accordingly, ASIC seeks a declaration that Knight's liability was not caused by an Occurrence and that coverage is therefore not owed to Knight under the ASIC Policy.

**COUNT THREE - DECLARATORY RELIEF**
**(Coverage under the ASIC Policy—Expected or Intended Exclusion)**

42.

ASIC re-alleges and incorporates by reference paragraphs 1-41 of this Complaint, as if set forth here in full.

43.

The ASIC Policy excludes coverage for damage expected or intended from the standpoint of the insured.

44.

Here, the jury found that Knight breached its implied warranty of fitness for a particular purpose and that Knight made negligent misrepresentations with respect to the condition of the pipe.

45.

Because Knight expected or intended Rippy's damages, coverage is not available under the ASIC Policy.

46.

Accordingly, ASIC seeks a declaration that coverage is therefore not available under the ASIC Policy.

## COUNT FOUR - DECLARATORY RELIEF
(Coverage under the ASIC Policy—Professional Liability Exclusion)

47.

ASIC re-alleges and incorporates by reference paragraphs 1-46 of this Complaint, as if set forth here in full.

48.

The ASIC Policy excludes coverage for any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the insured or any person for whom the insured is legally responsible.

49.

Because Knight's liability arose out of an act, error, omission, malpractice or mistake of a professional nature committed by Knight or any person for whom Knight is legally responsible, coverage is not available under the ASIC Policy.

50.

Accordingly, ASIC seeks a declaration that the Professional Liability Exclusion applies and that coverage is therefore not available under the ASIC Policy.

## COUNT FIVE - DECLARATORY RELIEF
(Coverage under the ASIC Policy—Testing or Consulting Errors and Omissions Exclusion)

51.

ASIC re-alleges and incorporates by reference paragraphs 1-50 of this Complaint, as if set forth here in full.

52.

The ASIC Policy excludes coverage for Property Damage arising out of:

1. Any error, omission, defect or deficiency in:

      a. Any test performed;

      b. An evaluation, a consultation or advice given,

     By or on behalf of any insured.

2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of such data.

### 53.

Because the Property Damage arose out of an error, omission, defect or deficiency in a test performed or an evaluation, consultation or advice given by Knight, coverage is not available under the ASIC Policy.

### 54.

Accordingly, ASIC seeks a declaration that the ASIC Policy does not owe coverage for Knight's liability.

### 55.

**COUNT SIX - DECLARATORY RELIEF**
**(The Architects and Engineers Professional Liability Exclusion)**

ASIC re-alleges and incorporates by reference paragraphs 1-54 of this Complaint, as if set forth here in full.

### 56.

The ASIC Policy excludes coverage for any liability arising out of any act, error or omission, malpractice or mistake committed or alleged to have been committed by or on behalf of Knight in the performance of architectural or engineering services.

57.

Because Knight's liability arose out of Knight's engineering services, the ASIC Policy does not provide coverage.

58.

Accordingly, ASIC seeks a declaration that the ASIC Policy does not owe coverage for Knight's liability.

## COUNT SEVEN - DECLARATORY RELIEF
### (Coverage under the ASIC Excess Policy—Exhaustion)

59.

ASIC re-alleges and incorporates by reference paragraphs 1-58 of this Complaint, as if set forth here in full.

60.

The ASIC Policy is only potentially triggered, if at all, when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss, as that term is defined by the ASIC Policy, to which the ASIC Policy applies and any applicable, Other Insurance has been exhausted by the payment of Loss.

61.

Accordingly, ASIC seeks a declaration that coverage under the ASIC Policy is not triggered, if at all, until the limits of liability of the Scheduled Underlying Insurance and any applicable Other Insurance are exhausted by payment of Loss.

## RELIEF REQUESTED

WHEREFORE, AIG Specialty Insurance Company prays that this Complaint for Declaratory Judgment be filed and served, and that the Court finds and declares that:

Coverage under the ASIC Policy is not even potentially triggered unless and until the limits of liability of the Scheduled Underlying Insurance and any other applicable Other Insurance are exhausted by payment of Loss;

There is no coverage under the ASIC Policy for Knight's liability; and

AIG Specialty Insurance Company is entitled to all such other, further or different relief as the Court deems just and equitable, including attorney's fees and costs, to the extent permitted by law.

Respectfully Submitted,

*/s/ Robert I. Siegel*
ROBERT I. SIEGEL (#10263)
ALISTAIR M. WARD (#24693)
**GIEGER, LABORDE & LAPEROUSE, LLC**
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile:    (504) 561-1011
E-mail: rsiegel@glllaw.com
E-mail: award@glllaw.com
Attorneys for AIG Specialty Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December 2021, I electronically filed this **COMPLAINT FOR DECLARATORY JUDGMENT** with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties to this proceeding.

*/s/ Robert I. Siegel*
ROBERT I. SIEGEL