

### IN THE
### TENTH COURT OF APPEALS

_____

### No. 10-18-00284-CV

**KNIGHT OIL TOOLS, INC.,**

**Appellant**

**v.**

**RIPPY OIL COMPANY, RIPPY INTEREST LLC,
THE GENECOV GROUP, INC., AND JOHN D. PROCTOR,**

**Appellees**

_____

### From the 278th District Court
### Leon County, Texas
### Trial Court No. O-10-498

_____

## MEMORANDUM OPINION

_____

Rippy Oil Company brought suit against Knight Oil Tools, Inc. for damages that occurred when a drill pipe broke while drilling a well.  Knight filed a counterclaim against Rippy for unpaid invoices.  The jury found Knight liable for damages and also found Rippy failed to pay certain invoices.  The trial court entered judgment in favor of Rippy for $5,538,643.13.  We affirm.

EXHIBIT

H

## BACKGROUND FACTS

Knight Oil Tools rents drill pipe to oil companies and oil well operators for drilling oil and gas wells.  Rippy Oil Company made plans to drill a well in the Eagle Ford Shale and contacted Knight to supply pipe for drilling the horizontal portion of the Easterling 1-H well.  Rippy hired Leo Wiggins as a well consultant, and Larry Elkins to assist Wiggins.  Wiggins and Elkins had authority to order equipment as needed for drilling and to accept delivery.

Knight delivered pipe and other equipment to the Easterling 1-H well site with a delivery ticket and sent the invoice to the main office.  The delivery ticket contained language that the pipe measurements complied with the dimensions for American Petroleum Institute (A.P.I.) premium class and/or Knight Oil Tools value.  The testimony at trial established that pipe marked with two white bands meets the standards for A.P.I. premium pipe.  The pipe delivered by Knight was marked with two white bands, but the record shows that some of the pipe delivered did not comply with the dimensions for A.P.I. premium class pipe.

On May 11, 2010, one of the drill pipes supplied by Knight broke while it was in the well.  The parties agree that the pipe failure was caused by fatigue.  Rippy was not able to recover the broken pipe and the drill string beyond it and eventually had to abandon the Easterling 1-H.  Rippy attempted to drill an offset well, Easterling 2-H, but that effort was unsuccessful.

Rippy filed suit against Knight to recover damages for the lost well, and Knight filed a counterclaim to recover for unpaid invoices.  The jury found in favor of Rippy on submitted questions of negligent representation and breach of implied warranty of fitness for a particular purpose.  The jury further found in favor of Knight on unpaid invoices.  The trial court entered judgment in favor of Rippy.

### SUFFICIENCY OF THE EVIDENCE

The case was submitted to the jury on two theories of liability: (1) negligent misrepresentation, and (2) breach of warranty of fitness for a particular purpose.  In its first issue, Knight argues that the evidence is legally and factually insufficient to support the jury's findings regarding negligent misrepresentation or causation of the well failure under any theory.  Specifically, Knight argues that the evidence was insufficient to prove Knight's conduct was the proximate cause of the loss of the well under either theory submitted to the jury.  In the second issue, Knight argues that the evidence is legally and factually insufficient to support the jury's finding on breach of warranty of fitness for a particular purpose.

In reviewing the jury's verdict for the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex.2005).  We must not substitute our opinion on witness credibility for that of the jury.  *Id*. at 816-17.

Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony.  They may choose to believe one witness and disbelieve another.  Reviewing courts cannot impose their own opinions to the contrary.

Most credibility questions are implicit rather than explicit in a jury's verdict.  Thus, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so.  Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it.

...

Nor is it necessary to have testimony from both parties before jurors may disbelieve either.  Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses.  Even uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone.

Of course, "[t]he jury's decisions regarding credibility must be reasonable."  Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted.  And as noted above, they are not free to believe testimony that is conclusively negated by undisputed facts.  But whenever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review.

*Id*. at 819-20 (footnotes and citations omitted).

In a factual-sufficiency challenge, an appellate court must consider and weigh all of the evidence.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).  The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Id*.  We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would support a different result.  *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App. —Houston [14th Dist.] 2009, no pet.).  If we determine the evidence is factually

insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment.  *Id*.

NEGLIGENT MISREPRESENTATION

The jury was asked in Question 2 whether Knight Tool made a negligent representation with respect to the condition of the drill pipe on which Rippy justifiably relied and was the proximate cause of the drill pipe separation.  The jury answered "yes," and Knight challenges the jury finding.

The elements of negligent misrepresentation are: (1) a defendant provided information in the course of his business; (2) the information supplied was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information;  and (5) the plaintiff suffered damages proximately caused by the reliance.  *Retherford v. Castron*, 378 S.W.3d 29, 37 (Tex. App. — Waco 2012, pet. den'd); *Larsen v. Carlene Langford & Associates*, 41 S.W.3d 245, 249-50 (Tex. App. —Waco 2001, pet. den'd).

Charles Rippy, the President of Rippy Oil, testified that Rippy requested A.P.I. premium pipe for the Easterling 1-H well.  The evidence shows that A.P.I. premium pipe is marked with two white bands to signify that it is premium.  Daniel Rogers, a corporate representative for Knight, testified by deposition that if the drill pipe supplied by Knight had two white bands, the customer could rely on the pipe being A.P.I. premium pipe and

that "the whole world" could rely on it being premium pipe.  Rogers further stated that Knight intended to represent the pipe as being inspected to A.P.I. premium standards.

The record shows that the pipe that failed did not meet A.P.I. premium standards. The pipe broke in the well, and the well was lost.  Viewing the evidence in the light most favorable to the jury's verdict, we find that a rational factfinder could conclude that Knight made a false representation about the quality of the drill pipe, that Knight did not use reasonable care in obtaining or communicating the information, and that Rippy justifiably relied on the representation.

We now address whether the evidence supports the jury's finding on proximate cause.  The components of proximate cause are cause-in-fact and foreseeability.  *See Western Investments, Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005).  The cause-in-fact element is satisfied by proof that (1) the act was a substantial factor in bringing about the harm at issue, and (2) absent the act ("but for" the act), the harm would not have occurred.  *HMC Hotel Props. II Ltd. Partnership v. Keystone-Texas Prop. Holding Corporation*, 439 S.W.3d 910, 913 (Tex. 2014).  These elements cannot be established by mere conjecture, guess, or speculation.  *Id*.

Charles Rippy testified that after the lawsuit was filed, Knight provided serial numbers for some of the drill pipe.  Based on those serial numbers, evidence showed that Knight Oil purchased the drill pipe in 1993, and delivered the pipe to the well site in April 2010.  Charles Rippy further testified that some of the drill pipe had not been inspected

by Knight in over a year.  The jury heard evidence that the fatigue cracks in the pipe were present before the pipe was used by Rippy.  Hilton Prejean, an A.P.I. member who helped write the A.P.I. standards, testified by deposition that the pipe that broke was "scrap tool joint" with excessive wear.  Prajean found that the tool joint on the pipe had pre-existing cracks before being used at the Rippy well and that it "should not have been on location at all."

Knight argues that Rippy was required to produce evidence that the pipe would not have failed assuming it met A.P.I. premium standards citing *BIC Pen Corporation v. Carter*, 346 S.W.3d 533 (Tex. 2011) as authority.  In *BIC*, a six year-old girl was severely burned when her five year-old brother started a fire with a BIC lighter.  The plaintiff alleged that the manufacturing defects in the lighter were the cause of the fire and the girl's injuries.  The Court stated that there must have been some evidence that the fire that burned the little girl started because of the specific manufacturing defects and that absent those defects her injuries would not have occurred.  *Id*. at 542.  The Court concluded that the evidence was insufficient to support the finding that manufacturing defects in BIC's Subject Lighter were a cause-in-fact of the injuries.  *Id*. at 545.

We do not agree with Knight's premise that under *BIC*, Rippy must show that the pipe would not have failed assuming it met A.P.I. premium standards.  Rather, pursuant to *BIC*, Rippy must show that the condition of the pipe supplied by Knight was a

substantial factor in the loss of the well and that absent the condition of the pipe, the harm would not have occurred.

The parties agree that the pipe broke as a result of fatigue failure. Rippy presented evidence that the tool joint was worn excessively, did not meet A.P.I. premium standards, and had pre-existing cracks before being used in the Rippy well. Although Knight presented evidence that other factors could have caused the fatigue failure, we must not substitute our opinion on witness credibility for that of the jury. *City of Keller v. Wilson*, 168 S.W.3d at 816-17.

We find that the evidence is legally sufficient to support the jury's finding on negligent representation. Additionally, we cannot say that the jury's verdict as to this claim is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

We overrule Knight's first issue as to the sufficiency of the evidence on proximate cause and negligent misrepresentation. When the judgment rests on multiple theories of recovery, we need not address all causes of action if any one theory is valid. *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 870 (Tex. App. —Dallas 2008, no pet.); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App. — Waco 2000, pet. den'd). Therefore, we need not address Knight's second issue on appeal as to the sufficiency of the evidence to support the jury's answer on breach of breach of implied warranty of fitness for a particular purpose.

NEGLIGENCE

In the fourth issue, Knight argues that the evidence is factually insufficient to support the jury's failure to find that Rippy and Gyrodata were negligent.  In Question 3, the jury was asked if the negligence of the Rippy Oil Company and/or Gyrodata proximately caused the occurrence in question.  The jury answered "No" for both Rippy Oil Company and Gyrodata.

Knight contends that there were problems in the well prior to the drill pipe breaking.  Charles Rippy testified that they encountered a trouble spot while drilling the Easterling 1-H, but that it was not a "catastrophe" and was fairly common.  Rippy also testified that a Gyrodata motor broke off in the well, and they had to make adjustments for that.  In Question 3 the jury was asked if the negligence of Rippy or Gyrodata proximately caused the "occurrence" in question.  Occurrence was defined for the jury as "the drill pipe separation that occurred on the Easterling No. 1-H well on May 11, 2010." We cannot say that the jury's answer to Question 3 is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  We overrule the fourth issue.

SUMMARY JUDGMENT

In the third issue, Knight argues that the trial court erred in granting summary judgment.  Rippy filed a traditional and no evidence motion for summary judgment as to Knight's affirmative defense of release and indemnity.

We review the trial court's granting of a motion for summary judgment de novo. The movant in a traditional summary judgment motion must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985).  The granting of a no-evidence motion will be sustained when the evidence offered by the non-movant to prove a vital fact is no more than a mere scintilla.  *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

The pipe was delivered to the well site with a delivery ticket that had a provision on the front indicating that the customer agrees to the terms and conditions on the reverse side of the document.  The reverse side of the delivery ticket contained terms and conditions including a paragraph on release and indemnity:

> Customer assumes full responsibility for and agrees to defend, indemnify and hold Knight harmless from every demand, claim, suit or cause of action, including, but not limited to, personal injury, illness, death, loss of well, well damage, reservoir damage, blowout pollution, contamination or any damage to property which arise out of, in connection with, incident to or results directly or indirectly from the rental or use of the equipment or services provided.
> Customer's release, defense, indemnity, and hold harmless obligations apply even if the liability demand, claims, suits and causes of action are caused by the sole, concurrent, active or passive negligence, fault or strict liability of Knight, the unseaworthiness of any vessel, a pre-existing condition or any defect in the services or equipment or services provided..

There was also a paragraph on waiver of warranty:

> Knight makes no representation or warranty of any kind, express or implied, with respect to drill pipe, tools or other equipment or services provided; customer understands and agrees that no warranty is to be

implied with respect to the condition of the equipment, or its merchantability or the fitness of the equipment for a particular purpose. Knight shall not in any event be liable for any special, direct, indirect, incidental or consequential damages. Knight makes no warranty as to whether the equipment leased or sold meets the specifications, stipulated size, or the description for which customer contracted. Customer understands and acknowledges that the equipment rented or sold may be used equipment.

Because of the uncertainty of well conditions and the necessity of relying on information and services provided by others, Knight cannot guarantee the effectiveness of the equipment or services provided by Knight. Knight shall not be liable for any special, direct, indirect, incidental or consequential damages. Customer agrees that Knight shall not be liable for and customer shall indemnify Knight against any damages arising from the use of such services and equipment, even if such is contributed to by Knight's sole or concurrent negligence, fault or strict liability or the defect of any equipment sold or leased by Knight.

The trial court initially granted the motion without stating the basis for its ruling. During trial, Knight moved for reconsideration of the trial court's ruling. The trial court denied the motion for reconsideration and found that the Release Discharging Indemnity Agreement on back of the invoice was not negotiated between the parties. The trial court further found that "neither Elkins or Wiggins had apparent, implied, or actual authority on behalf of Rippy to bind them to the indemnity, discharge and release provisions…."

"Contracts indemnifying one against his distribution of defective products should be viewed as exceptions to the usual business practice, in the same manner as those indemnifying one against his own negligence." *Rourke v. Garza*, 530 S.W.2d 794, 804 (Tex. 1975). Leo Wiggins and Larry Elkins were well consultants on the Easterling 1-H well, but they were not employees of Rippy. The summary judgment evidence establishes that

Wiggins and Elkins had authority to order equipment and accept delivery of equipment and to supervise operations at the well, but that they did not have authority to negotiate any agreement on behalf of Rippy on release and indemnity.   Such negotiations may have great financial impact on the parties, and are therefore not of the kind ordinarily executed by a superintendent of job sites.  *See Rourke v. Garza*, 530 S.W.2d at 804.  The trial court did not err in granting Rippy's motion for summary judgment.  We overrule the third issue.

## DAMAGES

In issues five, six, and seven, Knight argues that the evidence is insufficient to support the jury's finding on damages, that the trial court erred in admitting evidence and refusing jury charge instructions, and that the trial court erred in wording jury questions.

In Question 5, the jury was asked if the Easterling No. 1-H well was capable of being reproduced by drilling another well as it existed at the time of the occurrence in question.  The jury answered "No."  In Question 6, the jury was asked what would have been the reasonable and necessary costs of drilling and equipping the Easterling 2-H well in the condition the Easterling 1-H well was equipped before the occurrence in question less the salvage value.  The jury answered that the reasonable and necessary drilling and equipping costs for the Easterling No. 2-H well were $1.5 million.  In Question 7, the jury was asked the reasonable fair market value of the Easterling 1-H well immediately before

the occurrence in question and immediately after the occurrence in question.  The jury was instructed that fair market value means the price a willing seller not obligated to sell can obtain from a willing buyer not obligated to buy.  The jury answered that the value of the Easterling 1-H before the occurrence was 5.9 million dollars and after the time of the occurrence was 0.

We will not disregard a jury's determination of damages merely because its reasoning in reaching its figures is unclear.  *Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 403 (Tex. App. —Houston [14th Dist.] 2010, no pet.).  A jury generally has discretion to award damages within the range of evidence presented at trial.  *Gulf States Utilities. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002).  It may not, however, "arbitrarily assess an amount neither authorized nor supported by the evidence presented at trial."  *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex. App. Austin —1993, writ denied).

Charles Rippy testified that the fair market value of the Easterling 1-H well just prior to the drill pipe breaking was nine million dollars.  Charles Rippy explained that they drilled the Sims 3-H as a concept well to gather information before drilling the Easterling 1-H.  Charles Rippy explained that he used the production data from the Sims 3-H to help determine the fair market value of the Easterling 1-H.

Knight produced evidence that the fair market value of the Easterling 1-H before the drill pipe break was between $1,053,315 and $2,231,600.  Knight's fair market value

made reductions for potential mechanical problems.  Knight's expert explained in detail how he arrived at those values.

The jury's answer of 5.9 million dollars is in the range of evidence presented at trial.  The jury heard differing methods for arriving at the value of the well and for discounting the value for risk.  Although no one testified to the 5.9 million figure determined by the jury, the amount is supported by the evidence at trial.  We find that the evidence is legally sufficient to support the jury's determination of damages. Additionally, we cannot say that the jury's verdict as to this claim is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Knight argues that the trial court admitted "numerous" exhibits relating to lost profits over objection.  Knight contends that such evidence was confusing, prejudicial, and irrelevant.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex. 2001).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  Knight does not specifically identify which exhibits were erroneously admitted.  However, we find that the trial court did not abuse its discretion in admitting exhibits relating to lost profits.

Knight also argues that the trial court erred in refusing its requested instructions in Question 7.  Knight requested the trial court include two instructions: (1) lost profits should not be considered in fair market value, and (2) lost profits should be shown with reasonable certainty.

We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review.  *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). The trial court has considerable discretion to determine proper jury instructions, and "[i]f an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *Id*.  An appellate court will not reverse a judgment for a charge error unless that error was harmful because it "probably caused the rendition of an improper judgment" or "probably prevented the petitioner from properly presenting the case to the appellate courts." TEX. R. APP. P. 61.1; *Thota v. Young*, 366 S.W.3d at 687.

Knight has not shown that the trial court abused its discretion in denying the requested instructions.  Moreover, because we found that the jury's answer of 5.9 million dollars was supported by the evidence, Knight has not shown that failure to include the instruction probably caused the rendition of an improper judgment.

Knight further argues that the proper measure of damages when the damaged property is an oil or gas well is the lesser of the cost of drilling and equipping a replacement well, less the value of salvage and the reasonable cash market value of the

well immediately before the occurrence in question citing *Basic Energy Services, Inc. v. D-S-B Props., Inc.*, 367 S.W.3d 254, 262 (Tex. App. —Tyler 2011, no pet.).  Knight states that the trial court should have entered judgment on the jury's answer in Question 6 rather than the jury's finding in Question 7.

If the well can be reproduced by drilling another one, the proper measure of damages is the cost of drilling and equipping another such well, less the value of any salvage; provided that this cost does not exceed the reasonable cash market value of the well immediately before the tubing collapse.  *Atex Pipe & Supply, Inc. v. Sesco Production Co.*, 736 S.W.2d 914, 917 (Tex. App. —Tyler 1987, writ den'd).  If the well cannot be reproduced or if the cost of reproduction exceeds the value of the well, the proper measure of damages is the difference in the reasonable cash market value of the well, as equipped, immediately before and immediately after the tubing collapse.  *Id*.

In Question 5, the jury found that the Easterling No. 1-H well was not capable of being reproduced by drilling another well as it existed at the time of the occurrence in question.  The trial court did not abuse its discretion in submitting Question 5 to the jury.  Because the jury found the well could not be reproduced, the proper measure of damages is the difference in the reasonable cash market value of the well, as equipped, immediately before and immediately after the drill pipe failure as found by the jury in Question 7.  *See Atex Pipe & Supply, Inc. v. Sesco Production Co.*, 736 S.W.2d at 917.

We overrule the fifth, sixth, and seventh issues on appeal.

CONCLUSION

We affirm the trial court's judgment.


JOHN E. NEILL
Justice


Before Chief Justice Gray,
Justice Davis, and
Justice Neill
(Chief Justice Gray dissents with a note)*
Affirmed
Opinion delivered and filed December 30, 2020
[CV06]

*(Chief Justice Gray dissents.  A separate opinion will not issue.  Chief Justice Gray notes, however, that prior to the jury trial the trial court granted a motion for summary judgment on the affirmative defenses of indemnity and release.  The basis of the motion was that the person who had the authority to order and accept delivery of the pipe for Rippy did not have the authority to accept the terms and conditions on the delivery ticket.  The question thus framed was the scope of the agency; was he a "company man" or was he merely a "job superintendent" with no real authority to contract on behalf of the company.  Chief Justice Gray believes that Rippy did not conclusively prove through summary judgment evidence that the well consultants did not have that limitation on their authority.  The evidence established that they had the authority to agree to the terms necessary to order equipment and accept delivery on behalf of the company.  At the very least the scope of the agency was disputed.  Moreover, because the evidence regarding these defenses also impacts the reasonableness of the reliance on the representation of Knight, the evidence of the defenses has evidentiary implications on the reasonableness of Rippy's reliance upon the representations of Knight as to the quality/condition of the pipe that was delivered,  thus potentially impacting the jury findings on the elements of Rippy's claims.  Therefore, in fairness, a new trial is warranted which is not limited to the affirmative defenses.  Because the Court affirms the trial court's judgment, Chief Justice Gray respectfully dissents.)