# POLICY COVER PAGE

**Date Printed:**  03/30/10                           **Policy/Quote Number:**   13074559
**Time Printed:**  000001


**Underwriter Name:**          DUSTIN SCHULER
**Issuing Office Division:**    0008
**Issuing Office Branch:**      0031
**Issuing Office Region:**
**Operator Name:**             WILLIS                ,AVADONN
**Operator Telephone:**        913-495-4243
**Policy Effective Date:**     March 31, 2010

**Transaction Type:**          REN

**Set Copy Name:**
**Set Copy Mailing Instructions:**


EPS TRACKING-ID:   0001609145000010089
JOB-ID:

(Ed. 4-99)        *Archive Copy* **INSURED COPY**

**EXCESS CASUALTY, A DIVISION OF CHARTIS**

2929 ALLEN PARKWAY
SUITE 1300
HOUSTON, TEXAS 77019-2128

Re:  KNIGHT OIL TOOLS INC

WENDY ARCEMENT @
KNOX INSURANCE GROUP LLC
PO BOX 53406
LAFAYETTE, LA 70505-3406

Commercial Insurance NOW USES RECYCLED PAPER

AH1079

*Archive Copy*

Date: March 30, 2010

 **Risk Specialists Companies**
Insurance Agency, Inc.

**2929 Allen Parkway, Suite 1300**
**Houston, Texas 77019-2128**

**d/b/a RSCIA in NH, VT & UT**

Attn:  WENDY ARCEMENT
KNOX INSURANCE GROUP LLC
PO BOX 53406
LAFAYETTE, LA 70505-3406


RE:  KNIGHT OIL TOOLS INC

Policy Number:  BE      13074559
Policy Effective/Expiration:  From:  March 31, 2010          To:  March 31, 2011

Dear WENDY,

Enclosed are one original and one copy of the policy for the above captioned account.  Upon review of the policy, we believe it is complete and accurate based upon the binder.  However, if you have any questions or concerns, feel free to give me a call.

Thank you for the opportunity to be of service to your company on this account.  We look forward to working with you on future opportunities.


Best regards,


CLINT LASKOSKIE
SENIOR UNDERWRITER
713-342-7359

## <u>POLICYHOLDER NOTICE</u>

Thank you for purchasing insurance from the Chartis companies. Chartis insurance companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by Chartis insurance companies to brokers and independent agents in the United States by visiting our website at <u>www.chartisinsurance.com/producercompensation</u> or by calling 1-800-706-3102.

*Archive Copy*

# FORMS SCHEDULE

**Named Insured:**     KNIGHT OIL TOOLS INC

**Policy Number:**     BE     13074559
**Effective 12:01 AM:**  March 31, 2010

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
|  | CHARTIS SPEC PRIME DEC | 81071 | (11/09) |
|  | CHARTIS SPEC PRIME JACKET | 81070 | (11/09) |
|  | SCHEDULE OF UNDERLYING | UNDSCH | (05/99) |
|  | POLICYHOLDER DISC - NOTICE OF TERRORISM INS COVG | 96556 | (01/08) |
| 1 | ACT OF TERRORISM SIR ENDORSEMENT | 83049 | (03/06) |
| 2 | CRISISRESPONSE COVERAGE ENHANCEMENT ENDORSEMENT | 94621 | (05/07) |
| 3 | COVERAGE TERRITORY ENDT. | 89644 | (07/05) |
| 4 | VIOLATION OF ECONOMIC OR TRADE SANCTIONS  COND. AM | 99497 | (06/08) |
| 5 | VIOLATION OF ECO. OR TRADE SANCTIONS COND. AMEND. | 101111 | (03/09) |
| 6 | DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM, OR SU | 83687 | (11/09) |
| 7 | Duties in the Event of an Occurrence, Claim, or Su | 83687 | (01/10) |
| 8 | LOUISIANA AMENDATORY ENDT | 78807 | (03/03) |
| 9 | AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION ENDT | 86428 | (02/09) |
| 10 | ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY EX | 86448 | (06/05) |
| 11 | AUTOMOBILE LIABILITY FOLLOW-FORM ENDORSEMENT | 80398 | (07/02) |
| 12 | BACTERIA EXCLUSION ENDORSEMENT | 90985 | (05/06) |
| 13 | CROSS SUITS EXCLUSION PRIME | 80411 | (01/04) |
| 14 | DISCRIMINATION EXCLUSION ENDT | 86558 | (08/04) |
| 15 | ELECTROMAGNETIC FIELDS EXCLUSION | 80418 | (07/02) |
| 16 | EMP.LIAB.STOP-GAPLMT.ENDT | 82616 | (05/06) |
| 17 | EMPLOYEE BENEFITS LIAB LIMIT (CM) | 83073 | (09/03) |
| 18 | EMPLOYERS LIAB.LIMIT. ENDT. | 83071 | (11/03) |
| 19 | FOR. LIAB. LMT. ENDT.(APP. TO SPEC. CTYS) | 83078 | (05/09) |
| 20 | FUNGUS EXCLUSION ENDT | 82449 | (06/03) |
| 21 | LEAD EXCLUSION ENDORSEMENT | 86471 | (02/06) |
| 22 | MAR. LIAB. LMT. ENDT. INC. JONES ACT AND USLH | 86411 | (08/04) |
| 23 | MTBE AND OTHER FUEL OXYGENATES EXCLUSION ENDT | 80449 | (02/03) |
| 24 | PROFESSIONAL LIABILITY EXCLUSION ENDORSEMENT | 83093 | (05/05) |
| 25 | RADIOACTIVE MATTER EXCL | 83094 | (09/03) |
| 26 | SILICA EXCLUSION ENDT | 80479 | (02/03) |
| 27 | SEXUAL ABUSE OR MOLESTATION EXCLUSION | 80478 | (07/02) |
| 28 | TESTING OR CONSULTING ERRORS AND OMISSIONS EXCLUSI | 89485 | (06/05) |
| 29 | TIME ELEMENT SIR POLLUTION ENDT | 80499 | (06/03) |
| 30 | CANCELLATION CLAUSE AMENDED ENDT (CREDIT RATING TR | 100085 | (09/08) |
| 31 | RETAINED LIMIT AMENDATORY ENDT. | 81583 | (04/07) |
| 32 | DESIGNATED ENTITY SUBLIMIT OF INS. | 87213 | (12/04) |
| 33 | WATERCRAFT WORK PLATFORM COVERAGE ENDT | MNSCPT | (03/10) |
| 34 | AIRCRAFT & WATERCRAFT LIMITATION | MNSCPT | (03/10) |
| 35 | SCHEDULE OF NAMED INSURED(S) ENDORSEMENT | MNSCPT | (03/10) |

*Archive Copy*



**CHARTIS SPECIALTY INSURANCE COMPANY**

A Capital Stock Insurance Company
175 Water Street
New York, NY 10038

NOTICE:    **THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.**

**Umbrella Prime®**
**Commercial Umbrella Liability Policy With CrisisResponse®**

## DECLARATIONS

**POLICY NUMBER:** BE    13074559                    **RENEWAL OF:**    7411282

**ITEM 1. NAMED INSURED:**    KNIGHT OIL TOOLS INC

    **MAILING ADDRESS:**    P.O. BOX 52688
                            LAFAYETTE, LA 70505-2688

**ITEM 2. POLICY PERIOD: FROM:** March 31, 2010                **TO:** March 31, 2011
                        **(At 12:01 A.M., standard time, at the address of the Named Insured stated above.)**

**ITEM 3. LIMITS OF INSURANCE**

    The Limits of Insurance, subject to the terms of this policy, are:

    A. $25,000,000        **Each Occurrence**
    B. $25,000,000        **General Aggregate** (in accordance with Section IV. Limits of Insurance)
    C. $25,000,000        **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)
    D. $250,000           **CrisisResponse Sublimit of Insurance**
    E. $50,000            **Excess Casualty CrisisFund Limit of Insurance**

**ITEM 4. SCHEDULED UNDERLYING INSURANCE - See Schedule of Underlying Insurance**

**ITEM 5. SELF-INSURED RETENTION -** ▉▉▉▉▉        Each Occurrence

**ITEM 6. PREMIUM AND PREMIUM COMPUTATION**

    ESTIMATED TOTAL ANNUAL EXPOSURE        NOT APPLICABLE
    RATES PER                               FLAT
    MINIMUM PREMIUM                         ▉▉▉▉▉▉
    ADVANCE PREMIUM                         ▉▉▉▉▉▉

**ITEM 7. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE: SEE ATTACHED SCHEDULE**

**PRODUCER NAME:**  KNOX INSURANCE GROUP LLC
**ADDRESS:**        PO BOX 53406
                    LAFAYETTE, LA 70505-3406

_____          _____
**Authorized Representative or**                  **Date**
**Countersignature (Where Applicable)**

81071 (11/09)                                                    **Issue Date:**  03/30/10
AH2642
                    *Archive Copy*
                                © 2001 Chartis
            Includes copyrighted material of Insurance Services Office, Inc. with its permission.



**CHARTIS SPECIALTY INSURANCE COMPANY**

A Capital Stock Insurance Company
175 Water Street
New York, NY 10038

## NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.

### Umbrella Prime®
### Commercial Umbrella Liability Policy With CrisisResponse®

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy.  The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section VII. Definitions.

Except for headings, words that appear in bold print have special meaning.  See Section VII. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

---

| I.  INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY |
| --- |

A.  We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.  This policy applies, only if:

1.  the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2.  the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C.  1.  This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part.  If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage**  during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. **Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D.  **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

   1.  reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

   2.  receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

   3.  becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

E.  Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F.  If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

## II.  INSURING AGREEMENT-CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

A.  **CrisisResponse**

   We will advance **CrisisResponse Costs** directly to third parties on behalf of the **Named Insured**, regardless of fault, arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **CrisisResponse Sublimit of Insurance**.

B.  **Excess Casualty CrisisFund**

   We will pay **Crisis Management Loss** on behalf of the **Named Insured** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Excess Casualty CrisisFund Limit of Insurance**.

C.  A **Crisis Management Event** will first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and will end when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

D.  There will be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**.

E.  Any advancement of **CrisisResponse Costs** or payment of **Crisis Management Loss** that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any **Suit** under any other part of this policy.

## III.  DEFENSE PROVISIONS

A.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

1. investigate, negotiate and settle the **Suit** as we deem expedient; and

2. pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

   a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

   c. all court costs taxed against the **Insured** in the **Suit**;

   d. pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

   e. post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

   f. the **Insured's** expenses incurred at our request or with our consent.

D. Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured.**  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

E. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

---

**IV.  LIMITS OF INSURANCE**

---

A. The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

1. **Insureds**;

2. claims made or **Suits** brought;

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

   3.  persons or organizations making claims or bringing **Suits**; or

   4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

   1.  damages included within the **Products-Completed Operations Hazard**; and

   2.  damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

C.  The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence**.

E.  Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

F.  This policy applies only in excess of the **Retained Limit**. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

   1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

   2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

   1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance**; and

   2.  in the event of exhaustion, continue in force as underlying insurance.

H.  Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy.  Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance**, then such expenses will reduce the applicable Limits of Insurance of this policy.

I.  The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**.  This **CrisisResponse Sublimit of Insurance** will be part of, not in addition to, the applicable Limit of Insurance.

J.  The **Excess Casualty CrisisFund Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**.  This **Excess Casualty CrisisFund Limit of Insurance** will be in addition to the applicable Limit of Insurance.

K.  We will have no obligation to advance **CrisisResponse Costs** when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** has been exhausted, whichever occurs first.

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

L.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M.  We will not make any payment under this policy unless and until:

1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable, **Other Insurance** have been exhausted by the payment of **Loss**; or

2.  the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

---

## V.  EXCLUSIONS

A.  **Aircraft and Watercraft**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft  that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that  is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

B.  **Asbestos**

This insurance does not apply to any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C.  **Contractual Liability**

This insurance does not apply to any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

    a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

    b.  such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

**D.   Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.  a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**E.   Damage to Property**

This insurance does not apply to **Property Damage** to:

1.  property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.  premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3.  property loaned to you;

4.  personal property in the care, custody or control of the **Insured**;

5.  that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6.  that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

**F.   Damage to Your Product**

This insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**G.  Damage to Your Work**

This insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H.  Electronic Chatrooms or Bulletin Boards and Electronic Data**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.  Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**I.   Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**:

1.  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.  to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4.  arising out of his or her providing or failing to provide professional health care services.

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of **Bodily Injury** or **Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance**. Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

**J.  Employment Practices**

This insurance does not apply to any liability arising out of:

1.  failure to hire any prospective employee or any applicant for employment;

2.  dismissal, discharge or termination of any employee;

3.  failure to promote or advance any employee; or

4.  employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

    a.  coercion, harassment, humiliation or discrimination;

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

b. demotion, evaluation, reassignment, discipline, or retaliation;

c. libel, slander, humiliation, defamation, or invasion of privacy; or

d. violation of civil rights.

This exclusion applies:

1. whether the **Insured** may be liable as an employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

K. **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

M. **Liquor Liability**

This insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

N. **Media and Internet Type Businesses**

This insurance does not apply to **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1., U2. and U3. of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

O.  **"No-Fault**, " **"Uninsured Motorist"** or **"Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P.  **Nuclear Liability**

This insurance does not apply to:

1.  any liability:

    a.  with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

    b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

    c.  for **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

        i)  the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

        ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

        iii)  the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

2.  As used in this exclusion:

    a.  "hazardous properties" includes radioactive, toxic or explosive properties;

    b.  "nuclear material" means source material, special nuclear material or by-product material;

    c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto ;

    d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.  "nuclear facility" means:

        i)  any nuclear reactor;

        ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g. "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h. **Property Damage** includes all forms of radioactive contamination of property.

Q. **Pollution**

This insurance does not apply to:

1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However,  Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1) **Products-Completed Operations Hazard**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2) **Hostile Fire**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3) **Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations**

Paragraph 1. of this exclusion does not apply to:

a)  **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1. of this exclusion does not apply to:

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. **Your Product;**

2. **Your Work**; or

3. **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. **Unauthorized Use of Another's Name or Product**

This insurance does not apply to **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

1. caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4. arising out of a criminal act committed by or at the direction of the **Insured**;

5. for which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8. arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

V. **Various Laws**

This insurance does not apply to any obligation of the **Insured** under any of the following:

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1.  the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2.  any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

## W. Violation of Communication or Information Law

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

## X. War

This insurance does not apply to **Loss**, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1.  Civil war; or

2.  Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

---

## VI. CONDITIONS

### A. Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

### B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

### C. Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

### D. Cancellation

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

© 2001 Chartis

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.  Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium.  Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.  **Change In Control**

  If during the  **Policy Period**:

1.  the first **Named Insured** designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2.  any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

  this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.

  Coverage will be afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

  If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1. of the Declarations or the end of the **Policy Period**, whichever is earlier.

  The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

F.  **Changes**

  Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy.  This policy can be changed only by a written endorsement that we make to this policy.

G.  **Duties in the Event of an Occurrence, Claim or Suit**

1.  You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy.  To the extent possible, notice should include:

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

    a.  how, when and where the **Occurrence** took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the **Occurrence**.

2.  If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

    Written notice should be mailed, delivered, faxed or emailed to:

> Chartis Domestic Claims, Inc.
> Excess Casualty Claims Department
> Segmentation Unit
> 175 Water Street, 22nd Floor
> New York, NY  10038
> Fax:  (866) 743-4376
> Email:  excessfnol@chartisinsurance.com

3.  You and any other involved **Insured** must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

    b.  authorize us to obtain records and other information;

    c.  cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

    d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.  No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## H. Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

## I. Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time.  Our inspections are not safety inspections.  They relate only to the insurability of your premises and operations and the premiums to be charged.  We may give you reports on the conditions that we find.  We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public.  We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

## J. Legal Actions Against Us

No person or organization has a right under this policy:

1.  to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2.  to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**;

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy.  An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

K. **Maintenance of Scheduled Underlying Insurance**

You agree that during the **Policy Period**:

1. you will keep **Scheduled Underlying Insurance** in full force and effect;

2. the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3. the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4. any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L. **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**.  However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M. **Premium**

The first **Named Insured** designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6. of the Declarations.  At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force.  If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium.  If the earned premium is greater than the Advance Premium, you will promptly pay us the difference.  If the earned premium is less than the Advance Premium, we will return the difference to you.  But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the **Policy Period**.

N. **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1. of the Declarations, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom claim is made or **Suit** is brought.

O. **Service Of Suit**

In the event of our failure to pay any amount claimed to be due hereunder, **we**, at the **Insured's** request, will submit to the jurisdiction of a count of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Chartis Specialty Insurance Company, 175 Water Street, New York, NY 10038, or his or her representative, and that in any suit instituted against **us** upon this contract, **we** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, **we** hereby designate the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as **our** true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

P. **Transfer of Rights of Recovery**

1. If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3. If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

Q. **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

R. **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

S. **Violation of Economic or Trade Sanctions**

If coverage for a claim or **Suit** under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

## VII. DEFINITIONS

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

    1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

    2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B. **Auto** means:

    1. a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    2. any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D. **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has or may result in:

    1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

    2. significant adverse regional or national media coverage.

**Crisis Management Event** will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E. **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event**.

F. **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

    1. amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

    2. amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

G. **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered  **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

H. **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1.  medical expenses;

2.  funeral expenses;

3.  psychological counseling;

4.  travel expenses;

5.  temporary living expenses;

6.  expenses to secure the scene of a **Crisis Management Event**; and

7.  any other expenses pre-approved by the Company.

**CrisisResponse Costs** does not include defense costs or **Crisis Management Loss**.

I.  **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D. of the Declarations.

J.  **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K.  **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L.  **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.  your fulfilling the terms of the contract or agreement.

M.  **Insured** means:

1.  the **Named Insured**;

2.  if you are designated in the declarations as:

a.  an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

b.  a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  a limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers;

d.  an organization other than a partnership, joint venture or limited liability company, you are an insured.  Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders;

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

e. a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4. your volunteer workers only while performing duties related to the conduct of your business;

5. any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6. your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7. any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

a. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations; and

b. no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in Paragraph R. 2 and 3.

N. **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

**Archive Copy**
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

P.  **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

Q.  **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

    a.  equipment designed primarily for:

        i)   snow removal;

        ii)  road maintenance, but not construction or resurfacing; or

        iii) street cleaning;

    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos.**

R.  **Named Insured** means:

1.  any person or organization designated in Item 1. of the Declarations;

2.  as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily**

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

    a.  coverage provided to such organization under this paragraph  does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    b.  you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

You agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**.  If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured,** under the highest applicable limit of **Scheduled Underlying Insurance**.

S.  **Occurrence** means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**.  All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

T.  **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

U.  **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

*Archive Copy*          © 2001 Chartis
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

5.   oral or written publication, in any manner, of material that violates a person's right of privacy; or

6.   the use of another's advertising idea in your **Advertisement**; or

7.   infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

V.  **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

W.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

X.  **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.   products that are still in your physical possession; or

2.   work that has not yet been completed or abandoned.  However, **Your Work** will be deemed completed at the earliest of the following times:

a.   when all of the work called for in your contract has been completed;

b.   when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

c.   when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1.   the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2.   the existence of tools, uninstalled equipment or abandoned or unused materials.

Y.   **Property Damage** means:

1.   physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.   loss of use of tangible property that is not physically injured.  All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.  **Retained Limit** means:

1.   the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2.  the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA.  **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB.  **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC.  **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged.  **Suit** includes:

1.  an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2.  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD.  **Your Product** means:

1.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a.  you;

b.  others trading under your name; or

c.  a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.  the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE.  **Your Work** means:

1  work or operations performed by you or on your behalf; and

2.  materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

**Archive Copy**
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2.  the providing of or failure to provide warnings or instructions.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.

_____
Secretary

_____
President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

_____
**Authorized Representative**

*Archive Copy*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC                                    Policy Number:  BE      13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY (Knight Oil Tools, Inc.) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $10,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY

Defense Expenses are in addition to the limit |
| GENERAL LIABILITY (Advanced Safety & Training Management, Inc.) | Endurance Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY

Defense Expenses are in addition to the limit |
| GENERAL LIABILITY (El Caballero, Inc.) | Philadelphia Indemnity Ins. Co 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY

Defense Expenses are in addition to the limit |
| GENERAL LIABILITY (Le Chevallier) | Philadelphia Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $2,000,000 PRODUCTS/C. OPS. AGGREGATE $1,000,000 PERSONAL & ADVERTISING INJURY

Defense Expenses are in addition to the limit |

*Archive Copy*

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC            Policy Number:  BE      13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| AUTO LIABILITY | ACE American Insurance Co. 03/31/10 03/31/11 | $2,000,000 COMBINED SINGLE LIMIT<br><br>Defense Expenses are in addition to the limit |
| EMPLOYERS LIABILITY | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT<br><br>Defense Expenses are in addition to the limit |
| STOP GAP EL | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT<br><br>Defense Expenses are in addition to the limit |
| MARITIME EMPLOYERS LIABILITY (IF ANY BASIS) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT $1,000,000 DISEASE EACH EMPLOYEE $1,000,000 DISEASE POLICY LIMIT<br><br>Defense Expenses are in addition to the limit |

UNDSCH (5/99)
AH0006       *Archive Copy*

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: KNIGHT OIL TOOLS INC                                    Policy Number:  BE      13074559

By: CHARTIS SPECIALTY INSURANCE COMPANY

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| EMPLOYEE BENEFITS LIABILITY (INCL IN GL - CLAIMS MADE) | ACE American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH CLAIM $1,000,000 AGGREGATE |
| | | Defense Expenses are in addition to the limit |
| PROTECTION & INDEMNITY | Great American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH ACCIDENT |
| | | Limits are inclusive of Defense Expenses |
| WHARFINGER'S LEGAL LIABILITY | Great American Insurance Co. 03/31/10 03/31/11 | $1,000,000 OCCURRENCE LIMIT $1,000,000 PER VESSEL, INCLUDING EQUIP., CARGO & FREIGHT LIMIT $1,000,000 PROPERTY DAMAGE & BODILY INJURY LIMIT |
| | | Limits are inclusive of Defense Expenses |
| CHARTERER'S LEGAL LIABILITY | Great American Insurance Co. 03/31/10 03/31/11 | $1,000,000 EACH OCCURRENCE |
| | | Limits are inclusive of Defense Expenses |

*[signature]*

**AUTHORIZED REPRESENTATIVE**

UNDSCH (5/99)
AH0006            *Archive Copy*

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM INSURANCE COVERAGE**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury--in concurrence with the Secretary of State, and the Attorney General of the United States--to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $1,276.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

96556 (1/08)
© 2007 National Association of Insurance Commissioners

*Archive Copy*

ENDORSEMENT No. 1

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Policy with CrisisResponse®**

**Act of Terrorism Self-Insured Retention Endorsement**

Solely with respect to any **Act of Terrorism**, this policy is amended as follows:

The **DECLARATIONS, ITEM 5. SELF-INSURED RETENTION** is amended to include the following additional Self-Insured Retention:

**ACT OF TERRORISM SELF-INSURED RETENTION** - $$1,000,000 Each **Occurrence** (As respects all liability covered under this policy arising out of any **Act of Terrorism**.)  The **Act of Terrorism Self-Insured Retention** will not be reduced or exhausted by **Defense Expenses**.

**ITEM 6. OF THE DECLARATIONS, PREMIUM AND PREMIUM COMPUTATION** is amended to include the following:

**ACT OF TERRORISM PREMIUM**                  ███████

**Section IV. LIMITS OF INSURANCE**, is amended to include the following additional provision:

The **Act of Terrorism Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Act of Terrorism Self-Insured Retention**. However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the **Act of Terrorism Self-Insured Retention**.

**Section III. DEFENSE PROVISIONS**, Paragraphs A. 1. and A. 2., and D. are deleted in their entireties, and Paragraph A. is replaced by the following:

A.  We will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Act of Terrorism** means:

1.  any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions, amendments, or extensions thereto; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**;

6. Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (in States Where Applicable)

ENDORSEMENT No. 2

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE     13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### CrisisResponse Coverage Enhancement Endorsement

This policy is amended as follows:

It is understood and agreed that in every instance in which the phrase "CrisisResponse Sublimit of Insurance" is referenced in this policy and/or its endorsements, the phrase "CrisisResponse Limit of Insurance" shall be substituted.

**Section IV. LIMITS OF INSURANCE,** Paragraph I. is deleted in its entirety and replaced by the following:

I.   The **CrisisResponse Limit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**.  This **CrisisResponse Limit of Insurance** will be in addition to the applicable Limit of Insurance.

All other terms, conditions, definitions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

94621 (5/07)
AH2035                     *Archive Copy*

**ENDORSEMENT No. 3**

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### COVERAGE TERRITORY ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____

Authorized Representative

89644 (7/05)
AH2421          ***Archive Copy***

ENDORSEMENT No. 4

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE       13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy With CrisisResponse [®]

### Violation of Economic or Trade Sanctions Condition Amendment Endorsement

This policy is amended as follows:

**Section VI. CONDITIONS**, Paragraph R. **Violation of Economic or Trade Sanctions** is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative
or Countersignature (Where Applicable)

99497 (6/08)
AH2423                    *Archive Copy*

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE        13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Violation of Economic or Trade Sanctions Condition Amendment Endorsement

This policy is amended as follows:

Section VI. CONDITIONS, Paragraph S. Violation of Economic or Trade Sanctions is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

101111 (3/09)
AH2526        *Archive Copy*

ENDORSEMENT No. 6

This endorsement, effective 12:01 AM:  March 31, 2010

Forms a part of policy no:  BE     13074559

Issued to:   KNIGHT OIL TOOLS INC

By:  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Duties in the Event of an Occurrence, Claim or Suit and Schedule A - Approved Crisis Management Firms

Solely as respects coverage provided by **Section II INSURING AGREEMENT - CRISISRESPONSE**ˢᴹ **AND EXCESS CASUALTY CRISIS FUND**®, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-244-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

> Chartis Claims, Inc.
> Excess Casualty Claims Department
> Segmentation Unit
> 175 Water Street, 22nd Floor
> New York, NY  10038
> Fax: (866) 743-4376
> E-mail:  excessfnol@chartisinsurance.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

83687 (11/09)                              Page 1 of 6
AH2759            *Archive Copy*

### Schedule A

### Approved Crisis Management Firms

The following firms are approved **Crisis Mangement Firms**:

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **The Abernathy MacGregor Group** | | | |
| 501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>(212) 371-5999 Office<br>(646) 236-3271 Cell<br>(212) 752-0723 Fax<br>(212) 343-0818 Home<br>jtm@abmac.com<br><br>Rhonda Barnat<br>(212) 371-5999 Office<br>(917) 912-6378 Cell<br>(212) 752-0723 Fax<br>(646) 478-8740 Home<br>rb@abmac.com | (917) 449-9964 | Public Relations and Crisis Management |
| 611 West Sixth Street,<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>(213) 630-6550 Office<br>(213) 489-3443 Cell<br>(213) 489-3443 Fax<br>(818) 957-5650 Home<br>(818) 541-0954 Home Fax<br>idc@abmac.com | (818) 750-4392<br>(917) 940-3476 | |
| **Bright Light Marketing Group** (Hawaii Only) | | | |
| 1001 Bishop Street,<br>Suite 900<br>Honolulu, Hawaii<br>96813-3429 | Charlene Lo Chan<br>(808) 275-3007 Direct<br>(808) 524-6441 Office<br>(808) 781-7733 Cell<br>(808) 524-8115 Fax<br>charlene@brightlightmarketing.com | | Public Relations and Crisis Management |
| **Edelman Public Relations Worldwide** | | | |
| 200 East Randolph<br>Street, 63rd Floor<br>Chicago, IL 60601 | Bill Keegan<br>(312) 240-2624 Direct<br>(312) 240-3000 Office<br>(312) 927-8424 Cell<br>(312) 240-2900 Fax<br>bill.keegan@edelman.com | | International Public Relations and Crisis Management |
| 1500 Broadway,<br>26th Floor<br>New York, NY | Chris Deri<br>(212) 704-4526 Office<br>(212) 391-6389 Fax<br>(917) 783-6771 Cell<br>chris.deri@edelman.com | | |

**Edward Howard and Company**

| | | |
|---|---|---|
| 1100 Superior Avenue, Suite 1600 Cleveland, OH 44114-2518 | Wayne Hill (216) 781-2400 Office (216) 408-1211 Cell whill@edwardhoward.com | Public Relations and Crisis Management |

**Fleishman-Hilliard, Inc.**

| | | |
|---|---|---|
| John Hancock Center 875 N. Michigan Avenue, Suite 3300 Chicago, IL 60611-1901 | David Saltz (312) 751-3530 Direct (312) 751-8878 Office (312) 203-2114 Cell (312) 751-8191 Fax david.saltz@fleishman.com | Public Relations and Crisis Management |
| 1615 L Street NW, Suite 1000 Washington, D.C. 20036-5610 | Benjamin (Ben) Kincannon (617) 692-0501 Office (508) 314-4154 Cell (617) 267-5905 Fax ben.kincannon@fleishman.com | |

**Hill and Knowlton, Inc.**

| | | | |
|---|---|---|---|
| 909 Third Avenue New York, NY 10022 | Christopher R. Gidez (212) 885-0480 Direct (212) 885-0300 Office (914) 319-6582 Cell (212) 885-0524 Fax chris.gidez@hillandknowlton.com | (888) 264-5193 | Public Relations and Crisis Management |
| | Richard (Dick) C. Hyde (212) 885-0372 Direct (212) 885-0300 Office (917) 816-2208 Cell (212) 855-0570 Fax dhyde@hillandknowlton.com | | |
| 55 Metcalfe Street, Suite 1100 Ottawa, Canada K1P 6L5 | Jo-Anne Polak (613) 786-9954 Direct (613) 238-4371 Office (613) 761-2684 Cell (613) 238-8642 Fax jpolak@hillandknowlton.com | | |

**Lexicon Communications Corp.**

| | | | |
|---|---|---|---|
| 520 Bellmore Way Pasadena, CA 91103 | Steven B. Fink (626) 683-9333 Direct (626) 683-9200 Ext. 225 Office (626) 253-1519 Cell (626) 449-7659 Fax sfink@lexiconcorp.com | (626) 683-9333 | Public Relations and Crisis Management |
| | Daryn Teague (661) 297-5292 Direct (805) 358-3058 Cell | | |

**Robinson Lerer & Montgomery**

| | | | |
|---|---|---|---|
| 1345 Avenue of the Americas, 4th Floor New York, NY 10105 | Michael Gross (646) 805-2003 Direct (646) 805-2000 Office (917) 853-0620 Cell (646) 557-0002 Fax (718) 788-5281 Home mgross@rlmnet.com | (646) 805-2000 | Public Relations and Crisis Management |
| | Patrick S. Gallagher (646) 805-2007 Direct (646) 805-2000 Office (917) 328-9333 Cell (646) 805-2829 Fax (914) 232-4256 Home pgallagher@rlmnet.com | | |

**Sard Verbinnen & Co.**

| | | | |
|---|---|---|---|
| 630 Third Avenue, 9th Floor New York, NY 10017 | George Sard (212) 687-8080 Office (212) 687-8344 Fax gsard@sardverb.com | (917) 750-4392 | Public Relations and Crisis Management |
| | Paul Verbinnen (212) 687-8080 Office (212) 687-8344 Fax pv@sardverb.com | | |
| 190 S. LaSalle Street, Suite 1600 Chicago, IL 60603 | Brad Wilks (312) 895-4740 Direct (312) 895-4700 Office (312) 895-4747 Fax bwilks@sardverb.com | | |
| 275 Battery Street, Suite 480 San Francisco, CA 94111 | Paul Kranhold (415) 618-8750 Office (415) 568-9580 Fax pkranhold@sardverb.com | | |

**Sitrick and Company, Inc.**

| | | | |
|---|---|---|---|
| 655 Third Avenue, 22nd Floor New York, NY 10017 | Jeffrey S. Lloyd (212) 660-6393 Direct (212) 573-6100 Office (310) 963-2850 Cell (212) 573-6165 Fax jeff_lloyd@sitrick.com | (310) 358-1011 | Public Relations and Crisis Management |
| 1840 Century Park East, Suite 800 Los Angeles, CA 90067 | Michael S. Sitrick (310) 788-2850 Direct (310) 788-2855 Fax mike_sitrick@sitrick.com | | |

**The Torrenzano Group**

| | | |
|---|---|---|
| The Lincoln Building<br>60 East 42nd Street,<br>Suite 2112<br>New York, NY 10165-2112 | Richard Torrenzano<br>(212) 681-1700 Ext. 111 Direct<br>(212) 681-6961 Fax<br>richard@torrenzano.com<br><br>Edward A. Orgon<br>(212) 681-1700 Ext. 102 Direct<br>(917) 539-4000 Cell<br>(212) 681-6961 Fax<br>ed@torrenzano.com | Public Relation and<br>Crisis Management |

**Zeno Group**

| | | |
|---|---|---|
| The Foundry Building<br>10555 Thomas Jefferson<br>Street NW<br>Washington, D.C.<br>20007 | Phillip Armstrong<br>(202) 965-7801 Direct<br>(202) 669-9926 Cell<br>phil.armstrong@zenogroup.com | Public Relations and<br>Crisis Management |

**THE FOLLOWING NON-PUBLIC RELATIONS FIRMS ARE APPROVED CRISIS RESPONSE FIRMS:**

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Coventry Health Care, Inc.** | | | |
| 3200 Highland Avenue<br>Downers Grove, IL<br>60515 | Nicole Bennet-Denson<br>(212) 283-7183 Fax<br>(646) 284-8835 Cell<br>nxbennettden@cvty.com<br><br>Anthony Nastasi<br>(914) 874-4727 Cell<br>(845) 265-5086 Fax<br>atnastasi@cvty.com | (800) 552-5378<br>Crisis Response<br><br>(888) 736-3272<br>Case Management | Psychological Counseling, Medical Case Management, Medical Cost Projection and Containment. |
| **D.A.R., Inc.** | | | |
| 4 Iris Drive<br>Scarborough, Maine<br>04074 | David W. Hunt<br>(207) 415-0735 Direct<br>(207) 883-0493 Home<br>(207) 883-2436 Fax<br>dhunt12348@aol.com | | Crisis Management, Global Investigative Services, Access to Local, State and Federal Police Authorities, National & International Intelligence Agencies, Crisis Management Training, Threat and Vulnerability Assessment. |

**GAB Robbins North America, Inc.**

560 Peoples Plaza,
Suite 215
Newark, Delaware
19702

Gail Oliver
(302) 838-1684 Direct
(302) 521-4985 Cell
(302) 838-1685 Fax
oliverg@gabrobbins.com

Claims Investigative
Services, Appraisal
Services, Emergency
Claims Services and
Loss Call Center
Operations.

**Marsh, Inc. (Reputational Risk & Crisis Management Group)**
(Formerly Kroll Associates)

1166 Avenue of the
Americas
New York, NY 10036

Ilene Merdinger
(212) 345-1690 Direct
(914) 924-1040 Cell
(212) 948-8638 Fax
ilene.merdinger@marsh.com

Larry Walsh
(212) 345-2765 Direct
(917) 841-8839 Cell
(212) 948-8638 Fax
larry.walsh@marsh.com

Crisis Management
and Investigative
Services

1255 23rd Street NW
Washington, D.C. 20037

Robert Wilkerson
(202) 263-7920 Direct
(202) 256-4931 Cell
(202) 263-7900 Fax
robert.wilkerson@marsh.com

ENDORSEMENT No. 7

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Duties in the Event of an Occurrence, Claim or Suit and
### Schedule A - Approved Crisis Management Firms

Solely as respects coverage provided by **Section II INSURING AGREEMENT - CRISISRESPONSE**<sup>SM</sup> **AND EXCESS CASUALTY CRISIS FUND®**, the following conditions are added to Section VI. Conditions, Paragraph G. Duties in the Event of an Occurrence, Claim or Suit:

You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** or as soon as practicable to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-244-3100.  If notice is given by telephone, written notice will be given as soon as practicable thereafter.  Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed, e-mailed, or delivered to:

> Chartis Claims, Inc.
> Excess Casualty Claims Department
> Segmentation Unit
> 175 Water Street, 22nd Floor
> New York, NY  10038
> Fax: (866) 743-4376
> E-mail: excessfnol@chartisinsurance.com

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative or
Countersignature (Where Applicable)

83687 (1/10)                                    Page 1 of 7
AH2831                    ***Archive Copy***

# SCHEDULE A

**THE FOLLOWING PUBLIC RELATIONS FIRMS ARE APPROVED CRISIS RESPONSE VENDORS:**

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Abernathy MacGregor Group** | | | |
| 501 Madison Avenue<br>New York, NY 10022 | **James T. MacGregor**<br>(212) 371-5999 Office<br>(646) 236-3271 Cell<br>(212) 752-0723 Fax<br>(212) 343-0818 Home<br>jtm@abmac.com<br><br>**Rhonda Barnat**<br>(212) 371-5999 Office<br>(917) 912-6378 Cell<br>(212) 752-0723 Fax<br>(646) 478-8740 Home<br>rb@abmac.com | (917) 912-6378 | Public Relations. Crisis Management and Threat & Vulnerability Assessment. |
| 611 W. Sixth Street,<br>Suite 1880<br>Los Angeles, CA 90017 | **Ian D. Campbell**<br>(213) 630-6550 Office<br>(213) 489-3443 Cell<br>(213) 489-3443 Fax<br>(818) 957-5650 Home<br>(818) 541-0954 Home Fax<br>idc@abmac.com | (818) 750-4392<br>(917) 940-3476 | |
| **Ann Barks Public Relations (Southeastern United States)** | | | |
| 896 Cross Gates Boulevard<br>Slidell, LA 70461 | **Ann W. Barks**<br>(985) 847-0750 Direct<br>(985) 290-8304 Cell<br>abarkspr@bellsouth.net | (985) 290-8304 | Public Relations and Crisis Management |
| **Bright Light Marketing Group (Hawaii Only)** | | | |
| 1001 Bishop Street,<br>Suite 900<br>Honolulu, Hawaii<br>96813-3429 | **Charlene Lo Chan**<br>(808) 275-3007 Direct<br>(808) 524-6441 Office<br>(808) 781-7733 Cell<br>(808) 524-8115 Fax<br>charlene@brightlightmarketing.com | | Public Relations and Crisis Management |
| **Dix & Eaton** | | | |
| Dix & Eaton<br>200 Public Square<br>Suite 1400<br>Cleveland, OH<br>44114-2316 | **Matt Barkett**<br>(216) 241-3073 Direct<br>(216) 241-3073 Cell<br>mbarkett@dix-eaton.com | (216) 241-3073 | Public Relations. Crisis Management and Threat & Vulnerability Assessment |

*Archive Copy*

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|

## Edelman

| 200 E. Randolf Drive<br>Chicago, IL 60601 | **William R. Keegan**<br>(312) 240-2624 Direct<br>(312) 240-3000 Office<br>(312) 240-2900 Fax<br>(312) 927-8424 Cell<br>bill.keegan@edelman.com | (312) 927-8424 | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |

## Edward Howard and Company

| 1100 Superior Ave.,<br>Suite 1600<br>Cleveland, OH 44114 | **Wayne Hill**<br>(216) 298-4630 Direct<br>(216) 781-2400 Office<br>(216) 408-1211 Cell<br>whill@edwardhoward.com<br><br>**Kathy Cupper Obert**<br>(216) 298-4620 Direct<br>(216) 781-2400 Office<br>(330) 730-5500 Cell<br>kobert@edwardhoward.com<br><br>**Chuck Vella**<br>(937) 223-7386 Direct<br>(973) 228-1141 Office<br>(937) 603-5795 Cell<br>cvella@edwardhoward.com<br><br>**Allen Pfenninger**<br>(216) 298-4653 Direct<br>(216) 781-2400 Office<br>(216) 554-4455 Cell<br>apfenninger@edwardhoward.com | (216) 408-1211 | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |

## Fleishman-Hilliard International Communications, Inc.

| John Hancock Center<br>875 N. Michigan<br>Avenue, Suite 3300<br>Chicago, IL<br>60611-1901 | **David Saltz**<br>(312) 751-3530 Direct<br>(312) 751-8878 Office<br>(312) 203-2114 Cell<br>(312) 751-8191 Fax<br>david.saltz@fleishman.com | | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |
| 1615 L Street NW,<br>Suite 1000<br>Washington, D.C.<br>20036-5610 | **Benjamin (Ben) Kincannon**<br>(617) 69200501 Office<br>(508) 314-4154 Cell<br>(617) 267-5905 Fax<br>ben.kincannon@fleishman.com | | |

## Levick Strategic Communications, LLC

| 1900 M Street NW<br>Washington, D.C.<br>20036 | **Gene Grabowski**<br>(202) 973-1351 Direct<br>(202) 270-6560 Cell<br>(202) 973-1301 Fax<br>ggrabowski@levick.com | (202) 270-6560 | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|

## Lexicon Communications Corp.

| | | | |
|---|---|---|---|
| 520 Bellmore Way<br>Pasadena, CA 91103 | **Steven B. Fink**<br>(626) 683-9333 Direct<br>(626) 683-9200 Ext. 225 Office<br>(626) 253-1519 Cell<br>(626) 449-7659 Fax<br>sfink@lexiconcorp.com | (626) 683-9333 | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |

## Marsh, Inc. (Reputational Risk & Crisis Management Group f/k/a Kroll Associates)

| | | | |
|---|---|---|---|
| 1166 Avenue of the<br>Americas<br>New York, NY 10036 | **Ilene Merdinger**<br>(212) 345-1690 Direct<br>(914) 924-1040 Cell<br>(212) 948-8638 Fax<br>ilene.merdinger@marsh.com | (914) 924-1040 | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |
| | **Larry Walsh**<br>(212) 345-2765 Direct<br>(917) 841-8839 Cell<br>(212) 948-8638 Fax<br>larry.walsh@marsh.com | | |
| 1255 23rd Street NW<br>Washington, D.C.<br>20037 | **Robert Wilkerson**<br>(202) 263-7920 Direct<br>(202) 256-4931 Cell<br>(202) 263-7900 Fax<br>robert.wilkerson@marsh.com | | |

## Robinson Lerer & Montgomery

| | | | |
|---|---|---|---|
| 1345 Avenue of the<br>Americas<br>4th Floor<br>New York, NY<br>10105 | **Michael Gross**<br>(646) 805-2003 Direct<br>(646) 805-2000 Office<br>(917) 853-0620 Cell<br>(718) 788-5281 Home<br>mgross@rlmnet.com | (646) 805-2000 | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |
| | **Patrick S. Gallagher**<br>(646) 805-2007 Direct<br>(646) 805-2000 Office<br>(917) 328-9333 Cell<br>(646) 805-2829 Fax<br>(914) 232-4256 Home<br>pgallagher@rlmnet.com | | |

## Sard Verbinnen & Co.

| | | | |
|---|---|---|---|
| 630 Third Avenue,<br>9th Floor<br>New York, NY 10017 | **George Sard**<br>(212) 687-8080 Office<br>(212 687-8344 Fax<br>gsard@sardverb.com | (917) 750-4392 | Public Relations.<br>Crisis Management<br>and Threat &<br>Vulnerability<br>Assessment |

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|

## Sard Verbinnen & Co.  (cont.)

| | | | |
|---|---|---|---|
| 190 S. LaSalle Street, Suite 1600 Chicago, IL 60603 | **Brad Wilks** (312) 895-4740 Direct (312) 895-4700 Office (312) 895-4747 Fax bwilks@sardverb.com | | |
| 275 Battery Street, Suite 480 San Francisco, CA 94111 | **Paul Kranhold** (415) 618-8750 Office (415) 568-9580 Fax pkranhold@sardverb.com | | |

## Sitrick and Company, Inc.

| | | | |
|---|---|---|---|
| 655 Third Avenue, 22nd Floor New York, NY 10017 | **Jeffrey S. Lloyd** (212) 660-6393 Direct (212) 573-6100 Office (310) 963-2850 Cell (212) 573-6165 Fax jeff_lloyd@sitrick.com | (310) 358-1011 | Public Relations. Crisis Management and Threat & Vulnerability Assessment |
| 1840 Century Park East, Suite 800 Los Angeles, CA 90067 | **Michael S. Sitrick** (310) 788-2850 Direct (310) 788-2855 Fax mike_sitrick@sitrick.com | | |

## The Rogers Group

| | | | |
|---|---|---|---|
| 1875 Century Park East, Suite 300 Los Angeles, CA 90067 | **Lynne M. Doll** (310) 552-4108 Direct (310) 552-6922 Office (310) 552-9052 Fax ldoll@rogerspr.com | (310) 552-6922 | Public Relations. Crisis Management and Threat & Vulnerability Assessment |

## The Torrenzano Group

| | | | |
|---|---|---|---|
| The Lincoln Building 60 East 42nd Street, Suite 2112 New York, NY 10165-2112 | **Richard Torrenzano** (212) 681-1700 Ext. 111 Direct (212) 681-6961 Fax richard@torrenzano.com | | Public Relations. Crisis Management and Threat & Vulnerability Assessment |
| | **Edward A. Orgon** (212) 681-1700 Ext. 102 Direct (917) 539-4000 Cell (212) 681-6961 Fax ed@torrenzano.com | | |

**THE FOLLOWING NON-PUBLIC RELATIONS FIRMS ARE APPROVED CRISIS RESPONSE VENDORS:**

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|
| **Coventry Health Care, Inc.** | | | |
| 3200 Highland Ave. Downers Grove, IL 60515 | **Michael Lacroix** (914) 223-4463 Cell (786) 513-7690 Fax jxlacroix@cvty.com | (888) 552-5378 | Psychological Counseling, Medical Case Management, Medical Cost Projection and Containment. |
| **D.A.R., Inc.** | | | |
| 4 Iris Drive Scarborough, Maine 04074 | **David W. Hunt** (207) 415-0735 Direct (207) 883-0493 Home (207) 883-2436 Fax dhunt12348@aol.com | (207) 415-0735 | Crisis Management, Global Investigative Services, Access to National & International Intelligence Agencies, Crisis Management, Threat and Vulnerability Assessment. |
| **GAB Robbins North America, Inc.** | | | |
| 560 Peoples Plaza, Suite 215 Newark, Delaware 19702 | **Gail Oliver** (302) 838-1684 Direct (302) 521-4985 Cell (302) 838-1685 Fax oliverg@gabrobbins.com | | Claims Investigative Services, Appraisal Services, Emergency Claims Services and Loss Call Center Operations. |
| **Lombardi Associates** | | | |
| 277 Fairfield Road, Suite 305A Fairfield, NJ 07004 | **Anthony Nastasi** (973) 271-8928 Direct (800) 550-0095 Office (310) 552-9052 Fax anthony.nastasi@lombardiassociates.com | (877) 715-2440 | Psychological Counseling, Medical Case Management, Medical Cost Projection and Containment. |
| **Meagher & Geer, P.L.L.P.** | | | |
| 33 S. Sixth Street, Suite 4400 Minneapolis, MN  55402 | **Russell D. Melton** (612) 371-1317 Direct (612) 338-0661 Office (612) 338-8384 Fax (612) 964-1882 Cell rmelton@meagher.com | (612) 347-9118 | Crisis Management and Threat & Vulnerability Assessment |

| FIRM ADDRESS | CONTACT INFORMATION | EMERGENCY TELEPHONE | SERVICES OFFERED |
|---|---|---|---|

## T. J. Russo Consultants (Nationwide)

| | | | |
|---|---|---|---|
| 99 Hillside Avenue, Suite X Williston Park, NY 11596 | **Michael W. Russo**<br> (516) 294-8644 Ext. 15 Direct<br>(516) 747-1009 Fax<br>(516) 456-3900 Cell<br>mwrusso123@aol.com | (516) 456-3900 | Fire Investigation and Analysis Services. |

***Archive Copy***

ENDORSEMENT No. 8

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no.:**  BE     13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

## LOUISIANA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy;  and 2)"First Named Insured" and "Insured" mean the Named Corporation, Named Organization, Named Entity, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following is added and supersedes any provision to the contrary:

A.    The First Named Insured may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

Within thirty days following such cancellation the insurer shall pay to the insured or to the person entitled thereto as shown by the insurer's records, any unearned portion of any premium paid on the policy as computed on the customary short rate or as otherwise specified in the policy and any unearned commission.  If no premium has been paid on the policy, the insured shall be liable to the insurer for premium for the period during which the policy was in force.

B.    CANCELLATION OF NEW POLICIES IN EFFECT FOR LESS THAN SIXTY (60) DAYS

If this policy has been in effect for less than sixty (60) days and is not a renewal, the Insurer may cancel this policy for any reason, by mailing or delivering to the First Named Insured written notice of cancellation at least sixty (60) days before the effective date of cancellation.

C.    CANCELLATION OF RENEWAL POLICIES AND NEW POLICIES IN EFFECT FOR SIXTY (60) DAYS OR MORE

If this policy has been in effect for sixty (60) days or more, or is a renewal of a policy the Insurer issued, the Insurer may cancel only for one or more of the following reasons:

(1)    Nonpayment of premium;

(2)    Fraud or material misrepresentation made by, or with the knowledge of, the First Named Insured or Other Insured(s) in obtaining the policy, continuing the policy, or in presenting a claim under a policy;

(3)    Activities or omissions by the First Named Insured which change or increase any hazard insured against, (including a failure to comply with loss control recommendations);

(4)    Change in the risk which increases the risk of loss after the Insurer issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

(5)    Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize the solvency of the Insurer or would place the Insurer in violation of the insurance laws of this or any other state;

(6)    The violation or breach of any policy terms or conditions by the Insured or Other Insured(s); or

(7)    Any other reasons that are approved by the Commissioner of Insurance.

The Insurer will mail or deliver written notice of cancellation under item C to the First Named Insured at least:

(a)   Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

(b)   Thirty (30) days before the effective date of cancellation if the insurer cancels for a reason described in C.(2) through (7) above.

D.   **WHEN A MORTGAGE HOLDER IS SHOWN IN THE POLICY**

If the Insurer cancels this policy, the Insurer will give written notice to the mortgage holder at least thirty (30) days before the effective date of cancellation or ten (10) days written notice of cancellation if cancellation is for nonpayment of premium.  Like notice must also be delivered or mailed to each mortgagee, pledgee or other known person shown in the policy to have an interest in any loss which may occur.

E.   **THE FOLLOWING IS ADDED:**

NONRENEWAL

1.   If the Insurer decides not to renew this policy, the Insurer will mail or deliver written notice of nonrenewal to the First Named Insured, at least sixty (60) days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

2.   The Insurer need not mail or deliver this notice if:

(a)   The Insurer or another company within the same insurance group has offered to issue a renewal policy; or

(b)   The First Named Insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

3.   Any notice of nonrenewal will be mailed or delivered to the First Named Insured at the last mailing address known to the Insurer.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4.   Such notice shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

All other terms, conditions and exclusions remain unchanged.

**AUTHORIZED REPRESENTATIVE**

78807 (3/03)
AH1107                    *Archive Copy*                    2

ENDORSEMENT No. 9

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy With CrisisResponse®

### Aircraft Products and Grounding Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Aircraft Products and Grounding**

This insurance does not apply to any liability included within the **Products-Completed Operations Hazard** relating to:

1.  aircraft or any part thereof, and any ground support or control equipment or any part thereof used therewith whether manufactured by the **Insured** or anyone else;

2.  any goods, products, parts, or materials manufactured, sold, handled or distributed by the **Insured** or any services provided or recommended by the **Insured** or by others trading under the **Insured's** name used by the **Insured** or others in the manufacture, repair, or operation of any aircraft or part thereof, whether such aircraft or part is manufactured by the **Insured** or anyone else; or

3.  any articles furnished by the **Insured,** its predecessors, or by others trading under the **Insured's** name and installed by the **Insured** or others in any aircraft or part thereof or used in connection with any aircraft or part thereof or for spare parts for any aircraft or part thereof including but not limited to ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering or other advice or service relating to any aircraft or part thereof, whether manufactured by the **Insured** or anyone else, and any labor relating to such aircraft or part thereof or articles.

For the purpose of this endorsement, aircraft includes missiles, spacecraft and launch vehicles.

In addition, this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the **Grounding** of any aircraft whether manufactured by the **Insured** or anyone else.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft, or any part thereof sold, manufactured, handled or distributed by the **Insured** or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawings of the **Insured** or with tools, machinery or other equipment furnished to such persons or organizations by the **Insured,** whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations. A **Grounding** will be deemed to commence on the date of an **Occurrence** which discloses such defect, fault,

or condition or on the date an aircraft is first withdrawn from service on account of such defect, default or condition, whichever occurs first.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

**ENDORSEMENT No.** 10

**This endorsement, effective 12:01 AM:**   March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Architects and Engineers Professional Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Architects and Engineers**

This insurance does not apply to any liability arising out of any act, error or omission, malpractice or mistake committed or alleged to have been committed by or on behalf of the **Insured** in the performance of architectural or engineering services, including but not limited to:

1.   the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

2.   supervisory, inspection or engineering services.

It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

86448 (6/05)
AH1669            *Archive Copy*

**ENDORSEMENT No.** 11

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse[SM]**

**Automobile Liability Follow-Form Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Automobile Liability**

This insurance does not apply to any liability arising out of the ownership, maintenance, operation, use or entrustment to others of any **Auto** owned or operated by or rented or loaned to any **Insured**.  Use includes operation and loading or unloading of any **Auto**.

However, this exclusion will not apply if coverage is provided for **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

80398 (07/02)
AH0885

*Archive Copy*

**ENDORSEMENT No.** 12

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Bacteria Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** or any other loss, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by bacteria.

This exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

90985 (5/06)
AH1902                    *Archive Copy*

**ENDORSEMENT No.** 13

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE        13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Cross Suits Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following exclusion:

**Cross Suits**

This insurance does not apply to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to a **Named Insured** that is caused, in whole or in part, by any other **Named Insured**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

80411 (1/04)
AH1268               *Archive Copy*

**ENDORSEMENT No.** 14

**This endorsement, effective 12:01 AM:**   March 31, 2010

**Forms a part of policy no:**   BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**   CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Discrimination Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Discrimination**

This insurance does not apply to any liability arising out of discrimination based upon age, gender, race, color, national origin, creed, religion, sexual orientation, marital status, veterans status, pregnancy, sickness, disease, disability, physical capabilities, physical characteristics, physical condition, mental capabilities, mental condition, or any other similar category or class, committed or alleged to have been committed by an **Insured**, or by anyone for whom an **Insured** is actually or allegedly responsible, whether intentional or unintentional, whether the discrimination is direct or indirect.

No inference shall be made from the omission of a category or class in the above paragraph that coverage applies to that category or class.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM:   March 31, 2010

Forms a part of policy no:   BE        13074559

Issued to:   KNIGHT OIL TOOLS INC

By:   CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse[SM]

### Electromagnetic Fields Exclusion

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Electromagnetic Fields**

This insurance does not apply to any liability arising from **Electromagnetic Fields** generated by the **Insured's** transmission lines, distribution lines or other equipment or facilities, if such **Electromagnetic Fields** are a result of the **Insured's** normal operations of generation, transmission or distribution of electricity.

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Electromagnetic Fields** means electric and magnetic fields generated by a varying electrical current through any medium including but not limited to wires and whether or not intended for the purpose of conducting electricity.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

80418 (07/02)
AH0905

*Archive Copy*

ENDORSEMENT No. 16

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Employers' Liability / Stop Gap Limitation Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employers' Liability**

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

However, if insurance for such **Bodily Injury** is provided by a policy listed in the **Scheduled Underlying Insurance**:

1.  The above exclusion shall not apply; and

2.  Coverage under this policy for such **Bodily Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

82616 (5/06)
AH1887          *Archive Copy*

ENDORSEMENT No. 17

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no.:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Employee Benefits Liability Limitation Claims Made Version Endorsement

**NOTICE:  Please read this endorsement carefully.  This endorsement provides coverage on a  claims made basis.  Except to the extent as may otherwise be provided herein, the coverage of this insurance is generally limited to liability for only those claims that are first made during the Policy Period and reported in writing to us.**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1. any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2. any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

    a.  giving counsel to employees with respect to a **Plan**;

    b.  interpreting a **Plan**;

    c.  handling of records in connection with a **Plan**;

    d.  effecting enrollment, termination or cancellation of employees under a **Plan**; or

    e.  any claim against an **Insured** solely by reason of his, her or its status as an administrator, the **Plan** or you as sponsor of the **Plan**.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by **Scheduled Underlying Insurance**.

Solely as respects this endorsement, this policy will only provide coverage for a **Claim** made against the **Insured** during the **Policy Period**:

    a)  If the insurance provided by **Scheduled Underlying Insurance** provides coverage for **Occurrences** occurring on or after a specified Retroactive Date for a claim for damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** first made in writing against any **Insured** in accordance with Paragraph b) below during the **Policy Period** or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

83073 (09/03)                                    Page 1 of 2
AH1228                 **Archive Copy**

b) A **Claim** by any person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1. When notice of such **Claim** is received and recorded by any **Insured** in writing and reported to us during the Policy Period or any applicable extended reporting period; or

2. When we make settlement in accordance with Paragraph a) above.

Notwithstanding the above, this insurance shall not apply to:

1. any **Claim** alleging or arising out of an **Occurrence** committed on or after the Retroactive Date set forth in the **Schedule Underlying Insurance**, if the **Insured**, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an **Occurrence**, knew as of the Continuity Date shown above that such **Occurrence** could result in a **Claim**.

2. any **Claim** alleging or arising out the same **Occurrence** or series of continuous, repeated or related **Occurrences** or alleging the same or similar facts, alleged or contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3. any **Claim** alleging or arising out of any **Claim** or **Suit** pending as of the Continuity Date; or alleging or arising out of or relating to any fact, circumstance, situation or **Occurrence** alleged in such **Claim** or **Suit**.

If **Scheduled Underlying Insurance** does not contain a Continuity Date, the Continuity Date will be the Retroactive Date.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Claim** means a written demand upon the **Insured** for compensatory damages or services and shall include the service of **Suit** or institution of arbitration proceedings against the **Insured**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **Plan** is subject.

**Plan** means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. and 2. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

ENDORSEMENT No. 18

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employers' Liability Limitation Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employers' Liability**

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

However, if insurance for such **Bodily Injury** is provided by a policy listed in the **Scheduled Underlying Insurance**:

1.  This exclusion shall not apply; and

2.  Coverage under this policy for such **Bodily Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

83071 (11/03)
AH1338          *Archive Copy*

**ENDORSEMENT No.** 19

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE       13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Foreign Liability Limitation Endorsement**
**(With Total Terrorism Exclusion Applicable To Specified Countries)**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Foreign Liability**

This insurance does not apply to **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** is provided by a policy listed in the **Scheduled Underlying Insurance**:

1.  This exclusion shall not apply; and

2.  Coverage under this policy for such **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

Not withstanding 1. and 2. above, this insurance does not apply to **Loss**, injury, damage, claim or **Suit**, arising directly or indirectly as a result of or in connection with **Terrorism** that occurs in the following countries:

Afghanistan, Algeria, Central African Republic, Chad, Colombia, India, Iraq, Lebanon, Mauritania, Morocco, Nigeria, Pakistan, Palestinian Authority, Philippines, Somalia, and Yemen.

It is understood that to the extent any coverage may otherwise be provided for these above listed countries under this policy or any of its endorsements, the provisions of this exclusion will supercede.

**Section VII. DEFINITIONS** is a amended to include the following additional definition:

**Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

1.  A government;

2.  The civilian population of a country, state or community; or

3.  To disrupt the economy of a country, state or community.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

**ENDORSEMENT No.** 20

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no.:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Fungus Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** or any other loss, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

a. Any **Fungus(i)**, **Molds(s)**, mildew or yeast, or

b. Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast, or

c. Any substance, vapor , gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast, or

d. Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom.

Paragraphs a., b., c. and d. above apply regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

**Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

**Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i), Mold(s)**, mildew, plants, organisms or microorganisms.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

**ENDORSEMENT No.** 21

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:** BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Lead Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Lead**

This insurance does not apply to any liability arising out of lead or the lead content of products.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

86471 (2/06)
AH1891                  *Archive Copy*

**ENDORSEMENT No.** 22

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy With CrisisResponse®

### Marine Liability Limitation Endorsement
### (Including Jones Act & U.S. Longshoreman and Harbor Workers)

This policy is amended as follows:

**A.**  Solely as respects watercraft, **Section V. Exclusions, Paragraph A.** is deleted in its entirety.

**B. Section V. Exclusions** is amended to include the following additional exclusion:

**Marine**

This insurance does not apply to any marine liability which includes, but is not limited to, the following:

| | |
|---|---|
| Charterers Liability | Protection and Indemnity Liability |
| Safe Berth Legal Liability | Ship Builders Liability |
| Towers Liability | Stevedores Liability |
| Ship Repairers Legal Liability | Wharfingers Liability |
| Terminal Operation Liability | U.S. Longshoreman and Harbor Workers |
| Jones Act | |

However, if insurance for marine liability is provided by **Scheduled Underlying Insurance**:

1. This exclusion shall not apply to marine liability coverage for **Bodily Injury** or **Property Damage**; and

2. Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy.  Provided, however, that coverage provided by this policy will not be broader than the coverage provided by **Scheduled Underlying Insurance**.

Except, however, this insurance does not apply to, and nothing contained in this endorsement will operate to provide any coverage with respect to:

1. **Property Damage** to any property in the **Insured's** care, custody or control; or

2. The cost or expense of, or incidental to, the removal of the wreck of any vessel.

even if such coverage is provided by **Scheduled Underlying Insurance**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

86411 (8/04)
AH1416                 *Archive Copy*

**ENDORSEMENT No.** 23

**This endorsement, effective 12:01 AM:** March 31, 2010

**Forms a part of policy no:** BE      13074559

**Issued to:** KNIGHT OIL TOOLS INC

**By:** CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**<u>MTBE and Other Fuel Oxygenates Exclusion Endorsement</u>**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of methyl tertiary-butyl ether ("MTBE") and other fuel oxygenates including, but not limited to, the following:

1.  ether oxygenates, such as ethyl tertiary-butyl ether ("ETBE"), tertiary-amyl methyl ether ("TAME"), tertiary-amyl ethyl ether ("TAEE"), diisopropyl ether ("DIPE"), and dimethyl ether ("DME"); and

2.  alcohol oxygenates, such as ethanol (ethyl alcohol), methanol (methyl alcohol), and tertiary-butyl alcohol ("TBA").

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

80449 (02/03)
AH1040            *Archive Copy*

**ENDORSEMENT No.** 24

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE       13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Professional Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Professional Liability**

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

83093 (05/05)
AH1668        *Archive Copy*

ENDORSEMENT No. 25

**This endorsement, effective 12:01 AM:**   March 31, 2010

**Forms a part of policy no.:**  BE       13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Radioactive Matter Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Radioactive Matter**

This insurance does not apply to any liability arising out of radioactive matter or any form of radiation.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

83094 (09/03)
AH1247        *Archive Copy*

ENDORSEMENT No. 26

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE       13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Silica Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of **Silica**, **Silica** fiber(s) or **Silica Dust** or any product(s) containing **Silica**, **Silica** fiber(s) or **Silica Dust**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Silica** means:

1.  The substance commonly known as **Silica**; and

2.  Any substance or product which has the same or substantially similar chemical formulation, structure or function as **Silica**, by whatever name manufactured, formulated, structured, sold or distributed.

**Silica Dust** means:

1.  Dust comprising of **Silica** only; and

2.  Dust comprising of **Silica** mixed with other dust or fiber(s) including, but not limited to, asbestos fibers.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

80479 (02/03)
AH1061                       *Archive Copy*

**ENDORSEMENT No.** 27

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Commercial Umbrella Liability Policy with CrisisResponse**[SM]

**Sexual Abuse or Molestation Exclusion**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Sexual Abuse or Molestation**

This insurance does not apply to any liability arising out of:

1.  The actual or alleged abuse or molestation by anyone of any person while in the care, custody or control of any **Insured**; or

2.  The negligent employment, investigation, supervision, reporting to the proper authorities or failure to so report, or retention of a person for whom any **Insured** is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (Where Applicable)

80478 (07/02)
AH0959

*Archive Copy*

**ENDORSEMENT No.** 28

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Testing or Consulting Errors and Omissions Exclusion Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Testing or consulting**

This insurance does not apply to **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** arising out of:

1.  An error, omission, defect or deficiency in:

    a.  any test performed; or

    b.  an evaluation, a consultation or advice given,

    by or on behalf of any **Insured;**

2.  The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3.  An error, omission, defect or deficiency in experimental data or the **Insured's** interpretation of such data.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

89485 (6/05)
AH1705          *Archive Copy*

ENDORSEMENT No. 29

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse<sup>SM</sup>

### Time Element Pollution
### Self-Insured Retention Endorsement

This policy is amended as follows:

**Section V. EXCLUSIONS**, Paragraph Q. **Pollution** is deleted in its entirety and replaced by the following:

**Pollution**

This insurance does not apply to:

1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

However,  Paragraph 1 of this exclusion will not apply to **Bodily Injury** or **Property Damage** arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that meets all of the following conditions:

   i. It was abrupt and neither expected nor intended by the **Insured**.  This condition does not apply to a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of **Pollutants** was a result of an attempt by the **Insured** to mitigate or avoid a discharge, dispersal, seepage, migration, release or escape of **Pollutants** that was itself abrupt and neither expected nor intended by the **Insured** and where substantial third party **Bodily Injury** or **Property Damage** could have occurred;

   ii. It commenced on a demonstrable, specific date during the **Policy Period**;

   iii. Its commencement became known to the **Insured** within (3) calendar days;

   iv. Its commencement was reported in writing to us within (30) calendar days of becoming known to the **Insured**; and

   v. Reasonable effort was expended by the **Insured** to terminate the discharge, dispersal, seepage, migration, release or escape of **Pollutants** as soon as conditions permitted.

However, nothing contained in this endorsement will operate to provide any coverage with respect to:

   i. Any site or location principally used by the **Insured**, or by others on the **Insured's** behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

   ii. Any fines or penalties;

    iii.  Any clean up loss, cost or expense arising out of any governmental request, demand, order or statutory or regulatory requirement.  However, this provision iii will not apply to third party clean up loss, cost or expense otherwise covered by this endorsement that are also the subject of a governmental request, demand, order or statutory or regulatory requirement;

    iv.  Acid rain or acid runoff;

    v.  Clean-up, removal, containment, treatment, detoxification or neutralization of **Pollutants** situated on premises which the **Insured** owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said **Pollutants**; or

    vi.  Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**, or any loss, cost or expense arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** in knowing violation of or non compliance with governmental permits.

For the purpose of this endorsement only, the SELF-INSURED RETENTION in ITEM 5. of the DECLARATIONS, is amended to include the following additional provision:

$1,000,000 Each Occurrence (As respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** covered under this endorsement).  This **Self-Insured Retention** will not be reduced by **Defense Expenses**.

The above **Self-Insured Retention** applies whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**.  If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the above **Self-Insured Retention** if such policies were purchased by the **Named Insured** to specifically apply as underlying insurance to this policy.  However, in no event will amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for the payment of **Defense Expenses** reduce the above **Self-Insured Retention**.

For the purpose of this endorsement only, **Section III. DEFENSE PROVISIONS** Paragraphs A. and D. are deleted in their entirety and Paragraph A. is replaced by the following:

We will have no duty to defend any **Suit** against the **Insured**.  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this endorsement may apply.  If we exercise this right, we will do so at our own expense.

For the purpose of this endorsement only, **Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Defense Expenses** means a payment allocated to defend a specific **Suit**, including but not limited to:

    1.  Attorneys' fees and all other investigation, loss adjustment and litigation expenses;

    2.  Premiums on bonds to release attachments;

    3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

    4.  Court costs taxed against the **Insured** in any **Suit**;

    5.  Pre-judgment interest awarded against the **Insured**; and

    6.  Interest that accrues after entry of judgment.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

**ENDORSEMENT No.** 30

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE        13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

**Cancellation Clause Amended Endorsement**
**(Credit Rating Trigger)**

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERSEDE.**

In consideration of the premium charged, it is hereby understood and agreed the Cancellation Condition of this policy is amended by adding the following provision to the end thereof:

Notwithstanding the foregoing, in the event that a financial strength rating is issued (1) below A- by A.M. Best Co., or (2) below BBB by Standard & Poor's Ratings Services, for the insurance company providing this insurance (hereinafter "Credit Rating Downgrade"), this policy may be canceled by the first Named Insured referenced in Item 1. of the Declarations by mailing written prior notice to us or by surrender of this policy to us or our authorized agent.  If this policy is canceled by the first Named Insured referenced in Item 1. of the Declarations within 30 days after such Credit Rating Downgrade, the insurance company providing this insurance shall retain the pro rata proportion of the premium herein.

All other terms, conditions, definitions, and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (Where Applicable)

100085 (9/08)
AH2463        *Archive Copy*

**ENDORSEMENT No.** 31

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE      13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Retained Limit Amendatory Endorsement

This policy is amended as follows:

Solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1.  The **DECLARATIONS, ITEM 5. SELF INSURED RETENTION** is deleted in its entirety.

2.  **Section IV. LIMITS OF INSURANCE**, Paragraphs B., G., H. and M. are deleted in their entireties and replaced by the following:

    B.  The General Aggregate Limit is the most we will pay for all damages covered under this policy except:

        1.  damages included within the **Products-Completed Operations Hazard**; and

        2.  damages because of **Bodily Injury** or **Property Damage** to which this insurance applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto**.

    G.  If the total applicable Retained Limit(s) listed in the Schedule of Retained Limits are reduced or exhausted by payment of **Loss** to which this policy applies, we will:

        1.  in the event of reduction, pay in excess of the remaining underlying **Retained Limits**; or

        2.  in the event of exhaustion of the underlying **Retained Limits**, continue in force as underlying insurance.

    H.  **Defense Expenses** will be in addition to the applicable Limits of Insurance of this policy.  Provided, however, that if the amount of applicable **Retained Limit** over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then solely with respect to coverage afforded by this policy that is subject to such Retained Limit, such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

    M.  We will not make any payment under this policy unless and until the total applicable **Retained Limit(s)** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** have been exhausted.

    When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

3.  **Section III. DEFENSE PROVISIONS**, Paragraph A. is deleted in its entirety and replaced by the following:

    **III.  DEFENSE PROVISIONS**

    A.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if

the **Suit** is groundless, false or fraudulent when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

4.  **Section V. EXCLUSIONS**, Paragraphs I.1., I.2., I.3., and M. are deleted in their entireties.

5.  **Section V. EXCLUSIONS**, Paragraph Q. is amended as follows:

    The last two sentences of Paragraph Q. are deleted and the clause "However, Paragraph 1 of this exclusion will not apply if coverage for such Bodily Injury or Property Damage as is described in subparagraphs 1) through 6) below is provided by Scheduled Underlying Insurance:", is deleted in its entirety and replaced by the following:

    > However, this exclusion will not apply as described in subparagraphs 1) through 6) below:

    provided, however, that the above amendments to **Section V. EXCLUSIONS,** Paragraph Q., do not apply if a separate endorsement attached to this policy deletes and replaces **Section V. EXCLUSIONS**, Paragraph Q.

6.  **Section VII. DEFINITIONS** is amended to include the following additional definition:

    **Defense Expenses** mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or **Suit,** including but not limited to:

    1.  Attorney's fees and all other investigation, loss adjustment and litigation expenses;

    2.  Premiums on bonds to release attachments;

    3.  Premiums on appeal bonds required by law to appeal any claim or **Suit**;

    4.  Costs taxed against the **Insured** in any claim or **Suit**;

    5.  Pre-judgment interest awarded against the **Insured**; and

    6.  Interest that accrues after entry of judgment.

7.  **Section VII. DEFINITIONS**, Paragraph D., subparagraph 1. is deleted and replaced by the following:

    1.  damages covered by this policy that are in excess of the **Retained Limit**; and

8.  **Section VII. DEFINITIONS**, Paragraph M. is amended to include the following additional subparagraph:

    8.  Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

        a.  The coverages and Limits of Insurance of this policy, or

        b.  The coverage and Limits of Insurance required by said contract or agreement.

    However, no such person or organization is an **Insured** by virtue of this provision 8. of this Paragraph M. of Section VII. if such person or organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

9.  **Section VII. DEFINITIONS**, the phrase "Notwithstanding any of the above:" and subparagraphs a. and b. thereunder appearing at the end of Paragraph M. are deleted in their entireties and replaced by the following:

Notwithstanding any of the above provisions 1. through 7. of this Paragraph M. of Section VII., no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

10. **Section VII. DEFINITIONS**, Paragraph P. is deleted in its entirety and replaced by the following:

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then **Loss** shall include such **Defense Expenses**.

11. **Section VII. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

R. **Named Insured** means:

1. any person or organization designated in Item 1 of the Declarations;

2. as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3. after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

a. coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b. you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

12. **Section VII. DEFINITIONS**, Paragraph Z. is deleted in its entirety and replaced by the following:

Z. **Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The **Retained Limit(s)** listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

a. If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit**.

b. If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled**

**Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit.**

13. **Section VI. CONDITIONS,** Paragraphs A. and C. are deleted in their entireties and replaced by the following:

   A. **Appeals**

   If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable **Retained Limit(s)**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

   C. **Bankruptcy or Insolvency**

   Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy.  But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a **Retained Limit**.

14. If another endorsement attached to this policy states specifically that the provisions therein supercede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

All other terms, definitions, conditions and exclusions remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

**Schedule of Retained Limits**

**Coverage(s)**                                    **Retained Limit(s)**

GENERAL LIABILITY                                  SELF INSURED RETENTION OF:
(KNIGHT RESOURCES, INC)                            $21,000,000
                                                   EACH OCCURRENCE
                                                   $22,000,000
                                                   GENERAL AGGREGATE
                                                   $21,000,000
                                                   PRODUCTS/C. OPS AGGREGATE
                                                   $21,000,000
                                                   PERSONAL & ADVERTISING INJURY

                                                   Defense Expenses are in
                                                   addition to the limit.

**ENDORSEMENT No.** 32

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no:**  BE       13074559

**Issued to:**   KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

### Commercial Umbrella Liability Policy with CrisisResponse®

### Designated Entity Sublimit of Insurance

This policy is amended as follows:

The **DECLARATIONS ITEM 3. LIMITS OF INSURANCE** is amended to include the following additional provisions:

**Sublimits of Insurance for all liability arising out of the products and operations of the entities referenced in the Schedule of Designated Entities**

| | | |
|---|---|---|
| A. | $5,000,000 | Each Occurrence Sublimit |
| B. | $5,000,000 | General Aggregate Sublimit |
| C. | $5,000,000 | Products-Completed Operations Aggregate. |

**Section IV. LIMITS OF INSURANCE** is amended to include the following additional provisions:

The Sublimits of Insurance shown in **ITEM 3.** of the **DECLARATIONS** (as amended above) are the most we will pay for all damages under this policy with respect to the liability of the **Insured** arising out of the operations of the entities listed in the Schedule of Designated Entities to the extent covered under the terms, conditions and definitions of this policy. These sublimits are part of and not in addition to the Each Occurrence and Aggregate Limit of Insurance shown in the Declarations.

### Schedule of Designated Entities

El Caballero, Inc.
Le Chevallier

All other terms, definitions, conditions and exclusions remain unchanged.

**Authorized Representative**
or Countersignature (Where Applicable)

87213 (12/04)
AH1481        *Archive Copy*

**ENDORSEMENT NO.** 33

**This endorsement, effective 12:01 AM:** March 31, 2010

**Forms a part of policy no.:** BE    13074559

**Issued to:** KNIGHT OIL TOOLS INC

**By:** CHARTIS SPECIALTY INSURANCE COMPANY

**WATERCRAFT WORK PLATFORM COVERAGE ENDORSEMENT**

**TO THE EXTENT ANY PROVISION OF THIS ENDORSEMENT CONFLICTS WITH ANY PROVISION OF THE POLICY OR ANY OF ITS OTHER ENDORSEMENTS, THE PROVISIONS OF THIS  ENDORSEMENT WILL SUPERSEDE.**

This policy is amended as follows:

1.      It is agreed that **Section V. EXCLUSIONS,** Paragraph A. will  not apply to any liability arising out of the deck space of tugs, barges, work  boats, crew boats, drilling or workover barges, when such watercraft is not operating  under navigation and when such  deck space is used only as  a  work  platform in  connection  with  oil, gas,  seismic  or  geothermal exploration production operations of the **Named Insured.**

2.      Regardless of the  limited watercraft coverage  provided by  this policy, this  policy excludes any losses recoverable  under any  of the following  or similar  types policies:  Environmental Liability, or Hull  coverage regardless  of whether such  insurance is  actually in force  at the time of the loss and regardless of the limit of liability available under such insurance.

3.      With respect to Protection and Indemnity and/or Charter's Liability coverage, this policy shall follow the terms, definitions,  conditions and exclusions  of Policy number: OMH#5834617, issued by  Great American  Insurance  Company of  New  York, as  were present as  of  the inception date of  this policy, subject  to the policy  period, limits  of insurance, Schedule  of Self Insured Retentions, and all conditions of this policy.

4.      Solely for purposes of coverage provided under  this endorsement, the following supersedes any Pollution Exclusion contained in or endorsed to this policy:

This insurance does  not apply to  any injury, damage,  expense, cost, loss,  liability or  legal obligation arising  out of  or in any  way  related to  pollution,  however caused.  Pollution includes the actual, alleged or  potential presence in or  introduction into the environment  of any substance  if  such  substance has, or  is  alleged to have,  the effect of  making the environment impure, harmful, or dangerous. Environment includes any air, land, structure  or the air therein, watercourse or water, including underground water.

We shall have no duty to defend any suit arising out of or in any way related to pollution.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT NO.34

**This endorsement, effective 12:01 AM:**  March 31, 2010

**Forms a part of policy no.:**  BE      13074559

**Issued to:**  KNIGHT OIL TOOLS INC

**By:**  CHARTIS SPECIALTY INSURANCE COMPANY

## AIRCRAFT AND WATERCRAFT LIMITATION ENDORSEMENT

This policy is amended as follows:

For the purpose of this endorsement only and solely with respect to any and all references to watercraft, **Section V. EXCLUSIONS**, **A. Aircraft and Watercraft** is deleted in its entirety and replaced by the following:

A.    **Aircraft and Watercraft**

1.    This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured**.   Use includes operation and loading and unloading.

2.    This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

This exclusion does not apply to a watercraft you do not own that is not being used to carry persons or property for a charge.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

*Archive Copy*

**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT NO.35

**This endorsement, effective 12:01 AM:** March 31, 2010

**Forms a part of policy no.:** BE     13074559

**Issued to:** KNIGHT OIL TOOLS INC

**By:** CHARTIS SPECIALTY INSURANCE COMPANY

### SCHEDULE OF NAMED INSURED(S) ENDORSEMENT

Knight Oil Tools, Inc
Eddie R. Knight Children's Trust
El Caballero, Inc.
Excel Oil Tools, Inc.
H & K Rentals, Inc.
Harmon Rentals, Inc.
Hub City Iron Works, Inc.
K & P Rental Company, Inc.
K-Bam, Inc.
Knight & Phillips Specialties, Inc.
Knight Acquisitions, Inc.
Knight Aviation, LLC
Knight Companies, Inc.
Knight Family Enterprises, LLC
Knight Fishing Services, Inc.
Douglas Oil Tools, Inc.
Knight Resources, Inc.
Knight Specialties, Inc.
Knight Well Services, Inc.
Le Chevallier, Inc.
Robinson Tubular Services, Inc.
Tri-Drill, Inc.
Prideco
Myco
Knight Manufacturing, Inc.
Advanced Safety Training & Management, Inc.
HMC Leasing, Inc.
Knight Saw Services, Inc.
Knight Information Systems, LLC
Knight SK Properties, LLC
Knight International, LLC
The Knight Companies Profit Sharing 401 (k) Plan
Rayne Properties

All other terms, definitions, conditions, and exclusions of this policy remain
unchanged.

*Archive Copy*

Vincent Catapano

**Authorized Representative
or countersignature (where required by law)**