IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT A

NO. *O-10-498*

| | | |
|---|---|---|
| RIPPY OIL COMPANY, RIPPY INTEREST LLC,THE GENECOV GROUP, INC., And JOHN D. PROCTOR | § § § § | IN THE DISTRICT COURT OF |
| VS. | § § | LEON COUNTY, TEXAS |
| KNIGHT OIL TOOLS, INC., And PIONEER DRILLING COMPANY | § § | *12th* JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, RIPPY OIL COMPANY ("RIPPY OIL") on its own behalf, and on behalf of all working interest owners, to-wit: Rippy Interest LLC; and The Genecov Group, Inc., and John D. Proctor (hereinafter sometimes referred to as Plaintiffs) complaining of KNIGHT OIL TOOLS, INC. ("KNIGHT OIL TOOLS") and PIONEER DRILLING COMPANY ("PIONEER") hereinafter sometimes referred to as Defendants, and for cause of action, would show the Court the following:

I.

### DISCOVERY PLAN

Plaintiffs request that the discovery in this case be conducted under Level 3.

II.

### PARTIES

Plaintiff, RIPPY OIL, is a Texas corporation with its principal place of business in Tyler, Smith County, Texas. Rippy Oil brings suit on its own behalf and on behalf of all working interest owners, to-wit: Rippy Interest LLC; The Genecov Group, Inc., and John Procter.

Plaintiff, RIPPY INTEREST LLC, is a Texas limited liability company with its principal place of business in Tyler, Smith County, Texas.

FILED
DIANE DAVIS, DISTRICT CLERK
LEON COUNTY, TEXAS

DEC 20 2010

*Diane Davis*

MM AFFIDAVIT EXHIBIT A

Plaintiff, THE GENECOV GROUP, INC., is a Texas corporation with its principal place of business in Tyler, Smith County, Texas.

Plaintiff, John D. Proctor, is an individual residing in Tyler, Smith County, Texas.

Defendant, KNIGHT OIL TOOLS, INC., is a Louisiana corporation authorized by the Texas Secretary of State to do business in Texas and doing business in Texas. Knight Oil Tools' principal place of business in Texas is Houston, Harris County, Texas. Knight Oil Tools can be served with process by serving its registered agent Timothy R. Brown at 333 Clay Street, Suite 3300, Houston, Texas 77002. Plaintiffs request that citation issue at this time.

Defendant, PIONEER DRILLING COMPANY, is a Texas corporation with its principal place of business in Texas and can be served with process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Dallas County, Texas 75201. Plaintiffs request that citation issue at this time.

III.

JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy is in excess of the minimal jurisdictional limits of the Court. The Court has personal jurisdiction over Defendants, because they have purposely availed themselves of the privileges and benefits of conducting business in Texas pursuant to §17.042 of the Texas Civil Practice & Remedies Code, have engaged in business in Texas by providing services to Texas residents, which services were to be performed in whole or in part in Texas, and the cause of action made the basis of this suit arises out of Defendants' contacts with and in the state of Texas.

MM AFFIDAVIT EXHIBIT A

Venue is proper in Leon County, Texas pursuant to the provisions of §§ 15.001, 15.002(a)(1) of the Texas Civil Practice & Remedies Code because Leon County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

IV.

FACTUAL SUMMARY

At all times mentioned below, Plaintiff Rippy Oil Company was, and is now, engaged in the oil and gas business, including the exploration, drilling, and production of hydrocarbons.

At all times mentioned below, Defendant Knight Oil Tools was, and is now, engaged in the business of providing drilling services including supplying drill pipe.

At all times mentioned below, Defendant Pioneer Drilling was, and is now, engaged in the business of providing drilling services including the use of drill pipe.

Heretofore, Defendants provided Plaintiff certain drilling services including the supplying of drill pipe for which Defendants have invoiced Plaintiffs in excess of the minimum jurisdictional limits of this Court. Plaintiffs sought the drilling services and drill pipe for use in their well known as the Easterling No. 1-H well located in Leon County, Texas. The Easterling No. 1-H well was the first of a multi-well program planned for the Aguila Vado (Eagleford Shale) Field which comprised approximately 14,000 acres in Leon County.

The drill pipe supplied by Defendant Knight Oil Tools and utilized by Defendant Pioneer Drilling was represented to be API Specification 5D 3 ½" O.D. 13.30-PPF Grade S-135 drill pipe.

At the time the drill pipe was supplied, Defendants knew or had reason to know the purpose for which Plaintiffs sought the drill pipe and drilling services and that Plaintiffs were relying on Defendants to furnish drill pipe and drilling services suitable and fit for that purpose.

3

MM AFFIDAVIT EXHIBIT A

On or about May 11, 2010, Defendant Pioneer Drilling was utilizing the drill pipe supplied by Defendant Knight Oil Tools during drilling operations when the drill pipe supplied by Defendant Knight Oil Tools failed, destroying the Easterling No. 1-H Well.

V.

## NEGLIGENCE

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary."

Defendants were negligent in the distribution and use of the drill pipe in question. Defendants' negligence was a proximate cause of Plaintiffs' damages. Plaintiffs cannot more specifically allege the specific acts of negligent distribution and use of the drill pipe in question on the part of Defendants at this time because facts in that regard are particularly within the knowledge of Defendants. In the alternative, in the event Plaintiffs are unable to prove specific acts of negligent distribution and use of the drill pipe in question, Plaintiffs rely on the doctrine of *res ipsa loquitur*. In this connection, Plaintiffs would show that the character of the occurrence giving rise to this litigation is such that it would not have happened in the absence of negligence, and the distribution and use of the drill pipe in question was within the exclusive control of Defendants at the time the negligence probably occurred.

VI.

## STRICT LIABILITY

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary."

4

MM AFFIDAVIT EXHIBIT A

The drill pipe in question distributed by Defendant Knight Oil Tools was defective and unsafe for its intended purposes at the time it left the control of Knight Oil Tools and at the time it was delivered to Plaintiffs' well site. The drill pipe in question was defective in that it failed to conform to its design, specifications, and represented qualities and characteristics. The drill pipe in question was in the same or substantially same condition at the time it failed in Plaintiffs' well as it was when it was originally distributed by Defendant Knight Oil Tools. Defendant Knight Oil Tools' defective drill pipe was the producing cause of Plaintiffs' damages.

VII.

DAMAGES

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary."

As a result of Defendants' negligence and strict tort liability, Plaintiffs have suffered damages in excess of the minimal jurisdictional limits of this Court.

VIII.

JURY REQUEST

Plaintiffs request a jury trial of this matter and have accordingly paid the proper fee with the filing of Plaintiffs' Original Petition.

IX.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have:

(1)   Judgment against Defendants, jointly and severally, for damages in a sum within the jurisdictional limits of this Court;

5

MM AFFIDAVIT EXHIBIT A

(2)     Pre-judgment and post-judgment interest at the maximum rate permitted by law;

(3)     Costs of court; and

(4)     Such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

THE KRIST LAW FIRM, P.C.

BY: *Ronald D Krist*   *by Mike Morris*

RONALD D. KRIST
State Bar No. 11727000
Marina View Building
2600 South Shore Blvd., Suite 120
League City, Texas 77573
(281) 283-8500
(281) 488-3489 - Fax

TEKELL, BOOK, ALLEN & MORRIS, L.L.P.

BY: *Mike Morris*

MIKE MORRIS
State Bar No. 14495800
1221 McKinney, Suite 4300
Houston, Texas 77010-2010
(713) 222-9542
(713) 655-7727 - Fax

ATTORNEYS FOR PLAINTIFFS, RIPPY OIL
COMPANY, RIPPY INTEREST LLC, THE
GENECOV GROUP, INC., and JOHN PROCTER

6

MM AFFIDAVIT EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS
# AFFIDAVIT
# EXHIBIT B

Date: March 30, 2010



**Risk Specialists Companies**
Insurance Agency, Inc.

2929 Allen Parkway, Suite 1300
Houston, Texas 77019-2128

**d/b/a RSCIA in NH, VT & UT**

Attn:  WENDY ARCEMENT
       KNOX INSURANCE GROUP LLC
       PO BOX 53406
       LAFAYETTE, LA 70505-3406

RE:  KNIGHT OIL TOOLS INC

     Policy Number:  BE    13074559
     Policy Effective/Expiration:  From:  March 31, 2010        To:  March 31, 2011

Dear WENDY,

Enclosed are one original and one copy of the policy for the above captioned account.  Upon review of the policy, we believe it is complete and accurate based upon the binder.  However, if you have any questions or concerns, feel free to give me a call.

Thank you for the opportunity to be of service to your company on this account.  We look forward to working with you on future opportunities.

Best regards,

CLINT LASKOSKIE
SENIOR UNDERWRITER
713-342-7359

MM AFFIDAVIT EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT C

Case 6:21-cv-04191-RRS-CBW   Document 36-6   Filed 03/15/22   Page 11 of 86 PageID #:
Case 4:22-cv-00276   Document 7   Filed on 02/07/22 in TXSD   Page 1 of 2
1364

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

RIPPY OIL CO.

                    CIVIL ACTION

v.

                    NO.: 4:22-CV-00276

ACE AMERICAN INSURANCE CO.,
CHARTIS SPECIALTY INSURANCE CO.,    JUDGE: KENNETH M HOYT
RISK SPECIALISTS COMPANIES
INSURANCE AGENCY, INC.

## CORPORATE DISCLOSURE STATEMENT

As of January 1, 2010, Risk Specialist Companies Insurance Agency, Inc. was a direct,

wholly-owned (100%) subsidiary of A.I. Risk Specialists Insurance, Inc.  As of July 1, 2015, A.I.

Risk Specialists Insurance, Inc. was merged into Risk Specialist Companies Insurance Agency,

Inc.  As a consequence, as of the date of the merger Risk Specialist Companies Insurance Agency,

Inc. is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a

wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%)

subsidiary of American International Group, Inc., which is a publicly-held corporation.

Respectfully Submitted,

*/s/ Robert I. Siegel*
ROBERT I. SIEGEL (#607556)
C.J. CHAMBERS (TX#260069)
**GIEGER, LABORDE & LAPEROUSE, LLC**
5151 San Felipe, Suite 750
Houston, TX 77056
Telephone: (823) 255-6000
Facsimile:   (823) 255-6001
Email:    rsiegel@glllaw.com
Email:    cchambers@glllaw.com

and

MM AFFIDAVIT EXHIBIT C

One Shell Square, Suite 4800
701 Poydras Street
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile:     (504) 561-1011

*Counsel for AIG Specialty Ins. Co. f/k/a
Chartis Specialty Ins. Co.* and *Risk
Specialists Companies Insurance Agency,
Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2022, I electronically filed *Corporate Disclosure Statement* with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties to this proceeding.

/s/ Robert I. Siegel
ROBERT I. SIEGEL

MM AFFIDAVIT EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT D-1



MM AFFIDAVIT EXHIBIT D-1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT D-2



MM AFFIDAVIT EXHIBIT D-2

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT D-3



MM AFFIDAVIT EXHIBIT D-3

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT D-4

MM AFFIDAVIT EXHIBIT D-4



MM AFFIDAVIT EXHIBIT D-4

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT E



*ACE USA*
*ACE Risk Management*
*Two Riverway, Ste 900*
*Houston, TX  77056*
*Direct (713) 403-3027*
*Fax (713) 403-3035*
*Cassi.Pepito@acegroup.com*

April 29, 2010

**Wendy Arcement**
Knox Insurance Group
2014 W. Pinhook Rd., Suite 610
Lafayette, LA  70508

RE:              **Knight Oil Tools, Inc.**
Policy Number:    HDO G2 49 40 21 4
Policy Term:      03/31/10 to 03/31/11

Dear Wendy:

ACE USA is committed to giving the best service to its customers.  Per our service standards, we are pleased to provide you with the enclosed **General Liability** policy. Please note that the WC & Auto policies will follow due to a system error. Also your address is not correct on the policy so I will have the policy endorse with the correct address that will follow soon.

Should you have any questions or concerns regarding the enclosed document(s), please feel free to contact **Chris Reichardt @ 713-403-3186**

Sincerely
*Cassi Pepito*
Underwriting Assistant

One of the ACE Group of Insurance & Reinsurance Companies

RECEIVED-KNOX (LA) MAY - 3 2010

KNIGHT000101

MM AFFIDAVIT EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS

# AFFIDAVIT

# EXHIBIT F-1



IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

AIG SPECIALTY INSURANCE          §   CIVIL ACTION NO. 6:21-CV-041919
COMPANY (f/k/a CHARTIS          §
SPECIALTY INSURANCE COMPANY)    §
                                §   JUDGE ROBERT R SUMMERHAYS
        VS.                     §
                                §
KNIGHT OIL TOOLS, INC.          §   MAGISTRATE CAROL B WHITEHURST

# MORRIS AFFIDAVIT EXHIBIT F-2





IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT F-1



IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT F-2



MM AFFIDAVIT EXHIBIT F-2



IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT G

# Tekell Book

MICHAEL P. MORRIS
Partner
BOARD CERTIFIED - PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
mmorris@tekellbook.com
Houston Office

September 19, 2016

Knight Energy Holdings LLC,
Successor in interest to Knight Oil Tools LLC,
Successor in interest to Knight Oil Tools Inc.
c/o Attorney of Record:
J. Parker Fauntleroy
Todd Foss
COKINOS, BOSIEN & YOUNG
1221 Lamar, 16th Floor
Houston, Texas 77010

*Via CMRRR 7016 0600 0000 1623 4059*
*and Email: pfauntleroy@cbylaw.com*
*tfoss@cbylaw.com*

Re:   Cause No. 0-10-498; *Rippy Oil Company, et al v. Knight Oil Tools, Inc. and Pioneer Drilling Company*; In the 278th Judicial District Court of Leon County, Texas

**NOTICE OF DECEPTIVE TRADE PRACTICE CLAIM AND DEMAND FOR SETTLEMENT PURSUANT TO RULE 408 OF THE TEXAS RULES OF EVIDENCE**

TO WHOM IT MAY CONCERN:

The undersigned represents Rippy Oil Company as well as its working interest owners in the Easterling No. 1-H well in Leon County.

The purpose of this letter is to provide Knight Oil Tools Inc now known as Knight Energy Holdings LLC ("KOT") with formal notice of my client's claims against KOT under the Texas Deceptive Trade Practices and Consumer Protection Act (the "DTPA") and my client's settlement demand pursuant to Rule 408 of the Texas Rules of Evidence.

As you know, KOT distributed what it represented to be API Premium Class, 3½ -inch, 13.30-PPF, Grade S - 135 drill pipe to Rippy Oil Company in April, 2010. The drill pipe in question was represented to be API inspected to API Premium Class standards and condition. My client sought the drill pipe for use in drilling the Easterling No. 1-H well, located in Leon County, Texas. At the time the drill pipe was supplied, KOT knew, or had reason to know, the purpose for which my client sought the drill pipe and that my client was relying on KOT to furnish drill pipe suitable and fit for that purpose.

Tekell, Book, Allen & Morris, L.L.P.

Houston Office                                                    Corpus Christi Office
1221 McKinney, Suite 4300 ★ Houston, Texas 77010            711 N. MM AFFIDAVIT EXHIBIT G 78475
P 713.222.9542 ★ F 713.655.7727        www.tekellbook.com        P 361.883.6100 ★ F 361.883.6103

September 19, 2016
Page 2

_____

On or about May 11, 2010, Pioneer Drilling Company, was utilizing the drill pipe supplied by KOT during normal drilling operations when the drill pipe in question failed, destroying the Easterling No. 1-H well which could not be reproduced. At the time of the KOT drill pipe failure, my client had incurred drilling cost in the approximate amount of $2,216,919. After the KOT drill pipe failure, my client incurred additional economic damages in attempts to mitigate damage to include additional drilling expenses of $1,948,501.47 which included the cost of attempting to salvage the Easterling No. 1-H well in the amount of $643,896.00 and actual damages for loss of the bottom hole assembly in the amount of $165,000.00 and the Varel bit in the amount of $18,500.22

KOT has previously been provided with Ted Bruno's metallurgical report and failure analysis. KOT has further had the opportunity to inspect the drilling pipe that failed. KOT has also had the opportunity to review the electronic drilling recorder which establishes that the drill pipe in question was not over-pulled or over-torqued at the time of the drill pipe failure. Finally, the Easterling No. 1-H well environment does not contain H2S or CO2 and the drilling mud used was appropriate.

Accordingly, our investigation and discovery to date, has led us to conclude that the KOT drill pipe in question was not API Premium Class drill pipe and KOT engaged in false, misleading, and deceptive acts and practices that my client relied on to its detriment, which acts and practices were a producing cause of damages. The false, misleading and deceptive acts and practices include the following:

1.  representing that the drill pipe had or would have characteristics, uses and benefits that it did not have;

2.  representing that the drill pipe is or will be of a particular standard, quality or grade when it was of another;

3.  representing that work or services have been performed on drill pipe when work or services were not performed;

4.  representing that an agreement confers or involves rights that it did not have or involve;

5.  failing to disclose information about the drill pipe that was known at the time of the transaction with the intention to induce Rippy Oil Company into a transaction it otherwise would not have entered into if the information had been disclosed; and

6.  causing confusion or misunderstanding as to the source, sponsorship, approval or certification of the production casing.

MM AFFIDAVIT EXHIBIT G

September 19, 2016
Page 3

_____

Further, we believe the evidence in this case establishes that KOT engaged in an unconscionable action or course of action that was a producing cause of damages.  An "unconscionable action or course of action" is an act or practice that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

Finally, we believe the evidence establishes that KOT failed to comply with the express and implied warranties which failure was a producing cause of damages.

Section 17.50(a) of the Texas Deceptive Trade Practices Act provides in pertinent part that a consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

1.    The use or employment by any person of a false, misleading or deceptive act or practice that is:

(A)    specifically enumerated in a subdivision of subsection (b) of § 17.46 of this subchapter, including (2), (5), (7), (12), (20), (22), (24); and

(B)    relied on by the consumer to the consumer's detriment;

2.    Breach of an express or implied warranty;

3.    Any unconscionable action or course of action by any person.

In a suit filed under § 17.50 of the DTPA, the consumer who prevails may obtain:

The amount of economic damages found by the trier of fact and if the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more then three times the amount of damages for mental anguish and economic damages.

Further, § 17.50(d) provides that each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees.

MM AFFIDAVIT EXHIBIT G

September 19, 2016
Page 4

_____

As a result of the catastrophic failure of the drill pipe distributed and supplied by KOT, Rippy Oil Company incurred additional drilling expenses as noted above of $1,948,501.47 which includes the cost of attempting to salvage the Easterling No. 1-H well in the amount of $643,896.00 and damages for loss of the bottom hole assembly and the bit in the amounts noted above. Additionally, the KOT drill pipe failure destroyed The Easterling No. 1-H well which cannot be reproduced. The fair market value of the Easterling No. 1-H well is in excess of $8,000,000.00.

As a result of KOT's violation of the Texas Deceptive Trade Practices Act, as outlined above, my clients are entitled to recover at least:

1.      $9,948,501.47 in economic damages;

2.      reasonable attorneys' fees and expenses for time to date and expert fees in assisting my client in the amount of $113,750.00; and

3.      additional damages of three times the amount of economic damages.

My client reserves the right to adjust these amounts to conform to the information and evidence that will be available at the time of trial, if litigation becomes necessary.

Please note that this letter is sent pursuant to § 17.505(a) of the DTPA and intended to address the deceptive trade practices committed by KOT.

This letter is also to give your clients every opportunity to resolve this matter by compromised settlement agreement pursuant to Rule 408 of the Texas Rules of Evidence, without having to incur additional legal expense associated with the litigation. Accordingly, in the spirit of compromise, my client is willing to resolve all claims arising out of the KOT drill pipe failure in consideration of the payment of $8,500,000.00 million dollars within 60 days of the date of this letter.

If this matter is not settled within the next 60 days, my clients have authorized me to prosecute all claims and causes of action available to them to recover all actual damages, prejudgement, and post-judgment interest permitted by law, attorneys' fees and costs, as well as additional damages.

Please forward a copy of this letter to KOT's liability insurance carriers who have been represented to be ACE American Insurance Company and Chartis Specialty Insurance Company.

MM AFFIDAVIT EXHIBIT G

September 19, 2016
Page 5

If you have any questions or comments, please don't hesitate to contact the undersigned.

Very truly yours,

Mike Morris
Attorney of record for Rippy Oil Company

MM:md
(9999) 13543

MM AFFIDAVIT EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS
# AFFIDAVIT
# EXHIBIT H

Filed 10/26/2016 4:49:37 PM
Beverly Wilson
District Clerk
Leon County, Texas
Alex Earley

NO. 0-10-498

| | | |
|---|---|---|
| RIPPY OIL COMPANY, RIPPY INTEREST LLC,THE GENECOV GROUP, INC., And JOHN D. PROCTOR, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| PLAINTIFFS | §<br>§ | |
| VS. | §<br>§ | LEON COUNTY, TEXAS |
| KNIGHT OIL TOOLS, INC., And PIONEER DRILLING COMPANY, | §<br>§<br>§ | |
| DEFENDANTS | § | 278th JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, RIPPY OIL COMPANY ("RIPPY OIL") on its own behalf, and on behalf of all working interest owners, to-wit: Rippy Interest LLC; and The Genecov Group, Inc., and John D. Proctor (hereinafter sometimes referred to as Plaintiffs) complaining of KNIGHT OIL TOOLS, INC. now known as Knight Oil Tools LLC ("KNIGHT OIL TOOLS") and PIONEER DRILLING COMPANY ("PIONEER") hereinafter sometimes referred to as Defendants, and for cause of action, would show the Court the following:

I.

### DISCOVERY PLAN

Plaintiffs request that the discovery in this case be conducted under Level 3.

II.

### PARTIES

MM AFFIDAVIT EXHIBIT H

Plaintiff, RIPPY OIL, is a Texas corporation with its principal place of business in Tyler, Smith County, Texas. Rippy Oil brings suit on its own behalf and on behalf of all working interest owners, to-wit: Rippy Interest LLC; The Genecov Group, Inc., and John Procter.

Plaintiff, RIPPY INTEREST LLC, is a Texas limited liability company with its principal place of business in Tyler, Smith County, Texas.

Plaintiff, THE GENECOV GROUP, INC., is a Texas corporation with its principal place of business in Tyler, Smith County, Texas.

Plaintiff, John D. Proctor, is an individual residing in Tyler, Smith County, Texas.

Defendant, KNIGHT OIL TOOLS, INC., now KNIGHT OIL TOOLS LLC, (Knight Oil Tools) is a Louisiana corporation and now a limited liability company authorized by the Texas Secretary of State to do business in Texas and doing business in Texas. Knight Oil Tools' principal place of business in Texas is Houston, Harris County, Texas. Knight Oil Tools can be served with process by serving its registered agent Timothy R. Brown at 333 Clay Street, Suite 3300, Houston, Texas 77002. Defendant Knight Oil Tools, Inc has made an appearance and is being served with this First Amended Petition by serving its attorney of record.

Defendant, PIONEER DRILLING COMPANY, (Pioneer Drilling) is a Texas corporation with its principal place of business in Texas and can be served with process by serving its registered agent CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Dallas County, Texas 75201. Defendant Pioneer Drilling Company has made an appearance and is being served with this First Amended Petition by serving its attorney of record.

2

MM AFFIDAVIT EXHIBIT H

III.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy is in excess of the minimal jurisdictional limits of the Court. The Court has personal jurisdiction over Defendants, because they have purposely availed themselves of the privileges and benefits of conducting business in Texas pursuant to §17.042 of the Texas Civil Practice & Remedies Code, have engaged in business in Texas by providing services to Texas residents, which services were to be performed in whole or in part in Texas, and the cause of action made the basis of this suit arises out of Defendants' contacts with and in the state of Texas.

Venue is proper in Leon County, Texas pursuant to the provisions of §§ 15.001, 15.002(a)(1) of the Texas Civil Practice & Remedies Code because Leon County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

IV.

## FACTUAL SUMMARY

At all times mentioned below, Plaintiff Rippy Oil Company was, and is now, engaged in the oil and gas business, including the exploration, drilling, and production of hydrocarbons.

At all times mentioned below, Defendant Knight Oil Tools was, and is now, engaged in the business of providing drilling services including supplying drill pipe and inspection services through its wholly owned, supervised, and captured in-house inspection division Robinson Tubular Services Inc., a Knight Oil Tools company, which merged effective April 4, 2011 into Knight Oil Tools LLC the successor in interest to Knight Oil Tools Inc. which was also merged into Knight Oil Tools LLC in April 2011. Knight Oil Tools LLC assumed all liabilities and obligations of Robinson Tubular

3

MM AFFIDAVIT EXHIBIT H

Services Inc. and Knight Oil Tools Inc. in April 2011 including liabilities for the drill pipe failure made the basis of this lawsuit.

At all times mentioned below, Defendant Pioneer Drilling was, and is now, engaged in the business of providing drilling services including the use of drill pipe.

Heretofore, Defendants provided Plaintiff certain drilling services, sales, and rentals including the supplying and rental of drill pipe by Defendant Knight Oil Tools for which Defendants have invoiced Plaintiffs in excess of the minimum jurisdictional limits of this Court. Plaintiffs sought the drilling services and drill pipe for use in their well known as the Easterling No. 1-H well located in Leon County, Texas. The Easterling No. 1-H well was one of the first of a multi-well program planned for the Aguila Vado (Eagleford Shale) Field discovered by Rippy Oil Company which comprised approximately 14,000 acres in Leon County. Plaintiffs acquired its mineral acreage at an average cost well below the mineral acreage costs subsequent to Plaintiffs successful discover of the Aguila Vado Field.

The drill pipe supplied and delivered by Defendant Knight Oil Tools to Plaintiffs for utilization by drilling contractor, Defendant Pioneer Drilling, was represented to be API inspected, API Premium Class, 3 ½" O.D. 13.30-PPF Grade S-135 drill pipe with API Premium Class IF or NC38 tool joints designated by center punch mark on pin upset and two white bands around pin end pipe body and accompanying inspection report (hereinafter "drill pipe" or "drill pipe in question"), that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well. Indeed, after allegedly performing the appropriate API inspection pursuant to API Recommended Practice 7G and/or 7G - 2, Defendant Knight Oil Tools marked the drill pipe in question as API Premium with one center punch and two painted double white bands only and no other color paint band or bands

4

MM AFFIDAVIT EXHIBIT H

on the drill pipe tool joint. Defendant Knight Oil Tools also represented that drill pipe including tool joints had been inspected. Drill pipe marked with one center punch and painted with two double white bands conveys a well established industry representation to users of drill pipe in the oil and gas business that the drill pipe including tool joints, has been inspected and found to be API Premium Class. Defendant Knight Oil Tools knew or in the exercise of ordinary care should have known that one center punch and two painted double white bands conveyed and represented to the user that the drill pipe in question was API inspected and API Premium Class and met certain qualities, characteristics, and capacities that made the drill pipe suitable for use in drilling horizontal wells. Defendant Knight Oil Tools knew that Plaintiffs' drilling consultant and Defendant Pioneer Drilling would be relying on the one center punch and/or double white bands and accompanying inspection papers as a representation that the drill pipe in question was API inspected and API premium class drill pipe, that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well.

At the time the drill pipe was distributed and supplied, Defendants knew or had reason to know the purpose for which Plaintiffs sought the drill pipe and drilling services and that Plaintiffs were relying on Defendants to furnish drill pipe and drilling services suitable and fit for that purpose.

On or about May 11, 2010, Defendant Pioneer Drilling was utilizing the drill pipe supplied and represented to have been API inspected and API Premium Class by Defendant Knight Oil Tools during normal drilling operations and well within the capacity of API Premium Class drill pipe. The drill pipe was being utilized well within the capacity, capabilities, and operating parameters of API Premium Class drill pipe, when the drill pipe supplied by Defendant Knight Oil Tools catastrophically failed, destroying a valuable portion of the Easterling No. 1-H well which prevented

MM AFFIDAVIT EXHIBIT H

its completion and subsequent production of oil reserves from the target intervals Plaintiffs had

successfully penetrated with the Easterling No. 1-H well bore.  Plaintiffs made every effort to

mitigate their damages by attempting to fish the failed drill pipe, separated drill pipe string, bottom-

hole assembly, and drill bit damaged and lost in the hole after notifying Defendant Knight Oil Tools

of the drill pipe failure.  Despite efforts to salvage same, Plaintiffs could not reproduce the Easterling

No. 1-H well with resulting loss of well bore and hydrocarbon reserves, and drilling equipment

damaged and lost down hole and charged to Plaintiffs, all of which caused Plaintiffs to suffer

damages set forth below in excess of the minimum jurisdictional limits of this Court.


## NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual

Summary." Defendants were negligent in the selection, inspection, labeling, marking, distribution,

representation, and use of the drill pipe in question.  Defendants' negligence was a proximate cause

of Plaintiffs' damages.  Discovery is continuing, and Plaintiffs cannot more specifically allege the

specific acts of negligent inspection, distribution, representation, and utilization of the drill pipe in

question on the part of Defendants at this time because facts in that regard are particularly within the

knowledge of Defendant Knight Oil Tools before delivery of the drill pipe (and after its return) and

Defendant Pioneer Drilling after delivery of the drill pipe to the Easterling No. 1-H well-site.  In the

alternative, in the event Plaintiffs are unable to prove specific acts of negligent inspection,

distribution, representation, and utilization of the drill pipe in question, Plaintiffs rely on the doctrine

of *res ipsa loquitur*.  In this connection, Plaintiffs would show that the character of the occurrence

giving rise to this litigation is such that it would not have happened in the absence of negligence, and

6

the inspection, supply, distribution, representation, and use of the drill pipe in question was within the exclusive control of Defendants at the time the negligence probably occurred.

Additionally, Defendant Knight Oil Tools initially represented that it would supply API inspected, API Premium Class drill pipe to Plaintiffs. Defendant Knight Oil Tools undertook to obtain and provide API inspected and API Premium Class drill pipe. Defendant Knight Oil Tools failed to exercise reasonable care to secure API inspected and API Premium Class drill pipe, that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well. Indeed, the drill pipe supplied by Defendant Knight Oil Tools was not properly API inspected or labeled, was not API Premium Class, had undersized O.D. and I.D. tool joints that also exceeded maximum I.D. for API Premium Class drill pipe, and was excessively worn, corroded, pitted, and cracked before it arrived at the Easterling No. 1-H well-site which rendered the drill pipe unsafe, unsuitable, and unfit for the use of the horizontal drilling of Plaintiffs' well. Defendant Knight Oil Tools knowingly supplied Plaintiffs with false and/or misleading information, including but not limited to, the fact that the drill pipe was API inspected and API Premium Class as signified by the false inspection papers, one center punch mark, and painted double white bands on each joint of drill pipe delivered to the well-site including the drill pipe that failed. Plaintiffs relied on the representation and undertaking by Defendant Knight Oil Tools in using the drill pipe. Defendant Knight Oil Tools did not exercise reasonable care or competence in selecting, inspecting, marking, labeling, representing, or communicating information about the drill pipe. If the drill pipe had been as represented by Defendant Knight Oil Tools, Plaintiffs would not have suffered the damages Plaintiffs suffered. The negligence and negligent misrepresentation of Knight Oil Tools in this regard and to be proved at trial was a proximate cause of Plaintiffs' damages.

7

MM AFFIDAVIT EXHIBIT H

Moreover, Defendant Pioneer Drilling undertook to visually inspect the drill pipe in question before using same and to notify Plaintiffs of any apparent defects therein. Defendant Pioneer Drilling failed to notify Plaintiffs of any visual defects in the drill pipe in question until after the drill pipe had failed in the well. After the drill pipe failure, it was determined that the drill pipe supplied by Defendant Knight Oil Tools was not properly API inspected or labeled, was not API Premium Class, had undersized O.D. and I.D. tool joints that also exceeded the maximum I.D. for API Premium Class drill pipe and was excessively worn, corroded, pitted, and cracked which rendered the drill pipe unsafe, unsuitable, and unfit for use in the horizontal drilling of Plaintiffs' well. Defendant Pioneer Drilling represented that it would perform a visual inspection of the drill pipe in question. Plaintiffs relied on the representation and undertaking by Defendant Pioneer Drilling. If Defendant Pioneer had discharged its representation and undertaking, Plaintiffs would not have suffered the damages Plaintiffs suffered. Defendant Pioneer Drilling's negligence and negligent misrepresentation in this regard was a proximate cause of Plaintiffs' damages including amounts Defendant Knight Oil Tools seeks to recover from Plaintiffs.

Defendants' negligence and negligent misrepresentation as set out above was a proximate cause of injury to Plaintiffs, which resulted in the following damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' negligence and negligent misrepresentation proximately caused

8

direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendants' breach of legal duties owed Plaintiffs.

VI.

STRICT LIABILITY/ PRODUCT LIABILITY

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary," and the causes of action asserted in Paragraph V under "Negligence and Negligent Misrepresentation."

Defendant Knight Oil Tools engaged in the business of designing, manufacturing, constructing, rebuilding, fabricating, processing, assembling, and marketing drill pipe for use (by drilling contractors, mineral interest owners, and operators) in drilling oil and gas wells including lateral on horizontal wells.

The drill pipe in question that was placed in the stream of commerce and distributed by Defendant Knight Oil Tools was defective and unsafe for its intended purpose at the time it left the control of Defendant Knight Oil Tools and at the time it was delivered to Plaintiffs' well-site. The drill pipe in question was defective in that it failed to conform to its design, specifications, and represented qualities and characteristics, was not properly API inspected or labeled, was not API Premium Class, had undersized O.D. and I.D. tool joints that also exceeded the maximum I.D. for API Premium Class drill pipe and was excessively worn, corroded, pitted, and cracked which rendered the drill pipe unsafe, unsuitable, unfit, and unreasonably dangerous for use in drilling of

MM AFFIDAVIT EXHIBIT H

Plaintiffs' well. The drill pipe in question was in the same or substantially same condition at the time it failed as it was when it was originally distributed by Defendant Knight Oil Tools to the Easterling No. 1-H well-site.  Defendant Knight Oil Tools' defective drill pipe was the producing cause of Plaintiffs' damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' negligence and negligent misrepresentation proximately caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendants' breach of legal duties owed Plaintiffs.

Moreover, although Defendant Knight Oil Tools was not the manufacturer of the drilling pipe in question, Defendant Knight Oil Tools is a "manufacturer" as defined by § 82.001(4) and is nevertheless liable for product liability under Chapter 82 of the Texas Civil Practice & Remedy Codes as a "seller" pursuant to § 82.001(3). Specifically, Defendant Knight Oil Tools as seller is liable to Plaintiffs pursuant to § 82.003(a)(2), (4), (5), (6) and (7).

MM AFFIDAVIT EXHIBIT H

VI.

BREACH OF EXPRESS WARRANTY OF GOODS

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary." Defendant Knight Oil Tools distributed, sold, rented, and/or otherwise placed in the stream of commerce for commercial purposes and use by Plaintiffs the above-described drill pipe. Defendant Knight Oil Tools made a representation to Plaintiffs about the quality of the drill pipe. Specifically, Defendant Knight Oil Tools represented that the drill pipe supplied and utilized in drilling the Easterling No. 1-H well was API inspected, API Premium Class drill pipe that was safe, suitable, and fit for use in the horizontal drilling of Plaintiffs' well. Among other representations, Defendant Knight Oil Tools marked the drill pipe and distributed same with one center punch mark and double white painted bands only. Defendant Knight Oil Tools also presented a false inspection report with delivery of the drill pipe.

Defendant Knight Oil Tools made the representation as an affirmation of fact. Moreover, Defendant Knight Oil Tools possessed superior knowledge and it is an actionable statement of fact when made, as it was here, by Defendant Knight Oil Tools who knew, or should have known, Plaintiffs were justifiably relying on its superior knowledge. The drill pipe did not comply with Defendant Knight Oil Tools' representations in that the drill pipe was not properly API inspected or labeled and was not API Premium Class, but instead had undersized O.D. and I.D. tool joints that also exceed the maximum I.D. and was excessively worn, corroded, pitted, and cracked, which was a breach of Defendant Knight Oil Tools' express warranty. Plaintiffs notified Defendant Knight Oil Tools of the breach of the express warranty.

11

MM AFFIDAVIT EXHIBIT H

Defendants' breach of warranty directly and proximately caused injury to Plaintiffs, which resulted in the following damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' breach of warranty proximately caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore, hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' breach of express warranty.

VII.

BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND<br>FITNESS FOR A PARTICULAR PURPOSE

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary". In the alternative, Plaintiffs would show that Defendant Knight Oil Tools was a seller and distributor of the drill pipe rented and distributed to Plaintiffs.

The drill pipe was unmerchantable when Defendants tendered it to Plaintiffs because it was not properly API inspected or labeled and was not API Premium Class, but instead had undersized O.D. and I.D. tool joints, that also exceeded the maximum I.D. for API Premium

12

MM AFFIDAVIT EXHIBIT H

Class drill pipe and was excessively worn, corroded, pitted, and cracked, to the extent that it would not withstand customary drilling activity, with the operational capacity of API Premium Class drill pipe, which is a breach of implied warranty of merchantability.

Plaintiffs notified Defendants of the breach of the warranty of merchantability.

Defendants' breach of implied warranty of merchantability directly and proximately caused injury to Plaintiffs, which resulted in the following damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well, which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' breach of warranty proximately caused direct and/or consequential damages to include the loss of the Easterling No. 1-H lateral well bore, hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' breach of warranty.

Further, Defendant Knight Oil Tools distributed the drill pipe in question knowing that Plaintiffs sought the drill pipe for use in drilling its well. Defendant Knight Oil Tools knew that Plaintiffs were relying on Defendant Knight Oil Tools' skill or judgment to select, inspect, and classify drill pipe fit for API Premium Class designation, identified by one center punch and double white bands, for the intended purpose. Defendants delivered and utilized drill pipe that

MM AFFIDAVIT EXHIBIT H

was not properly API inspected and labeled; was not API Premium Class as noted above; was not acceptable or worthy to receive one center punch and be painted with double white bands only; and was so defective and flawed because of excessive wear, corrosion, pitting, and cracking that the drill pipe was unfit for use in any drilling including horizontal drilling.

Plaintiffs notified Defendants of the breach of the warranty of fitness for a particular purpose.

Defendants' breach of implied warranty of fitness for a particular purpose directly and proximately caused injury to Plaintiffs, which resulted in the following damages:

Cash market value damages for destruction of that portion of the Easterling No. 1-H well, which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendant Knight Oil Tools' breach caused direct and/or consequential damages to include the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' breach of warranty of merchantability and fitness for a particular purpose.

MM AFFIDAVIT EXHIBIT H

## VIII.

## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

Plaintiffs incorporate herein by reference the factual allegations contained in the preceding Paragraphs V, VI, VII, as well as those allegations set forth in Paragraph IV under "Factual Summary".

Defendant Knight Oil Tools engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Tex. Bus. & Comm. Code § 17.41 et. seq.) as alleged herein.

Defendants violated § 17.46(b) of the Texas Business & Commerce Code in that Defendants:

    a.    represented that goods (drill pipe) were of a particular standard, quality or grade, or that goods are of a particular style or model , when they are of another;

    b.    represented that goods (drill pipe) had approval, characteristics or uses that they did have not have;

    c.    failed to disclose information about goods (drill pipe) that was known at the time of the transaction with the intention to induce Plaintiff into a transaction it otherwise would not have entered into if the information had been disclosed for the benefit of others, including the Plaintiffs;

    d.    caused confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services. (drill pipe and inspection of same).

As described above in Paragraphs V, VI, and VII, these acts, practices and/or omissions by Defendant Knight Oil Tools were false, misleading and deceptive. As previously described, Plaintiffs relied upon all of these acts, practices, and/or omissions to their detriment, and they were a producing cause of damages to Plaintiffs.

15

MM AFFIDAVIT EXHIBIT H

Moreover, Defendant Knight Oil Tools have violated Texas Business & Commerce Code § 17.50 by breaching the express and implied warranties described above in Paragraphs VI and VII.

The acts, practices, and/or omissions made by Defendant Knight Oil Tools and the warranties breached by Defendant Knight Oil Tools were a producing cause of Plaintiffs' damages in an amount in excess of the minimum jurisdictional limits of this Court.

The acts, practices and/or omissions made by Defendant Knight Oil Tools as described above were committed knowingly. Defendant Knight Oil Tools was actually aware, at the time of their conduct, of the falsity and deception about which Plaintiffs are complaining. Moreover, Defendant Knight Oil Tools were aware of the conditions, defects or failures which constitute the breaches of warranties described above.

Plaintiffs would further assert the applicability of Section 17.42 of the Texas Business and Commerce Code and that any attempt by Defendant Knight Oil Tools to assert waiver release, limitation of liability, indemnity, or other alleged exculpatory defenses are contrary to public policy, unenforceable, and void.

Defendant Knight Oil Tools' violation of the Texas Deceptive Trade Practices Act was a proximate and/or producing cause of injury to Plaintiffs which resulted in the following damages: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to

16

reproduce the Easterling No. 1-H well. Additionally, Defendants' violation of the Texas Deceptive Trade Practices Act was a producing and/or proximate cause of direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' violations of the Texas Deceptive Trade Practices Act.

IX.

GROSS NEGLIGENCE

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary" and Paragraph V under "Negligence and Negligent Misrepresentation."

Plaintiffs would further show that the conduct of Defendants when viewed objectively from Defendants' stand point at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeding with conscious indifference to the rights, safety, or welfare of others.  As a result of Defendants' gross negligence, Plaintiffs are entitled to punitive and/or exemplary damages pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code. Moreover, exemplary damages are not capped in this case as Defendant Knight Oil Tools violated § 41.008(c)(11) of the Texas Civil Practice & Remedies Code and § 32.46 of the Texas Penal Code by securing execution of a document by deception.

17

MM AFFIDAVIT EXHIBIT H

X.

BREACH OF CONTRACT

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary." In the alternative, and without waiving the causes of action plead above in Paragraphs V, VI, VII, VIII, and IX, Plaintiffs would assert that Defendant Knight Oil Tools and Defendant Pioneer Drilling agreed to provide certain drilling goods and/or services, including the supplying of drill pipe represented to be API inspected and API Premium Class drill pipe. The drill pipe in question failed under normal and customary drilling activity within the represented capacity of API Premium Class drill pipe. Defendants knew that Plaintiffs were relying on Defendants' skill or judgment to properly select, inspect, label, represent, and deliver drill pipe fit for the intended purpose. Defendants selected, inspected, labeled, delivered, represented, and utilized drill pipe that was not API inspected; was not API Premium Class; was misrepresented as double white band with one center punch mark when in fact it had undersized O.D. and I.D. tool joints, that also exceeded the maximum I.D. for API Premium Class pipe and was so excessively worn, corroded, pitted, and cracked that the drill pipe was unfit for use in horizontal drilling and should never have been marked with one center punch mark and painted as double white band API Premium Class drill pipe and delivered to the Easterling well-site. Defendants breached its agreement with Plaintiffs. As a proximate cause of said breach, Plaintiffs have been damaged in excess of the minimum jurisdictional limits of this Court including: cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that

18

portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' breach of contract proximately caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' breach of contract.

XI.

FRAUD

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under "Factual Summary" and Paragraphs VII, VIII, and IX. Defendant Knight Oil Tools made false representations by representing that the drill pipe was API inspected and by classifying the drill pipe in question as API Premium Class. Moreover, Defendant Knight Oil Tools fraudulently represented the drill pipe was API Premium Class by use of one center punch mark and double white bands only on each joint drill pipe delivered to the Easterling No. 1-H well site accompanied by a false inspection report when in fact the drill pipe in question was not API Premium Class and could not be classified as API Premium Class. These representations were material and false in that had the drill pipe been properly inspected and marked it would not have been classified API premium and marked with one center punch mark and painted with a double white band only.  When Defendant, Knight Oil Tools, made this representation, they knew the representation was false or made the representation recklessly, as a positive assertion, without

19

MM AFFIDAVIT EXHIBIT H

knowledge of its truth.  Likewise, Defendant Knight Oil Tools made the representation with the intent that Plaintiffs act on it.  Plaintiffs relied on the representations to their detriment in that had the drill pipe in question been properly inspected and classified it would not have been marked with one center punch mark and double white bands only or otherwise accompanied by a false inspection report and would not have been used in the drilling of Plaintiffs' well.  As a proximate cause of Defendants' fraud, Plaintiffs have been damaged in excess of the minimal jurisdictional limits of this Court including:  cash market value damages for destruction of that portion of the Easterling No. 1-H well which is the market value of the well less any salvage value, because reproducing that portion of the well is impossible and the cost would exceed its value due to the irreparable damage occasioned to that portion of the well. In the alternative, should the trier of fact find that the Easterling No. 1-H well could be reproduced, Plaintiffs are entitled to recover the reasonable and necessary cost to reproduce the Easterling No. 1-H well. Additionally, Defendants' fraud proximately caused direct and/or consequential damages including the loss of the Easterling No. 1-H lateral well bore and hydrocarbon reserves, the additional drilling costs incurred following the drill pipe separation, and the total loss of the drill bit, bottom-hole assembly, and other rental equipment lost down hole all of which damages were legally caused by the drill pipe failure and Defendant Knight Oil Tools' fraud.

XII.

## AIDING AND ABETTING, CIVIL CONSPIRACY,

## CONCERT OF ACTION, SPOLIATION, AND SUCCESSOR LIABILITY

Defendant Knight Oil Tools, and its employees, agents, and representatives had a duty to exercise reasonable care and judgment in its inspection of the drill pipe in question to ensure it

20

MM AFFIDAVIT EXHIBIT H

complied with API specifications including API Recommended Practice 7G or 7G-2 or other applicable industry guidelines for certifying API Premium Class drill pipe that would be safe, suitable or fit for the use as intended. Defendant Knight Oil Tools failed to exercise reasonable care and judgment in the selection, assessment, evaluation, inspection, and representations of the condition of the drill pipe in question. As a result, Defendant Knight Oil Tools delivered excessively worn, corroded, pitted, and cracked drill pipe that was negligently, falsely, fraudulently, and/or deceptively marked as API Premium Class drill pipe when it was not API Premium Class and should have never been delivered to the Easterling No. 1-H drill site. Moreover, Defendant Knight Oil Tools measured and recorded minimum O.D .numbers on numerous joints of drill pipe including the joint of drill pipe that failed which did not meet O.D. minimums or I.D. maximums for tool joints required by API Premium Class certification and industry standards. Further, had Defendant Knight Oil Tools properly performed a standard API Recommended Practice 7G or 7G-2 inspection, the drill pipe that failed would not have been classified as API Premium Class, would have been accompanied by proper inspection papers instead of the false inspection report that was delivered, and would not have been used in the Easterling No. 1-H well. Despite failing to perform the API recommended practice 7G or 7G-2 inspection, Robinson Tubular Services, Defendant Knight Oil Tools' wholly owned, controlled, and supervised in-house inspection service, which was not an independent third party inspection service, with Defendant Knight Oil Tools knowledge, approval, and ratification, nevertheless, placed one center punch mark on pin upset and painted double white bands on the drill pipe in question representing to all foreseeable users that the drill pipe was API Premium Class when it was not. Plaintiffs believe that Defendant Knight Oil Tools and its wholly owned, controlled, and

MM AFFIDAVIT EXHIBIT H

supervised in-house inspection service Robinson Tubular Services, a Knight Oil Tools company, which was merged into Knight Oil Tools LLC in April 2011, entered into an agreement to misrepresent a mixed string of different weight, worn out, corroded, pitted, and cracked drill pipe, as API inspected, API Premium Class, utilizing one center punch mark and double white bands only, when in fact the drill pipe in question was not fit to be classified as API Premium Class, double white banded drill pipe. Following its failure, Defendant Knight Oil Tools has conspired to cover up the evidence that the drill pipe in question was not API inspected, API Premium Class, double white banded drill pipe. Accordingly, Defendant Knight Oil Tools is responsible for the acts of the others including Knight Oil Tools wholly owned, controlled, and supervised in-house inspection service Robinson Tubular Services, a Knight company, that were done in the furtherance of the common purpose to cover up the misrepresentation of the drill pipe in question.

Moreover, such conduct constitutes spoliation and Plaintiffs would request an appropriate spoliation instruction at the time this case is submitted to the jury.

Subsequent to the drill pipe failure and filing of this suit, Knight Oil Tools Inc. and Robinson Tubular Services Inc. were merged into Knight Oil Tools LLC which assumed the liabilities and obligations of Knight Oil Tools Inc. and Robinson Tubular Services Inc. Knight Oil Tools Inc., now Knight Oil Tools LLC, is the named insured on the policies of liability insurance produced by Defendant Knight Oil Tools in this case in response to Request for Disclosures.

MM AFFIDAVIT EXHIBIT H

XIII.

<u>DAMAGES</u>

Plaintiffs would incorporate the factual allegations set forth in Paragraph IV under

"Factual Summary," and the causes of action asserted in Paragraphs V, VI, VII, VIII, IX, X, XI,

and XII.

As a result of Defendants' strict liability/ product liability, breach of warranty,

negligence, negligent misrepresentation, violations of the Texas Deceptive Practices Act, gross

negligence, breach of contract, and fraud as set out in Paragraphs V through XII, Plaintiffs have

suffered damages in excess of the minimal jurisdictional limits of this Court to include:

a.    General damages;

b.    Special damages;

c.    Actual damages;

d.    Incidental and consequential damages;

e.    Cash-market value of the Easterling No. 1-H well and hydrocarbon reserves;

f.    Out-of-pocket damages including the loss of the Easterling No. 1-H lateral well bore and the cost of the drill bit, bottom-hole assembly, and other rental equipment damaged, lost, and/or destroyed down hole;

g.    Loss of use damages;

h.    Mitigation damages including the cost to attempt to fish the drill pipe that separated along with the drill pipe string, bottom-hole assembly, and drill bit;

i.    Loss profits;

j.    Repair and/or replacement damages;

23

MM AFFIDAVIT EXHIBIT H

k.      Damages to the Easterling No. 1-H well lease and/or loss of reservoir and/or reservoir damage and lost hydrocarbon reserves; or in the alternative, the cost to reproduce the Easterling No. 1-H well;

l.      Additional or treble damages permitted under the Texas Deceptive Treble Practices Act;

m.      Punitive and/or exemplary damages as allowed by law;

n.      Reasonable and necessary attorneys' fees and costs through trial and on appeal;

o.      Pre-judgment interest and post-judgment interest as permitted by law; and

p.      Taxable court costs.

XIV.

## ATTORNEYS' FEES

This is the type of action against Defendant Knight Oil Tools that gives rise to attorneys' fees and, therefore, Plaintiffs would further show that it was necessary to employ the services of The Krist Law Firm, P.C. and the firm of Tekell, Book, Allen & Morris, L.L.P. and specifically, Ronald D. Krist and Mike Morris, in order to assert their claim again Defendants.  Accordingly, Plaintiffs seek to recover attorneys' fees, expenses, and costs pursuant to Tex. Civ. Prac. & Rem. Code. §38.001 and Section 17.50(d) of the Texas Deceptive Trade Practices Act to prosecute this matter to conclusion through trial and on appeal.

XV.

## CONDITIONS PRECEDENT

Pursuant to Texas Rule of Civil Procedure 54, Plaintiffs aver generally that all conditions precedent have been performed or have occurred.

24

MM AFFIDAVIT EXHIBIT H

XVI.

SELF-AUTHENTICATION

Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiffs hereby give actual written notice that all documents produced in this litigation shall be used by the Plaintiffs at pre-trial proceedings and trial.  Hence, all documents produced in this litigation are deemed self-authenticating for use in any pre-trial proceeding or at trial; and any objections thereto by the Defendants shall be in writing or placed on the record, giving Plaintiffs a reasonable opportunity to establish the challenged documents authenticity.

XVII.

RESERVATION OF RIGHTS

Plaintiffs fully reserve the right to amend or supplement this petition to add additional causes of action, parties and/or claims as discovery continues.

XVIII.

MONETARY RELIEF REQUESTED

Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs seek monetary relief over $1,000,000. Plaintiffs would state that the actual, exemplary, and/or additional damages awarded Plaintiffs are within the sound discretion of the trier of fact. Pursuant to Defendants special exceptions and request under Texas Rule of Civil Procedure 47(d), Plaintiffs seek a maximum amount of direct and consequential economic and actual damages, excluding pre-judgment and post-judgment interest, attorneys' fees and costs, not to exceed $11,239,642; additional damages not to exceed three times the amount of economic damages found; and/or

25

MM AFFIDAVIT EXHIBIT H

exemplary damages to be awarded as a penalty or by way of punishment, in the discretion of the jury not to exceed $30,000,000.

XIX.

JURY REQUEST

Plaintiffs request a jury trial of this matter and have accordingly paid the proper fee with the filing of Plaintiffs' Original Petition and continue to demand a jury trial pursuant to Texas Rule of Civil Procedure 216.

XX.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have:

(1)   judgment against Defendants for all direct and consequential economic and actual damages, exemplary damages, and/or additional damages in a sum in excess of the minium the jurisdictional limits of this Court;

(2)   pre-judgment and post-judgment interest at the maximum rate permitted by law;

(3)   costs of court;

(4)   attorneys' fees and expenses litigation through trial and on appeal; and

(5)   such other and further relief to which Plaintiffs may be justly entitled.

Respectfully Submitted,

THE KRIST LAW FIRM, P.C.

BY: *Ronald D Krist*

RONALD D. KRIST
State Bar No. 11727000

26

Marina View Building
2600 South Shore Blvd., Suite 120
League City, Texas 77573
(281) 283-8500
(281) 488-3489 - Fax

TEKELL, BOOK, ALLEN & MORRIS, L.L.P.

BY:

MIKE MORRIS
State Bar No. 14495800
1221 McKinney, Suite 4300
Houston, Texas 77010-2010
(713) 222-9542
(713) 655-7727 - Fax

ATTORNEYS FOR PLAINTIFFS, RIPPY OIL
COMPANY, RIPPY INTEREST LLC, THE
GENECOV GROUP, INC., and JOHN PROCTER

27

MM AFFIDAVIT EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT I

Fill in this information to identify the case:

Debtor 1 ___Knight Energy Holdings, LLC fka Knight Oil Tools, LLC___

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: ___Western___   District of: ___Louisiana___
                                                                              (State)

Case number ___17-51014___

## Official Form 410
# Proof of Claim
04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

| 1. | Who is the current creditor? | ___AIG Property Casualty, Inc. and its affiliates identified on the Addendum hereto___ |
|---|---|---|
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| 2. | Has this claim been acquired from someone else? | ☒ No |
|---|---|---|
| | | ☐ Yes. From whom? _____ |

| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|---|
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | ___AIG Property Casualty, Inc., Attn: Kevin J. Larner, Esq.___ Name | Name |
| | | ___80 Pine Street, 13th Floor___ Number    Street | Number    Street |
| | | ___New York, NY 10005___ City          State          ZIP Code | City          State          ZIP Code |
| | | Contact phone  _(212) 458-7101_ | Contact phone _____ |
| | | Contact email  _kevin.larner@aig.com_ | Contact email _____ |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | | _ _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ | |

| 4. | Does this claim amend one already filed? | ☒ No | |
|---|---|---|---|
| | | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on: _____ MM / DD / YYYY |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
|---|---|---|
| | | ☐ Yes. Who made the earlier filing? _____ |

Official Form 410                              **Proof of Claim**                                                    page 1

MM AFFIDAVIT EXHIBIT I

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. Do you have any number you use to identify the debtor? | ☒ No |
| | ☐ Yes. Last 4 digits of the debtor's account number you use to identify the debtor: ___ ___ ___ ___ |

| 7. How much is the claim? | $UNLIQUIDATED (SEE ATTACHED)** | **Does this amount include interest of other charges?** |
| | ** Subject to adjustment | ☒ No |
| | | ☐ Yes Attach statement itemizing interest, fees, expenses or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death or credit card. |
| | Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). |
| | Limit disclosing information that is entitled to privacy, such as health care information. |
| | SEE ATTACHED |

| 9. Is all or part of the claim secured? | ☒ No |
| | ☐ Yes. The claim is secured by a lien on property. |
| | **Nature of property:** |
| | ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this Proof of Claim. |
| | ☐ Motor vehicle |
| | ☐ Other. Describe: _____ |
| | **Basis for perfection:** _____ |
| | Attach redacted copies of documents, if any, that show evidence of perfection of as security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the liens has been filed or recorded.) |
| | **Value of property:** $_____ |
| | **Amount of the claim that is secured:** $_____ |
| | **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7) |
| | **Amount necessary to cure any default as of the date of the petition:** $_____ |
| | **Annual Interest Rate** (when case was filed) ____% |
| | ☐ Fixed |
| | ☐ Variable |

| 10. Is the claim based on a lease? | ☒ No |
| | ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |

| 11. Is the claim subject to a right of setoff? | ☐ No |
| | ☒ Yes. Identify the property: SEE ATTACHED |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |
| | * Amounts subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:   Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | *Check the appropriate box:* |
|---|---|
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☐ I am the creditor. |
| | ☒ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, of the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3751. | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/22/2017
                 MM / DD / YYYY

/s/ Kevin J. Larner, Esq.
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Kevin J. Larner, Esq. | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name\ |
| Title | Authorized Representative | | |
| Company | AIG Property Casualty, Inc. | | |
| | Identify the corporate servicers as the company if the authorized agent is a servicer. | | |
| Address | 80 Pine Street, 13th Floor | | |
| | Number       Street | | |
| | New York, NY 10005 | | |
| | City | State | ZIP Code |
| Contact phone | (212) 458-7101 | Email | kevin.larner@aig.com |

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Chapter **11** |
| **KNIGHT ENERGY HOLDINGS, LLC, et al.,** | Case No. **17-51014** |
| Debtors. | |

### ADDENDUM TO PROOF OF CLAIM OF AIG SPECIALTY INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., ILLINOIS NATIONAL INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, NEW HAMPSHIRE INSURANCE COMPANY, AND CERTAIN OTHER ENTITIES RELATED TO AIG PROPERTY CASUALTY, INC.

AIG Specialty Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., Illinois National Insurance Company, Lexington Insurance Company, Granite State Insurance Company, New Hampshire Insurance Company, and certain other entities related to AIG Property Casualty, Inc. (collectively, "AIG") that provide or provided insurance, insurance services and/or surety bonds to Knight Energy Holdings, LLC fka Knight Oil Tools, LLC et al., (collectively, "Debtors") (see the List of Debtors attached hereto), hereby submit this addendum (the "Addendum") to its proof of claim (the "Proof of Claim").

1.  As of August 08, 2017 (the "Petition Date"), the Debtors are indebted to AIG for premiums, deductibles, and other related fees, expenses and obligations for, among other things, insurance coverages and services provided and to be provided by AIG to the Debtors as more fully described below.

2.  **The Insurance Program**.  AIG provided the Debtors with certain insurance coverages, including, without limitation, liability, directors and officers, commercial umbrella liability, special contract liability, ocean marine, bodily injury liability, workmen's compensation, aircraft, additional extended coverage, homeowners, auto liability, medical malpractice, and other services pursuant to various insurance policies and other agreements (collectively, the "Insurance Program") for varying periods commencing December 12, 1987 and ending 12:01 a.m., July 14, 2018.  Attached hereto is a list of the policies issued by AIG to the Debtors and certain related documentation. This claim is made for all obligations of the Debtors and other named insureds arising under the Insurance Program whether or not the relevant insurance policies and related agreements are specifically listed or described in the attached list or documents.  Moreover, the documents which evidence the Insurance Program are voluminous and it is not practical to attach and/or list all of them.  Nothing in this description of the Insurance Program or any of the attached documents is intended to vary, amend or alter in any

way the terms, conditions, coverages, limitations, exclusions or dates of coverage of any policy or coverage.

        3.     **Fidelity and Surety Bonds.**  AIG may have provided the Debtors with various surety, fidelity and other bonds for the account of the Debtors.  Claim is asserted for all such bonds issued or outstanding and for all premiums, fees and expenses due thereunder, whether or not specifically listed or described in the attached documents.  Nothing in this description of the bond programs is intended to vary, amend or alter in any way the terms, conditions, coverages, limitations, exclusions or dates of coverage of any bond.  Should AIG be called upon to pay on any such bond, AIG may amend this proof of claim to assert a claim on account of such payment.

        4.     **Components of the Proof of Claim.**

        (a)     **Unmatured and/or Unliquidated Claim for the Insurance Program**.  Pursuant to the Insurance Program, the Debtors entered into certain agreements and are obligated to pay to AIG, among other things, certain premiums, deductibles, self-insured retention, reimbursement obligations, fees, expenses and related costs that are not readily calculable as this time.  Such amounts remain unmatured, contingent and/or unliquidated, and such amounts constitute AIG's unliquidated claim.  When the amount of premiums, deductibles, fees, expenses and other costs due under the Insurance Program, including, without limitation, damages that may arise from the rejection of the Insurance Program or any part thereof, are liquidated, become mature or are determined, such amounts shall become a liquidated claim.  AIG expressly reserves the right to amend or supplement its Proof of Claim at any time, including after any bar date, for whatever reason, including without limitation, for the purpose of filing additional claims or to specify the amount of AIG's unmatured, contingent and/or unliquidated claim as they become matured and/or liquidated.

        (b)     **Other Insurance or Services**.  To the extent AIG provides or provided any other or different insurance (including excess coverages or renewals of the Insurance Program), or other services to the Debtors, either included within or in addition to the Insurance Program, AIG hereby asserts a claim for all obligations of the Debtors to AIG arising thereunder, including, without limitation, premiums, deductibles, self-insured retention, reimbursement obligations, fees, expenses and other costs arising from such transactions, or from funds advanced or to be advanced on the Debtors' behalf.  Additionally, AIG reserves the right to amend this proof of claim to assert further amounts due or particulars in connection therewith.

        (c)     **Bond Obligations.**  To the extent of any bonds outstanding, the Debtors agreed to pay to AIG, among other things, any and all loss and expense, including, without limitation, attorneys' fees, incurred by AIG by reason of having issued any such bonds, and losses incurred as a result of the issuance of any bonds.  The amount presently due AIG with respect to any bonds is unliquidated and untabulated.

        (d)     **Quantum Meruit**.  To the extent any Debtor received a benefit from insurance or from bonds provided by AIG, such Debtor is obligated to pay AIG for the value of the benefits received.

2

(e)     **Joint Liability.**  Should it be established in these bankruptcy cases or otherwise that any of the Debtors have liability for the obligations of any of the other Debtors, or of any other additional insureds under the Insurance Programs, then this Proof of Claim asserts the same claim as AIG asserted against each such Debtor against such other Debtors. This Proof of Claim shall be deemed filed in the bankruptcy cases of all jointly-liable Debtors and AIG's failure to file this Proof of Claim in the bankruptcy cases of any jointly-liable Debtor shall in no way impact AIG's right to assert its claim against all jointly-liable Debtors.

(f)     **Indemnity Obligations**.  In the event the Debtors have entered into any agreement with AIG pursuant to which Debtors have a duty to indemnify AIG, a claim is made herein for such right to indemnity.

(g)     **Other**.  In connection with the foregoing, the Debtors also may be liable to AIG by virtue of relevant principles of contract and common law relating to, among other things, subrogation, suretyship, indemnification or contribution.

5.     **Right of Recoupment**.  AIG asserts the right to use funds paid to it on account of, among other things, the Insurance Program to recoup obligations of the Debtors arising from, among other things, the Insurance Program.

6.     **Security**.  To the extent AIG holds any cash or other collateral as security for its claim, regardless of whether such cash or collateral is property of the Debtors' estates, AIG asserts a secured claim and/or a right of setoff and reserves its rights to collect against same by recoupment and/or setoff.  Alternatively or in addition, to the extent AIG holds an interest in any property of the Debtors, AIG asserts a security interest in same.

7.     **Interest.**  AIG claims all rights to claim interest to the extent permitted by law, including post-petition interest to the extent such interest is secured.  To the extent this claim is unliquidated, appropriate interest (if any) remains unliquidated at this time.  In preparing any tabulation of a liquidated claim, we will endeavor to include a tabulation of applicable interest to the extent dates of accrual of obligations can be readily ascertained.  AIG reserves the right to amend such calculations and to claim additional interest as facts are learned, data compiled, and/or unliquidated claims become liquidated.

8.     **Voluminous Documents Not Attached.**  As indicated above, supporting documents for this Proof of Claim are voluminous.  Additionally, supporting documents may contain confidential or privileged information.  Supporting documents, including policies of insurance, are not attached, but may be made available upon request.

9.     **Administrative Expense.**  To the extent AIG's claim against the Debtors relates to insurance coverage provided after the Petition Date, AIG is entitled to administrative priority under 11 U.S.C. §§ 503(b)(1) and 507(a)(2).  See In re MEI Diversified, Inc., 106 F.3d 829, 832 (8th Cir. 1997) (holding that an insurance company's claim for post-petition premium is entitled to administrative priority under section 503(b)(1) as an "actual, necessary" cost of preserving the bankruptcy estate); see also Metropolitan Ins. Co. v. Sharon Steel Corp. (In re Sharon Steel Corp.), 161 B.R. 934, 937 (Bankr. W.D. Pa. 1994); In re Gamma Fishing Co., 70 B.R. 949, 953-54 (Bankr. S.D. Cal. 1987).  Therefore, through this Proof of Claim, AIG also

3

asserts an administrative expense claim for all services provided, risks insured or occurrences occurring after the Petition Date, all or a portion of which may be set forth in this Proof of Claim.  To the extent any amounts set forth herein are entitled to administrative expense priority, AIG hereby requests immediate allowance and payment of its administrative expense.  Any failure by AIG to specifically assert an administrative expense claim against the Debtors' estates shall not be deemed a waiver by AIG of its right to payment of an administrative expense, said right being asserted herein and fully preserved.

          10.    **Arbitration.**  The filing of this Proof of Claim is not intended to waive any right to arbitration.  AIG expressly reserves the right to seek arbitration of any dispute arising in connection with this claim.  To the extent of any pre-existing arbitration agreement between AIG and Debtors, this court's jurisdiction to resolve disputes should be limited to referring such disputes to arbitration and enforcing any arbitration award.

          **11.**    **No Consent to Jurisdiction; No Waiver of Jury Trial.**  The filing of this Proof of Claim is not and shall not be deemed or construed as: (i) a consent to jurisdiction of this Court with respect to proceedings, if any, commenced in any of the Debtors' cases involving the Proof of Claim or AIG; (ii) a waiver or release of AIG's right to a trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal, public, or private rights in any case, controversy or proceeding related hereto, notwithstanding any designation of such matters as "core" proceedings pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (iii) a consent to this Court's entry of final orders or judgments with respect to the Proof of Claim or any other matter involving AIG; (iv) a waiver of AIG's right to have any and all orders and judgments of this Court reviewed *de novo* by a court duly authorized under Article III of the United States Constitution; or (v) a waiver of AIG's right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in the Debtors' bankruptcy cases or otherwise involving AIG.

          12.    **Reservation of Rights.**  In executing and filing this Proof of Claim, AIG: (i) does not waive any right or rights that it has or may have against any other persons liable for all or part of the claim set forth herein; (ii) expressly reserves the right to amend or supplement this Proof of Claim in any respect; (iii) expressly reserves the right to assert all claims, causes of action, defenses, offsets or counterclaims; and (iv) expressly reserves the right to contest insurance coverage in the event of each or any claim that may be tendered by the Debtors for coverage.

4

**Knight Energy Holdings, LLC**
Petition Date: 08/08/2017
Policy List Date: 08/15/2017

| Policy # | Profit Center | Branch | Major Class | Account # | Ultimate OAB | Insured Name | Writing Company | Effective | Expiration | Underwriter Last Name | Underwriter First Name |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 000221770119 | 65 - PROFESSIONAL | 34 - H.O. SPECIAL | UMB/OT AUTOBI | 0 | 98947742 | KNIGHT ENERGY HOLDINGS, LLC | AIG SPECIALTY INS CO | 2017-03-31 | 2018-03-31 | | |
| 000134272754 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 6939278 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | NATIONAL UNION FIRE INS CO | 2013-03-31 | 2014-03-31 | | |
| 000227313204 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 6939278 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | NATIONAL UNION FIRE INS CO | 2014-03-31 | 2015-03-31 | | |
| 000066946629 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 6939278 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | NATIONAL UNION FIRE INS CO | 2015-03-31 | 2016-03-31 | | |
| 0003 3074597 | 08 - EXCESS ENER | 26 - NEW ORLEANS | COML UMB LIA - UOT | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | AIG SPECIALTY INS CO | 2015-05-30 | 2016-05-30 | | |
| 000217223808 | 04 - CORPORATE | 26 - NEW ORLEANS | LIABILITY (OT AUTO | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | NATIONAL UNION FIRE INS CO | 2013-11-20 | 2014-11-20 | | |
| 0015909709 | 08 - EXCESS ENER | 26 - NEW ORLEANS | COML UMB LIA - UOT | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | AIG SPECIALTY INS CO | 2012-03-31 | 2013-05-30 | | |
| 000107404872 | 05 - EXCESS ENER | 26 - NEW ORLEANS | COML UMB LIA - UOT | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | NATIONAL UNION FIRE INS CO | 2015-03-31 | 2016-03-31 | CARR | REBECCA |
| 0001 3018425 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 6939278 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | NATIONAL UNION FIRE INS CO | 2012-03-31 | 2013-03-31 | | |
| 0003 3074596 | 08 - EXCESS ENER | 26 - NEW ORLEANS | COML UMB LIA - UOT | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, L.L.C | AIG SPECIALTY INS CO | 2014-03-31 | 2015-03-31 | | |
| 000066446621 | 05 - SPECIALTY PR | 26 - NEW ORLEANS | UMB/OT AUTOBI | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, LLC | AIG SPECIALTY INS CO | 2015-03-31 | 2016-03-31 | ANDERSON | ELIZABETH |
| 000312043565 | 39 - PRIVATE AND | 26 - NEW ORLEANS | UMB/OT AUTOBI | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, LLC | AIG SPECIALTY INS CO | 2016-03-31 | 2017-03-31 | FAUCHEUX | VIVIANA |
| 000227933371 | 05 - SPECIALTY PR | 26 - NEW ORLEAN | LIABILITY (OT AUTO | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, LLC | AIG SPECIALTY INS CO | 2016-01-23 | 2017-01-23 | | |
| 000014654584 | 04 - CORPORATE | 34 - H.O. SPECIAL | LIABILITY (OT AUTO | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, LLC | NATIONAL UNION FIRE INS CO | 2014-11-23 | 2015-11-23 | | |
| 000184422163 | 04 - CORPORATE | 26 - NEW ORLEANS | LIABILITY (OT AUTO | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, LLC | NATIONAL UNION FIRE INS CO | 2014-11-23 | 2015-11-23 | | |
| 000221742792 | 65 - PROFESSION | 31 - HOUSTON | UMB/OT AUTOBI | 98947742 | 98947742 | KNIGHT ENERGY HOLDINGS, LLC | AIG SPECIALTY INS CO | 2016-03-31 | 2017-03-31 | | |
| 000043892266 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 98947742 | 98947742 | KNIGHT OIL TOOLS, INC | ILLINOIS NATIONAL INS CO | 2005-06-15 | 2006-06-15 | | |
| 000063133252 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 6939278 | 98947742 | THE KNIGHT COMPANIES, INC. | AIG SPECIALTY INS CO | 2008-05-15 | 2009-03-31 | | |
| 000165837572 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 6939278 | 98947742 | KNIGHT OIL TOOLS, INC | NATIONAL UNION FIRE INS CO | 2011-03-31 | 2012-03-31 | | |
| 000016827501 | 39 - PRIVATE AND | 31 - HOUSTON | D & O - CLAIMS MAD | 6939278 | 98947742 | THE KNIGHT COMPANIES, INC. | NATIONAL UNION FIRE INS CO | 2009-03-31 | 2010-03-31 | | |
| 000094383315 | 05 - SPECIALTY PR | 26 - NEW ORLEANS | UMB/OT AUTOBI | 98947742 | 98947742 | KNIGHT OIL TOOLS INC | AIG SPECIALTY INS CO | 2007-02-08 | 2008-06-15 | | |
| 000005024344 | 05 - SPECIALTY PR | 26 - NEW ORLEANS | COMM. UMBRELLA | 98947742 | 98947742 | KNIGHT COMPANIES, INC. | AIG SPECIALTY INS CO | 2008-06-15 | 2009-03-31 | | |
| 000037973166 | 05 - SPECIALTY PR | 26 - NEW ORLEANS | COMM. UMBRELLA | 98947742 | 98947742 | KNIGHT COMPANIES, INC. | AIG SPECIALTY INS CO | 2009-03-31 | 2010-03-31 | | |
| 000077411263 | 05 - SPECIALTY PR | 26 - NEW ORLEANS | COMM. UMBRELLA | 98947742 | 98947742 | KNIGHT COMPANIES, INC. | AIG SPECIALTY INS CO | 2010-03-31 | 2011-03-31 | | |
| 0003 13074559 | 08 - EXCESS ENER | 26 - NEW ORLEANS | COML UMBRELLA | 98947742 | 98947742 | KNIGHT OIL TOOLS, INC | AIG SPECIALTY INS CO | 2013-03-31 | 2012-03-31 | | |
| 000313024570 | 08 - EXCESS ENER | 26 - NEW ORLEANS | COML UMBRELLA | 98947742 | 98947742 | KNIGHT OIL TOOLS, INC | AIG SPECIALTY INS CO | 2011-03-31 | 2012-03-31 | | |
| 000162272205 | 05 - SPECIALTY PR | 26 - NEW ORLEANS | UMB/OT AUTOBI | 98947742 | 98947742 | KNIGHT COMPANIES, INC. | AIG SPECIALTY INS CO | 2020-02-31 | 2012-03-30 | | |
| 000145597945 | 05 - SPECIALTY PR | 26 - NEW ORLEANS | UMB/OT AUTOBI | 98947742 | 98947742 | KNIGHT COMPANIES, INC. | AIG SPECIALTY INS CO | 2010-03-31 | 2011-03-31 | | |
| 000314153867 | 01 - LIABILITY | 01 - NEW YORK | LIABILITY | 98947742 | 98947742 | KNIGHT OIL TOOLS | AIG SPECIALTY INS CO | 2020-03-30 | 2020-03-30 | | |
| 0027909 | 01 - LIABILITY | 01 - NEW YORK | UNKNOWN | 98947742 | 98947742 | KNIGHT OIL TOOLS INC | UNKNOWN | 2009-03-31 | 2010-03-31 | | |
| 0027909 | 01 - LIABILITY | 01 - NEW YORK | UNKNOWN | 0 | 0 | KNIGHT AVIATION, INC. | UNKNOWN | 2020-03-31 | 2020-03-31 | | |
| 000032234394 | 66 - PROGRAMS | 93 - LEXINGTON | EMP - BODILY INJ LI | 0 | 0 | KNIGHT AVIATION, LLC | NATIONAL UNION FIRE INS CO | 2004-02-24 | 2004-02-25 | | |
| 000052331127 | 66 - PROGRAMS | 86 - LONG ISLAND | LIABILITY (OT AUTO | 95561850 | 95561850 | KNIGHT SECURITY | LEXINGTON INSURANCE COMPANY | 1997-10-12 | 1998-12-12 | | |
| 000062264457 | 66 - PROGRAMS | 86 - LONG ISLAND | LIABILITY (OT AUTO | 95561850 | 95561850 | KNIGHT SECURITY $ | NATIONAL UNION FIRE INS CO | 1991-12-02 | 1992-12-02 | | |
| 000063260185 | 66 - PROGRAMS | 93 - LEXINGTON | LIABILITY (OT AUTO | 785172222 | 785172222 | KNIGHT OIL TOOLS INC | NATIONAL UNION FIRE INS CO | 1990-12-02 | 1991-12-02 | | |
| 000813774732 | 13 - SPECIALTY W | 92 - ASSIGNED R | WORKMENS COMPE | 788546214 | 788546214 | KNIGHT INFORMATION SYSTEMS INC | LEXINGTON INSURANCE COMPANY | 2006-05-25 | 2007-05-25 | | |
| 000055326625 | 02 - LBX CASUALTY | 32 - SOUTHEASTER | SPECIAL CONTRACT | 83374692 | 83374692 | KNIGHT OIL TOOLS.31 | LEXINGTON INSURANCE COMPANY | 2012-07-11 | 2013-07-14 | | |
| 000086106313 | 13 - SPECIALTY PR | 02 - CHICAGO | MARINE | 0 | 0 | KNIGHT OIL TOOLS, INC | LEXINGTON INSURANCE COMPANY | 2002-05-02 | 2002-05-06 | | |
| 000062796669 | 05 - SPECIALTY PR | 94 - TAMPA | LIABILITY (OT AUTO | 83374692/8 | 83374692/8 | KNIGHT INFORMATION SYSTEMS INC. | LEXINGTON INSURANCE COMPANY | 2001-05-30 | 2002-05-06 | | |
| 000052791704 | 05 - SPECIALTY PR | 94 - TAMPA | UMB/OT AUTOBI | 98947742 | 98947742 | KNIGHT OIL TOOLS, INC | NATIONAL UNION FIRE INS CO | 2005-07-14 | 2006-07-14 | | |
| 000003222863 | 14 - AEROSPACE | 07 - ATLANTA | AIRCRAFT - ALL PER | 0 | 0 | KNIGHT AVIATION, INC | LEXINGTON INSURANCE COMPANY | 2008-07-11 | 2012-07-11 | | |
| 000024211043 | 14 - AEROSPACE | 07 - ATLANTA | AUTO LIABILITY (EL | 0 | 0 | KNIGHT AVIATION, LLC | NATIONAL UNION FIRE INS CO | 2004-10-01 | 2005-10-01 | | |
| 000854258644 | 14 - PROGRAMS | 07 - ATLANTA | AIRCRAFT - ALL PER | 0 | 0 | KNIGHT AVIATION, INC | LEXINGTON INSURANCE COMPANY | 2010-11-07 | 2011-11-07 | | |
| 000886429647 | 66 - PROGRAMS | 94 - TAMPA | ADDITIONAL EXTENT | 785172222 | 785172222 | HMC LEASING, INC | LEXINGTON INSURANCE COMPANY | 2012-07-14 | 2013-07-14 | | |
| 000054346389 | 13 - PROGRAMS | 94 - TAMPA | ADDITIONAL EXTENT | 95567718 | 95567718 | HMC LEASING, INC. | LEXINGTON INSURANCE COMPANY | 2014-07-14 | 2015-07-14 | | |
| 000078955668 | 72 - LEXINGTON PR | 94 - TAMPA | ADDITIONAL EXTENT | 95567718 | 95567718 | HMC LEASING, INC | LEXINGTON INSURANCE COMPANY | 2005-07-14 | 2012-07-14 | | |
| 000067883556 | 66 - PROGRAMS | 85 - LONG ISLAND | LIABILITY (EL | 95567718 | 95567718 | HMC LEASING, INC. | NEW HAMPSHIRE INSURANCE CO | 2008-07-11 | 2012-07-11 | | |
| 000057264396 | 66 - PROGRAMS | 14 - PHILADELPHIA | AUTO LIABILITY (EL | 848408908 | 848408908 | HMC LEASING, INC. | NEW HAMPSHIRE INSURANCE CO | 1989-12-30 | 1990-12-30 | | |
| 000057266766 | 66 - PROGRAMS | 01 - NEW YORK | AUTO LIABILITY (EL | 848408908 | 848408908 | HMC LEASING, INC. | NEW HAMPSHIRE INSURANCE CO | 1990-12-30 | 2004-10-01 | | |
| 000075766927 | 66 - PROGRAMS | 01 - NEW YORK | MEDICAL MALPRACT | 848408908 | 848408908 | HMC LEASING, INC. | NEW HAMPSHIRE INSURANCE CO | 2004-10-01 | 2005-10-01 | | |
| 000077292347 | 66 - PROGRAMS | 01 - NEW YORK | MEDICAL MALPRACT | 848408908 | 848408908 | HMC LEASING, INC. | NEW HAMPSHIRE INSURANCE CO | 1968-01-25 | 2005-10-01 | | |
| 000006766076 | 72 - LEXINGTON PR | 94 - TAMPA | MEDICAL MALPRACT | 95567718 | 95567718 | HMC LEASING, INC - HAYES MOTOR | NEW HAMPSHIRE INSURANCE CO | 2020-11-06 | 2008-10-01 | | |
| 000066768737 | 66 - PROGRAMS | 34 - H.O. SPECIAL | MEDICAL MALPRACT | 0 | 0 | HMC LEASING, INC. - HAYES MOTOR | NEW HAMPSHIRE INSURANCE CO | 2020-11-06 | 2006-10-01 | FAUCHEUX | VIVIANA |
| 000007762347 | 66 - PROGRAMS | 14 - PHILADELPHIA | COML UMB LIA - UOT | 0 | 0 | HMC LEASING, INC - HAYES MOTOR | NEW HAMPSHIRE INSURANCE CO | 1969-01-25 | 2005-10-01 | PARTNERS, LLC | |

Printed on 9/22/2017 at 7:27 AM
MM AFFIDAVIT EXHIBIT I

**Debtors' List**

| | |
|---|---|
| 17-51014 | Knight Energy Holdings, LLC<br>fka Knight Oil Tools, LLC |
| 17-51015 | Knight Oil Tools, LLC<br>fka Knight Oil Tools, Inc. |
| 17-51016 | Knight Manufacturing, LLC<br>fka Knight Manufacturing, Inc. |
| 17-51017 | KDCC, LLC<br>fka Knight Well Services, LLC |
| 17-51018 | Tri-Drill, LLC<br>fka Tri-Drill, Inc.<br>fka Knight Acquisition Sub, LLC |
| 17-51019 | Advanced Safety & Training Management, LLC<br>fka Advanced Safety & Training Management, Inc. |
| 17-51020 | Knight Security, LLC |
| 17-51021 | Knight Information Systems, LLC |
| 17-51022 | El Caballero Ranch, Inc. |
| 17-51023 | Rayne Properties, LLC |
| 17-51024 | Knight Aviation, LLC |
| 17-51025 | Knight Research & Development, LLC |
| 17-51026 | Knight Family Enterprises, LLC |
| 17-51027 | HMC Leasing, LLC |
| 17-51029 | HMC Investments, LLC |

MW AFFIDAVIT EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | § | CIVIL ACTION NO. 6:21-CV-041919 |
| COMPANY (f/k/a CHARTIS | § | |
| SPECIALTY INSURANCE COMPANY) | § | |
| | § | JUDGE ROBERT R SUMMERHAYS |
| VS. | § | |
| | § | |
| KNIGHT OIL TOOLS, INC. | § | MAGISTRATE CAROL B WHITEHURST |

# MORRIS AFFIDAVIT EXHIBIT J

**Fill in this information to identify the case:**

Debtor 1 __Knight Energy Holdings, LLC__

Debtor 2 __Knight Oil Tools, LLC__
(Spouse, if filing)

United States Bankruptcy Court __Western District of Louisiana__

Case number: __17–51014__

**FILED**

**U.S. Bankruptcy Court**
**Western District of Louisiana**

9/27/2017

**Edward A. Takara, Clerk**

## Official Form 410
## Proof of Claim

04/16

Read the instructions before filling out this form. **This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim | | |
|---|---|---|---|
| **1.Who is the current creditor?** | ACE American Insurance Company | | |
| | Name of the current creditor (the person or entity to be paid for this claim) | | |
| | Other names the creditor used with the debtor | | |
| **2.Has this claim been acquired from someone else?** | ☑ No ☐ Yes. From whom? | | |
| **3.Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? ACE American Insurance Company | Where should payments to the creditor be sent? (if different) Thomas A. Groves | |
| | Name Thomas A. Groves Vice Preseident, Chubb Global Casualty 1 Beaver Valley Road Wilmington, DE 19803 | Name Vice Preseident, Chubb Global Casualty 1 Beaver Valley Road Wilmington, DE 19803 | |
| | Contact phone _____302–476–6760_____ | Contact phone _____302–476–6760_____ | |
| | Contact email ___thomas.groves@chubb.com___ | Contact email ___thomas.groves@chubb.com___ | |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____ | | |
| **4.Does this claim amend one already filed?** | ☑ No ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ MM / DD / YYYY | |
| **5.Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No ☐ Yes. Who made the earlier filing? _____ | | |

Official Form 410                Proof of Claim                page 1

MM AFFIDAVIT EXHIBIT J

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. How much is the claim? | $ 3668444.73     **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Insurance policies and related agreements, see attached. |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>   **Nature of property:**<br>   ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>   ☐ Motor vehicle<br>   ☑ Other. Describe:    See attached.<br><br>   **Basis for perfection:**    See attached.<br><br>   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>   **Value of property:**    $ 3668444.73<br>   **Amount of the claim that is secured:**    $ 3668444.73<br>   **Amount of the claim that is unsecured:**    $ 00.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>   **Amount necessary to cure any default as of the date of the petition:**    $ 157191.07<br><br>   **Annual Interest Rate** (when case was filed)    00.00   %<br>   ☑ Fixed<br>   ☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410        Proof of Claim        page 2

MM AFFIDAVIT EXHIBIT J

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    9/27/2017

MM / DD / YYYY

/s/ Catherine Heitzenrater

Signature

Print the name of the person who is completing and signing this claim:

| Name | Catherine Heitzenrater |
|---|---|
| | First name    Middle name    Last name |
| Title | |
| Company | Duane Morris LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 30 S. 17th Street |
| | Number  Street |
| | Phiadelphia, PA 19103 |
| | City  State  ZIP Code |
| Contact phone | 215–979–7342    Email    cheitzenrater@duanemorris.com |

Official Form 410                Proof of Claim                page 3

## ADDENDUM TO PROOF OF CLAIM OF
## ACE AMERICAN INSURANCE COMPANY

1.      This Addendum is attached to and a part of the proof of claim (the "Proof of Claim") filed by ACE American Insurance Company (together with its affiliates and successors, the "Claimant" or the "ACE Companies") against Knight Energy Holdings, LLC, and the other entities set forth on Exhibit "A" attached hereto (collectively, the "Debtors") in their respective bankruptcy cases.  As the documents supporting this claim are voluminous and contain confidential information, Claimant has not attached such supporting documentation to Claimant's Proof of Claim.  Copies of the documents referenced herein are or should be, upon information and belief, in the possession of the Debtors, and Claimant will provide copies of such documents to other parties upon request provided that appropriate steps can be taken to ensure their confidentiality, as necessary or appropriate.

2.      On August 8, 2017 (the "Petition Date"), the Debtors filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Louisiana (the "Court").

3.      Prior to the Petition Date, the ACE Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

4.      Prior to the Petition Date, the ACE Companies and the Debtors and/or their affiliates also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

5.      Pursuant to the Policies and Insurance Agreements (collectively, the "ACE Insurance Program"), the ACE Companies provide, *inter alia*, certain workers' compensation, general liability, automobile liability, international casualty, excess workers' compensation, excess general liability, energy/mining, accident and health, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein; and the insureds, including one or more of the Debtors, are required to pay to the ACE Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "Obligations").

6.      To the extent that a Debtor is an insured under the ACE Insurance Program and has in the past or the present received, or in the future receives, any benefit under the ACE Insurance Program related to any claim made by or related to such Debtor under the ACE Insurance Program, including but not limited to any payment by any of the ACE Companies to or on behalf of the Debtor with respect to a claim made under the ACE Insurance Program, then the Debtor is jointly and severally liable with other insureds for the Obligations arising with respect to such claim under the ACE Insurance Program.

7.      As of the date hereof, the Debtors are liable to the ACE Companies

8.      As of the date hereof, the Debtors are liable to the ACE Companies in the amount of $170,285.65, plus the estimated ultimate amount of $3,668,444.73,[1] plus additional contingent and unliquidated amounts (collectively, the "Claim") for the Obligations.

---

[1]      This estimated amount is based on the ACE Companies' most recent collateral calculation for the Obligations under the ACE Insurance Program.  The estimated portion of the Claim is based on a snapshot in time, and does not fully account for, *inter alia*, incurred but not reported claims, claims that are closed

(Continued...)

MM AFFIDAVIT EXHIBIT J

9.      The estimated amount of the Claim is based on, *inter alia*, actuarial calculations and financial factors including those disclosed in relation to the bankruptcy case.

10.     Although the Claimant has provided an estimate, part of the Claim is currently contingent, unliquidated, and subject to further and future adjustments and estimations by the Claimant, from time to time, in accordance with the terms of the ACE Insurance Program including, without limitation, (i) adjustments for any change in the financial condition of the insureds and/or (ii) addition of amounts that may become due for premium, deductibles, expenses, taxes, assessments and surcharges.

11.     The Claim is evidenced by the ACE Insurance Program, including, without limitation, those Policies and Insurance Agreements listed on Exhibit "B" hereto.

12.     A portion of the Claim is or may be entitled to administrative expense priority under 11 U.S.C. §§ 503(b) and 507(a)(2).

13.     The Claim is secured by the proceeds of a letter of credit in the amount of $3,668,444.73 (the "LOC Proceeds").[2]

14.     The Claim may also be secured by letters of credit, cash collateral, paid loss deposit funds, or other amounts.

15.     The Claimant reserves and preserves the right: (a) to file and seek payment of additional claims for (i) administrative expenses, (ii) attorneys' fees and costs, and (iii) cure

---

(Continued...)

but could reopen, and unexpected development of claims. Generally, any such estimate can change at any time and in certain cases, on a daily basis, as the insured's financial condition changes and/or losses/claims are reported, develop, are reanalyzed, or are paid by the insurer and/or reimbursed by the insured(s) and/or collateral. Estimates are provided in order to advise the Debtors, the Court and other parties in interest of the approximated exposure as of a particular evaluation time.

[2]     The LOC Proceeds are not property of the Debtors' estates. *See EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge)*, 430 F.3d 260, 269 (5th Cir. 2005).

MM AFFIDAVIT EXHIBIT J

amounts or rejection damages; (b) to estimate contingent claims and assert additional claims if contingent claims are estimated or liquidated; and (c) to assert any other claims the Claimant may have against the Debtors relating to or incidental to the Obligations and the documents referenced herein.  The Claimant reserves and preserves all rights to assert any and all defense, setoff and/or recoupment against the Debtors.  The Claimant reserves the right to amend and/or further supplement this Proof of Claim to, *inter alia*, (a) adjust the amount of the Claim to reflect an updated actuarial review and/or financial analysis and/or (b) include additional collateral required as a result thereof.

16.     The filing of this Proof of Claim is not intended, and should not be construed as (a) an election of remedies; (b) a waiver of any past, present or future default or event of default; (c) a waiver or limitation of the Claimant's rights or defenses; (d) a waiver of the Claimant's claims against the Debtors or any of the Debtors' subsidiaries or affiliates; (e) a waiver of the Claimant's right to draw on any collateral or security; (f) a waiver of the Claimant's claims against any person, entity, property, or other parties liable to it (whether under the ACE Insurance Program or otherwise); (g) a determination as to coverage or entitlements to benefits as to coverage under the ACE Insurance Program; (h) a waiver of the ACE Companies' rights under the ACE Insurance Program, including the right to require arbitration; or (i) a waiver or release of the right to request withdrawal of the reference with respect to the subject matter of the Proof of Claim, any objection thereto, any other proceeding commenced with respect thereto, or any other proceeding that may be commenced in this case against or otherwise involving the Claimant.

17.     All notices to the Claimant relating to this Proof of Claim should be sent to the Claimant as follows:

MM AFFIDAVIT EXHIBIT J

c/o Chubb f/k/a ACE
436 Walnut Street
Philadelphia, PA  19106
Attention: Collateral Manager

With a copy to counsel for the Claimant:

Wendy M. Simkulak, Esquire
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA  19103

18.    This Proof of Claim is filed as a separate claim from other claims that may be filed by or on behalf of the Claimant or any of its affiliates against the Debtor, and does not replace or supersede such other claims.

## EXHIBIT A

### DEBTOR NAMES

|     | Debtor Name | Case No. |
| --- | --- | --- |
| 1. | Knight Energy Holdings, LLC | 17-51014 |
| 2. | Knight Oil Tools, LLC | 17-51015 |
| 3. | Knight Manufacturing, LLC | 17-51016 |
| 4. | KDCC, L.L.C. | 17-51017 |
| 5. | Tri-Drill, LLC | 17-51018 |
| 6. | Advanced Safety and Training Management, LLC | 17-51019 |
| 7. | Knight Security, L.L.C. | 17-51020 |
| 8. | Knight Information Systems, L.L.C. | 17-51021 |
| 9. | El Caballero Ranch, Inc. | 17-51022 |
| 10. | Rayne Properties, L.L.C. | 17-51023 |
| 11. | Knight Aviation, L.L.C. | 17-51024 |
| 12. | Knight Research & Development, LLC | 17-51025 |
| 13. | Knight Family Enterprises, L.L.C. | 17-51026 |
| 14. | HMC Leasing, LLC | 17-51027 |
| 15. | HMC Investments, L.L.C. | 17-51029 |

DM3\4812940.1

MM AFFIDAVIT EXHIBIT J

## EXHIBIT B

The ACE Companies' Claim is evidenced by, without limitation, the Policies and Insurance Agreements, and includes, without limitation, the following and all other documents, instruments, agreements or policies, and any and all endorsements, addenda, amendments, renewals, supplements and modifications to any of the following:

**Policies include, but are not limited to:**

| Policy Number | Policy Period | Insurer | Type of Coverage |
|---|---|---|---|
| C47316017 | 3/31/2013 − 3/31/2014 | ACE American Insurance Company | Workers' Compensation |
| C4787807A | 3/31/2014 − 3/31/2015 | ACE American Insurance Company | Workers' Compensation |
| C4814679A | 3/31/2015 − 3/31/2016 | ACE American Insurance Company | Workers' Compensation |
| D36922138 | 11/23/2012 − 11/23/2013 | ACE American Insurance Company | International Casualty |
| D36928864 | 11/23/2011 − 11/23/2012 | ACE American Insurance Company | International Casualty |
| D38041162 | 1/23/2016 − 1/23/2017 | ACE American Insurance Company | International Casualty |
| D38468303 | 11/23/2013 − 11/23/2014 | ACE American Insurance Company | International Casualty |
| D38468686 | 11/23/2014 − 11/23/2015 | ACE American Insurance Company | International Casualty |
| G27017277 | 3/31/2013 − 3/31/2014 | ACE American Insurance Company | General Liability |
| G27019742 | 3/31/2013 − 3/31/2014 | Illinois Union Insurance Company | Excess Workers' Compensation |
| G27330344 | 3/31/2014 − 3/31/2015 | ACE American Insurance Company | Excess General Liability |
| G27333576 | 3/31/2014 − 3/31/2015 | Illinois Union Insurance Company | Excess Workers' Compensation |
| G27391667 | 3/31/2015 − 3/31/2016 | ACE American Insurance Company | Excess General Liability |
| G2739341A | 3/31/2015 − 3/31/2016 | Illinois Union Insurance Company | Excess Workers' Compensation |
| G27433078 | 3/31/2015 − 3/31/2016 | Westchester Surplus Lines Insurance Company | Energy/Mining |
| G27433078 | 3/31/2014 − 3/31/2015 | Westchester Surplus Lines Insurance Company | Energy/Mining |
| H08695751 | 3/31/2012 − 3/31/2013 | ACE American Insurance Company | Automobile Liability |
| H0871468A | 3/31/2013 − 3/31/2014 | ACE American Insurance Company | Automobile Liability |
| H0881871A | 3/31/2014 − 3/31/2015 | ACE American Insurance Company | Automobile Liability |
| H08853381 | 3/31/2015 − 3/31/2016 | ACE American Insurance Company | Automobile Liability |
| C43441322 | 10/1/2002 − 10/1/2003 | ACE Fire Underwriters Insurance Company | Workers' Compensation |
| C44345444 | 3/31/2008 − 3/31/2009 | ACE American Insurance Company | Workers' Compensation |
| C44356685 | 3/31/2009 − 3/31/2010 | ACE American Insurance Company | Workers' Compensation |
| C44462242 | 3/31/2007 − 3/31/2008 | ACE American Insurance Company | Workers' Compensation |
| C46132294 | 3/31/2010 − 3/31/2011 | ACE American Insurance Company | Workers' Compensation |
| C46471362 | 3/31/2011 − 3/31/2012 | ACE American Insurance Company | Workers' Compensation |
| C46781260 | 3/31/2012 − 3/31/2013 | ACE American Insurance Company | Workers' Compensation |
| G21705925 | 3/31/2007 − 3/31/2008 | Illinois Union Insurance Company | General Liability |
| G23725046 | 3/31/2008 − 3/31/2009 | ACE American Insurance Company | Excess General Liability |
| G2374143A | 3/31/2008 − 3/31/2009 | ACE American Insurance Company | General Liability |
| G23741660 | 3/31/2008 − 3/31/2009 | Illinois Union Insurance Company | Excess Workers' Compensation |
| G23749257 | 3/31/2009 − 3/31/2010 | ACE American Insurance Company | General Liability |
| G24930361 | 3/31/2009 − 3/31/2010 | Illinois Union Insurance Company | Excess Workers' Compensation |
| G24940214 | 3/31/2010 − 3/31/2011 | ACE American Insurance Company | General Liability |
| G24941565 | 3/31/2010 − 3/31/2011 | Illinois Union Insurance Company | Excess Workers' Compensation |
| G25523386 | 3/31/2011 − 3/31/2012 | ACE American Insurance Company | General Liability |
| G25528396 | 3/31/2011 − 3/31/2012 | Illinois Union Insurance Company | Excess Workers' Compensation |
| G26438767 | 3/31/2012 − 3/31/2013 | ACE American Insurance Company | General Liability |
| G27009207 | 3/31/2012 − 3/31/2013 | Illinois Union Insurance Company | Excess Workers' Compensation |
| H07835115 | 3/31/2007 − 3/31/2008 | ACE American Insurance Company | Automobile Liability |
| H08244248 | 3/31/2008 − 3/31/2009 | ACE American Insurance Company | Automobile Liability |
| H08252403 | 3/31/2009 − 3/31/2010 | ACE American Insurance Company | Automobile Liability |

DM3\4812940.1

| Policy Number | Policy Period | Insurer | Type of Coverage |
|---|---|---|---|
| H08588351 | 3/31/2010 – 3/31/2011 | ACE American Insurance Company | Automobile Liability |
| H08633393 | 3/31/2011 – 3/31/2012 | ACE American Insurance Company | Automobile Liability |
| H08695751 | 3/31/2012 – 3/31/2013 | ACE American Insurance Company | Automobile Liability |
| N0484399A | 1/23/2016 – 1/23/2017 | ACE American Insurance Company | Accident & Health |
| N0484399A | 11/11/2014 – 1/23/2016 | ACE American Insurance Company | Accident & Health |
| N0484399A | 11/11/2013 – 11/11/2014 | ACE American Insurance Company | Accident & Health |
| N0484399A | 11/11/2012 – 11/11/2013 | ACE American Insurance Company | Accident & Health |
| N0484399A | 11/11/2011 – 11/11/2012 | ACE American Insurance Company | Accident & Health |
| N0484399A | 11/11/2010 – 11/11/2011 | ACE American Insurance Company | Accident & Health |
| N0484399A | 11/11/2009 – 11/11/2010 | ACE American Insurance Company | Accident & Health |

**Insurance Agreements include, but are not limited to:**

- Collateral Agreement, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between ACE American Insurance Company and Knight Oil Tools Inc., effective as of March 31, 2007.

- Casualty Program SOLD Proposal, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between ACE American Insurance Company and Knight Oil Tools, L.L.C., effective as of March 31, 2012.

- Casualty Program Final Proposal, as renewed, amended, modified, endorsed or supplemented from time to time and including any exhibit or addenda thereto, by and between ACE American Insurance Company and Knight Energy Holdings, L.L.C., effective as of March 31, 2014.

**Reservation of Rights**

The brief summary of the Policies and Insurance Agreements contained herein is for descriptive purposes only and is not intended to be binding on the ACE Companies or constitute their position with respect to the proper interpretation and meaning thereof. For a complete and accurate explanation of the terms and conditions of the Policies and Insurance Agreements, reference should be made to the actual Policies and Insurance Agreements.

DM3\4812940.1

MM AFFIDAVIT EXHIBIT J