**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE | * | CIVIL ACTION NO. 21-cv-04191 |
| COMPANY (f/k/a CHARTIS | * | |
| SPECIALTY INSURANCE | * | |
| COMPANY) | * | JUDGE ROBERT R. SUMMERHAYS |
|   Plaintiff | * | |
| | * | MAGISTRATE CAROL B. |
| VERSUS | * | WHITEHURST |
| | * | |
| KNIGHT OIL TOOLS, INC. AND | * | |
| RIPPY OIL COMPANY | * | |
|   Defendant | * | |
| | * | |
| RIPPY OIL COMPANY | * | |
|   Intervenor | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \* \* \*

**AIG SPECIALTY INSURANCE COMPANY'S JOINT MEMORANDUM
IN OPPOSITION TO RIPPY OIL COMPANY'S MOTION FOR ABSTENTION AND TO
DISMISS COMPLAINT FOR DECLARATORY JUDGMENT OR IN THE
ALTERNATIVE STAY OR TRANSFER AND
IN OPPOSITION TO KNIGHT OIL TOOLS, INC.'S MOTION TO DISMISS, OR IN
THE ALTERNATIVE, TO STAY PROCEEDINGS**

ROBERT I. SIEGEL (#10263)
ALISTAIR M. WARD (#24693)
**GIEGER, LABORDE & LAPEROUSE, LLC**
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
*Attorneys for AIG Specialty Insurance Company f/k/a Chartis Specialty Insurance Company*

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

I.     INTRODUCTION ...............................................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND ...................................2

       A.  The Underlying Lawsuit. ........................................................................2

       B.  The Instant First-Filed Declaratory Judgment Action. ...........................4

       C.  The Second-Filed Declaratory Judgment Action...................................5

       D.  Rippy and Knight's Respective Motions to Dismiss ..............................5

III.   LAW AND ARGUMENT ..................................................................................6

       A.  Legal Standard for Dismissal due to the Pendency of a Parallel Federal
           Proceeding...............................................................................................6

       B.  There is Substantial Overlap Between the First-Filed and Second-Filed Declaratory
           Judgment Actions....................................................................................7

       C.  An Actual Controversy Exists Between the Parties.................................9

       D.  This First-Filed Declaratory Judgment Action is Justiciable................12

           1.  The Declaratory Action is Justiciable as there is an Actual Controversy Among
               the Parties that is Ripe for Adjudication. ......................................13

           2.  This Court has Authority to Grant Declaratory Relief....................16

           3.  This Court Should Exercise its Discretion to Decide ASIC's Declaratory
               Judgment. ........................................................................................17

               a.  Applying the *Trejo* Factors: The Federalism Concerns......................18

               b.  Applying the *Trejo* Factors: The Fairness Concerns. .........................20

               c.  Applying the *Trejo* Factors: The Efficiency Concerns. ......................22

       E.  Legal Standard for a Stay of Proceedings..............................................24

F.   Venue is Proper in the Western District of Louisiana. ..........................................24

G.   Rippy Cannot Establish that a Transfer to the Southern District of Texas is Appropriate. ..........................................................................................................27

IV.   CONCLUSION..........................................................................................................29

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Abbott Labs. v. Gardner*, <u>387 U.S. 136, 148</u>, <u>87 S. Ct. 1507</u>, <u>18 L.Ed.2d 681</u> (1967).......... 14, 24

*AFA Enterprises, Inc. v. American States Ins. Co.,* <u>842 F.Supp. 902, 909</u> (S.D.W. Va. 1994).... 26

*Amec Constr. Mgmt., Inc. v. Fireman's Fund Ins. Co.*, CV 13-00718-JJB-EWD, 2016 WL

7468808, at *2 (M.D. La. May 31, 2016) ........................................................................ 24

*American Motorists Ins. Co. v. Cellstar, Corp.*, <u>61 Fed. Appx. 119</u> (5ᵗʰ Cir. 2003) ................... 25

and *Harleysville Ins. Co. of New Jersey v. Clark,* <u>2006 WL 2135834</u> (D. N.J. 2006) ................. 26

*Arch Specialty Ins. Co. v. Entertainment Specialty Services, Inc.,* <u>2005 WL 696897</u> (S.D.N.Y.

2005) ............................................................................................................................... 25

*AVEMCO Ins. Co. v. GSV Holding Corp.,* <u>1997 WL 566149</u>, *6 (S.D.N.Y. September 11, 1997)

................................................................................................................................................ 26

*Califano v. Sanders*, <u>430 U.S. 99</u>, <u>97 S. Ct. 980</u>, <u>51 L.Ed.2d 192</u> (1977) .................................... 14

*Central Surety & Insurance Corporation v. Hampton*, <u>179 F.2d 261</u> (5th Cir. 1950) ................. 15

*Choice Inc. of Tex. v. Greenstein*, <u>691 F.3d 710, 714</u>–15 (5th Cir. 2012).................................... 14

*Colo. River Water Conservation Dist. v. United States*, <u>424 U.S. 800, 817</u>, <u>96 S.Ct. 1236, 47</u>

L.Ed.2d 483 (1976) ......................................................................................................... 6

*Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* <u>872 F.Supp. 1247</u> (S.D.N.Y. 1995) ....... 26

*Evangelical Lutheran Church of America v. Atlantic Mutual Ins. Co.,* <u>973 F.Supp. 820, 823</u>

(N.D. Ill. 1997)................................................................................................................ 26

*Hardware Mutual Casualty Company v. Schantz*, 178 F.2d 779, 779–80 (5th Cir. 1949)........... 14

*Harris v. Amoco Prod. Co.*, 768 F.2d 669, 674–75 (5th Cir. 1985) ............................... 8

*Home Ins. Co. v. Liberty Mutual Ins.*, 678 F.Supp. 1066, 1071 (S.D.N.Y. 1988)....................... 26

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)..................... 8

*Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)...................................................... 24

*Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)......................................... 7, 8

*New England Ins. Co. v. Barnett*, 465 Fed. Appx. 302, 308 (5th Cir. 2012).............................. 14

*New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir.

1987) ....................................................................................................... 14

*Nobel Ins. Co. v. Acme Truck Line, Inc.,* No. 99–2950, 2000 WL 298908, *3 (N.D. Tex. March

21, 2000) ................................................................................................. 26

*Old Republic Ins. Co. v. Admiral Ins. Co.*, 2016 WL 10788990 (S.D. Tex. 8/8/16)................... 26

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) .................................... 13

*Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014)................ 28

*Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F.Supp. 3d 574, 580 (E.D. La.

2021) ...................................................................................................... 28

*Rowan Cos. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989) ............................................... 10

*Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ................................... 7

*Seariver Mar. Fin. Holdings, Inc. v. Pena,* 952 F. Supp. 455, 459 (S.D. Tex. Sept. 6, 1996) ..... 26

*See Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022). ...................................... 28

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003)... 13, 17, 18, 19, 21, 22

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994)............................................ 17

*Texas Employers' Ins. Assoc. v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988) ............................ 20

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993) .... 16

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL–CIO*, 751

   F.2d 721, 728 (5th Cir.1985) ............................................................. 6, 7, 8

*Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 546 (5th Cir. 1983) ......................................... 8

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ................................................................ 10

*Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999)) ...................................................... 28

**Statutes**

28 U.S.C. § 1391 ............................................................................................ 25

28 U.S.C. § 1404(a) ....................................................................................... 27

28 U.S.C. § 2283 ............................................................................................ 16

Title 28, section 1404 of the United States Code ............................................. 27

MAY IT PLEASE THE COURT:

Plaintiff AIG Specialty Insurance Company ("ASIC") respectfully submits this joint memorandum in opposition to: (i) the Motion for Abstention and to Dismiss Complaint for Declaratory Judgment or in the Alternative Stay or Transfer filed by Intervener Rippy Oil Company ("Rippy") [R. Doc. 36]; and (ii) the Motion to Dismiss, or in the Alternative, to Stay Proceedings filed by Knight Oil Tools, Inc. ("Knight") [R. Doc. 42] (hereinafter, jointly referred to as "Motions to Dismiss").  ASIC respectfully requests that this Honorable Court deny the Motions to Dismiss, and in support of such denial, ASIC avers as follows:

## I.     INTRODUCTION

This is an insurance coverage dispute over whether ASIC, an umbrella insurer for Knight, owes coverage for a judgment against Knight in an underlying lawsuit filed by Rippy for damages allegedly sustained during the drilling of a well.[1]

To resolve the coverage dispute, ASIC filed the instant declaratory judgment action seeking a declaration that coverage is not owed under the ASIC policy for the liabilities of Knight arising out of the underlying lawsuit.[2] Subsequently, and after learning of ASIC's instant action against Knight, Rippy filed its own declaratory judgment action in Texas state court seeking to recover from ASIC the judgment Rippy secured against Knight. Rippy also named as defendants ACE American Insurance Company ("ACE") (Knight's primary insurer) and Risk Specialists (a surplus

---

[1] The suit in the Leon County State Court is captioned and docketed *Rippy Oil Co., et al. v. Knight Oil Tools, Inc., et al.*, Case No. 0-10-498 and was originally filed in the 12th Judicial District Court, which transferred the case to the 369th as a result of State District Court reorganization and subsequently transferred again to the 278th where the case proceeded to trial in May of 2018.

[2] *See* R. Doc. 1.

lines broker).[3] On January 27, 2022, ASIC removed Rippy's second-filed declaratory judgment action to the United States District Court for the Southern District of Texas.[4]

Because this suit is the first-filed declaratory judgment action, raises proper justiciable issues, and addresses the same issue as the second-filed declaratory judgment action—i.e., whether the ASIC policy provides coverage for the judgment against Knight in the underlying lawsuit filed by Rippy—this Court should deny Knight and Rippy's respective Motions to Dismiss.[5]

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.  The Underlying Lawsuit.

On or about January 13, 2011, Rippy Oil Company; Rippy Interest LLC; The Genecov Group, Inc.; and John D. Proctor (collectively "Rippy") filed suit against Knight in state court in Leon County, Texas, for damages that occurred when a drill pipe supplied by Knight broke during the drilling of a well. That lawsuit is captioned *Rippy Oil Co., et al. v. Knight Oil Tools, Inc., et al.*, Case No. 0-10-498 ("the Underlying Lawsuit"). Knight filed for bankruptcy on August 8, 2017, in the United States Bankruptcy Court for the Western District of Louisiana. On October 24, 2017, the United States District Court for the Western District of Louisiana lifted the automatic bankruptcy stay for the limited purpose of allowing the prosecution of the Underlying Lawsuit. Pursuant to the Order of the Bankruptcy Court, Rippy was only entitled to seek recovery to the extent the claims were covered by Knight's applicable insurance policies, and Knight's liability was to be limited to the extent of any coverage provided by Knight's insurance policies.[6] Upon information and belief, Knight's Chapter 11 Plan of Reorganization was confirmed on December

---

[3] *See* R. Doc. 1-3.
[4] *See* ASIC's Notice of Removal, filed in the United States District Court for the Southern District of Texas, Civil Action No.: 4:22-CV-000276, ECF No. 1, attached hereto as Exhibit A.
[5] *See* R. Doc. 1; R. Doc. 1-2, pp. 19–20 ¶¶ 49–50.
[6] *See* R. Doc. 1-4.

1, 2017, Knight was discharged from bankruptcy, and the bankruptcy proceeding terminated on

June 17, 2019.[7]

The Underlying Lawsuit can be summarized as follows:

> Knight [] rents drill pipe to oil companies and oil well operators for drilling oil and gas wells.  Rippy [] made plans to drill a well in the Eagle Ford Shale and contacted Knight to supply pipe for drilling the horizontal portion of the Easterling 1-H Well . . . Knight delivered pipe and other equipment to the Easterling 1-H Well site with a delivery ticket and sent the invoice to the main office.  The delivery ticket contained language that the pipe measurements complied with the dimensions for American Petroleum Institute (A.P.I.) premium class and/or Knight [] value. The testimony at trial established that pipe marked with two white bands meets the standards for A.P.I. premium pipe. The pipe delivered by Knight was marked with two white bands, but the trial record shows that some of the pipe delivered did not comply with the dimensions for A.P.I. premium class pipe.
>
> On May 11, 2010, one of the drill pipes supplied by Knight broke while it was in the well. The parties agreed that the pipe failure was caused by fatigue. Rippy was not able to recover the broken pipe and the drill string beyond it and eventually had to abandon the Easterling 1-H Well.  Rippy attempted to drill an offset well, Easterling 2-H, but that effort was unsuccessful. Rippy filed suit against Knight to recover damages for the lost well, and Knight filed a counterclaim to recover for unpaid invoices.[8]

The Underlying Lawsuit proceeded to a jury trial on May 1, 2018.[9] On May 10, 2018, after

the close of the evidence at trial, the jury found that Knight breached its implied warranty of fitness

for a particular purpose and made a negligent misrepresentation with respect to the condition of

the drill pipe.[10] The jury found that the well was not capable of being reproduced by drilling

another well and that the reasonable and necessary costs for drilling and equipping the well were

---

[7] *See* United States Bankruptcy Court for the Western District of Louisiana's Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Joint Chapter 11 Plan of Reorganization as of November 29, 2017, filed on December 1, 2017 in case no. 17-51014, ECF No. 576, p. 125, ¶ D. *Insurance Policies*, attached hereto in pertinent part, as Exhibit B, pp. 12–13.

[8] R. Doc. 1-9, pp. 2–3.

[9] *See* R. Doc. 1-6.

[10] *Id.*

3

$1.5 million.[11] The jury also found that the fair market value of the well before the pipe separation was $5.9 million and that the fair market value of the well after the pipe separation was $0.[12] The jury also found that Rippy failed to pay Knight $361,356.87 in invoices.[13]

Rippy filed a Motion for Judgment, and on June 4, 2018, the court entered a Final Judgment ordering Knight to pay Rippy $5,538,643.13 plus prejudgment interest in the amount of $2,056,885.14 through June 1, 2017, an additional $758.72 per day until the day prior to when the final judgment was signed, and 5% interest, compounded annually, in post-judgment interest.[14] Knight appealed the Judgment to the Court of Appeals, Tenth District of Texas, Case No. 10-18-00284-cv.  The appellate court affirmed the trial court's Judgment on November 10, 2021.  Knight has filed a petition for review with the Texas Supreme Court, Case No. 21-1115.[15]

### B.  The Instant First-Filed Declaratory Judgment Action.

On December 7, 2021, ASIC filed the instant declaratory judgment action ("the First-Filed Declaratory Judgment Action") in this Court seeking a declaration that coverage is not available under the ASIC policy for the damages assessed against Knight in the Underlying Lawsuit.[16]  On January 7, 2022, Rippy moved to intervene in this First-Filed Declaratory Judgment Action, and the intervention was granted on January 18, 2022.[17] Subsequent to its intervention, Rippy filed its Motion to Dismiss on March 15, 2022, which ASIC presently opposes.[18] Knight filed its responsive pleading in the form of the Motion to Dismiss March 22, 2022, which ASIC presently opposes.[19]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *See* R. Doc. 1-10.
[16] *See* R. Doc. 1.
[17] *See* R. Doc. 4; R. Doc. 12.
[18] *See* R. Doc. 36-1.
[19] *See* R. Doc. 43.

### C.  The Second-Filed Declaratory Judgment Action.

Despite the pendency of this First-Filed Declaratory Judgment Action, on December 29, 2021, Rippy filed suit against ASIC, ACE (Knight's primary insurer), and Risk Specialists (the producing surplus lines broker for the ASIC Policy) ("the Second-Filed Declaratory Judgment Action").[20]  In the Second-Filed Declaratory Judgment Action, Rippy alleges that it has standing to sue ACE and ASIC under the policies issued to Knight as a judgment creditor and/or as a third-party beneficiary.[21]  Rippy alleges breach of contract against ACE and ASIC, and seeks a declaration of coverage under the ACE and ASIC polces.[22] On January 27, 2022, ASIC removed Rippy's Second-Filed Declaratory Judgment Action to the United States District Court for the Southern District of Texas based on diversity of citizenship.[23] Accordingly, the Second-Filed Declaratory Judgment Action is now pending in the United States District Court for the Southern District of Texas. On February 1, 2022, ASIC filed a Motion to Dismiss, or in the Alternative, to Transfer or Stay the Second-Filed Declaratory Judgment Action.[24] That motion will be fully briefed as of the date of this opposition.

### D.  Rippy and Knight's Respective Motions to Dismiss.

Rippy's Motion to Dismiss makes two separate and distinct arguments, both of which are premised upon misrepresentations. The first is that at the time ASIC filed the present action, a

---

[20] R. Doc. 1-2.
[21] *See id.*
[22] *See id.*
[23] *See* Exhibit A. ASIC's notice of removal asserted that Rippy's allegations regarding Risk Specialists' citizenship are inaccurate and/or fraudulent and were calculated to defeat diversity.  *Id.* Although Rippy properly alleged that Risk Specialists' state of incorporation is Massachusetts, Rippy improperly alleged that Risk Specialists' principal place of business is Houston, Texas.  Risk Specialists' principal place of business is not in Texas, and Risk Specialists is therefore a diverse party. Further, Rippy has no right of action against Risk Specialists and only named Risk Specialists as a party to defeat diversity jurisdiction. *Id.* As of the date of this filing, Rippy has not opposed the argument that Risk Specialists was fraudulently or improperly joined nor has Rippy filed a motion to remand the case back to Texas state court.
[24] *See* ASIC's Motion to Dismiss, or in the Alternative, to Transfer or Stay and Brief in Support, filed in the United States District Court for the Southern District of Texas, Civil Action No. 4:22-CV-00276, ECF No. 4, attached hereto as Exhibit C.

5

parallel Texas state court action was pending before the Texas Supreme Court.[25] The second is that Rippy filed its own coverage litigation in Texas state court before ASIC filed the instant action, making Rippy's action the first-filed litigation seeking a declaration on coverage.[26]  As set forth herein, neither representation is accurate.

In Knight's Motion to Dismiss, Knight acknowledges that the instant suit is the first-filed declaratory judgment action brought on the issue of coverage.[27]  However, Knight contends that this Court should decline to decide the instant declaratory judgment action because ASIC seeks declarations on non-justiciable questions, fails to state a claim upon which relief can be granted, and fails to join the proper parties.[28] Additionally, Knight advocates that the Court should exercise its discretion and dismiss the instant action because this case was brought with the improper purpose of "procedural fencing."[29] As explained below, Knight is wrong on both fronts.

## III.     LAW AND ARGUMENT

### A. Legal Standard for Dismissal due to the Pendency of a Parallel Federal Proceeding.

"The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."[30]"As between federal district courts . . . the general principle is to avoid duplicative litigation."[31] "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid

---

[25] *See* R. <u>Doc. 36-1, p. 5</u> ¶ 3.
[26] *Id.*
[27] R. <u>Doc. 42, p. 12</u>.
[28] *Id.* at p. 2.
[29] *Id.* at pp. 2–3.
[30] *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL–CIO*, <u>751 F.2d 721, 728</u> (5th Cir.1985) (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, <u>342 U.S. 180</u>, <u>72 S. Ct. 219</u>, <u>96 L.Ed. 200</u> (1952)).
[31] *Colo. River Water Conservation Dist. v. United States*, <u>424 U.S. 800, 817</u>, <u>96 S. Ct. 1236</u>, <u>47 L.Ed.2d 483</u> (1976).

piecemeal resolution of issues that call for a uniform result."[32] To effectuate this policy, a district court may dismiss, stay, or transfer "an action where the issues presented may be resolved in an earlier filed action pending in another district court."[33] In particular, "[a] court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere."[34]

The Fifth Circuit adheres to the "first-to-file rule," which states that "when related cases are pending before two *federal courts*, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."[35] This rule "maximize[s] judicial economy and minimize[s] embarrassing inconsistencies" by permitting a district court to "prophylactically refus[e] to hear a case raising issues that might substantially duplicate those raised by a case pending in another court."[36]

Under Fifth Circuit precedent, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."[37] In other words, "[i]n the absence of compelling circumstances the court initially seized of a controversy should be the one to decide whether it will try the case."[38]

## B. There is Substantial Overlap Between the First-Filed and Second-Filed Declaratory Judgment Actions.

The "crucial inquiry" under the first-to-file rule is whether there is "substantial overlap" between the two actions.[39] The rule does not require that the claims or even the parties be

---

[32] *W. Gulf Mar. Ass'n.*, 751 F.2d at 729.

[33] *Id.* at 728.

[34] *Id.*

[35] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (emphasis added).

[36] *Id.* at 604.

[37] *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

[38] *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). ASIC has filed a Motion to Dismiss, or in the Alternative, to Transfer or Stay Rippy's Second-Filed Declaratory Judgment in the United States District Court for the Southern District of Texas. *See* Exhibit C.

[39] *See Save Power*, 121 F.3d at 950.

identical.[40] If the two actions are likely to "overlap on the substantive issues," they should be consolidated in "the jurisdiction first seized of the issues."[41] Accordingly, this Court must determine whether the First-Filed and Second-Filed Declaratory Judgment Actions involve "substantially similar issues."  As shown below, the answer is a resounding yes.

First, there is significant overlap in the parties.  In the First-Filed Declaratory Judgment Action, the parties are Plaintiff ASIC, Defendant Knight, Intervenor Rippy, and pending Intervenor ACE.[42] Through intervention, all necessary parties have been joined including Rippy and ACE, should the Court grant ACE's intervention.[43] In the Second-Filed Declaratory Judgment Action, the parties are Rippy, ASIC, and ACE.[44] Thus, with the exception of Knight and improperly joined Risk Specialists, the parties to the two federal declaratory judgment actions are identical.[45]

---

[40] *See Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) ("The rule does not require the cases to be identical"); *W. Gulf Mar. Ass'n*, 751 F.2d at 731, n. 5 (noting that incomplete identity of the parties does not require the simultaneous litigation of two essentially identical actions where the parties could obtain complete relief in one forum and any missing parties could probably be joined in that action).

[41] *Mann Mfg.*, 439 F.2d at 408, n. 6; *see also id.* ("Once the *likelihood* of substantial overlap between the two suits had been demonstrated, it was no longer up to the [court in the second-filed case] to resolve the question of whether both should be allowed to proceed;" that authority belonged to the court in the first-filed case) (emphasis added); *Cadle*, 174 F.3d at 606 ("[O]nce the district court found that the issues *might* substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.") (emphasis added).

[42] ACE has filed a Complaint-in-Intervention and Request for Declaratory Relief, which remains pending. *See* R. Doc. 17.

[43] *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 674–75 (5th Cir. 1985) (noting an "intervenor is treated as if he were an original party and has equal standing with the original parties"). However, should the Court deem Rippy and ACE's intervention to be insufficient and find that they are not properly joined parties, ASIC requests leave of court to amend its complaint to name both entities as defendants to the instant action to cure any defects. Pursuant to Federal Rule of Civil Procedure 15, unless there is substantial reason to deny leave to amend the complaint, the discretion of the federal district court is not broad enough to permit denial. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 546 (5th Cir. 1983) (noting that where plaintiffs pursue amendment of the complaint timely, properly and responsibly, denial of a motion to amend would be appropriate only if there were no legal basis for amendment).

[44] Although Rippy also named Risk Specialists as a defendant in the Second-Filed Declaratory Judgment, ASIC's notice of removal asserts that Risk Specialists was fraudulently and/or improperly joined. Rippy has not opposed the removal.

[45] *See* Exhibit A.

In addition, the issues presented and the demands asserted in the two actions are identical. At issue in both actions is the availability of insurance coverage for the judgment against Knight in the Underlying Litigation. Here, in the First-Filed Declaratory Judgment Action, ASIC seeks a declaration of no coverage under its policy.[46] In addition to its coverage defenses, ASIC also asserts that its policy has not been triggered because the underlying primary policy issued by ACE has not been exhausted.[47] In the Second-Filed Declaratory Judgment Action, Rippy claims that ACE and ASIC breached their policies of insurance and seeks a declaration of coverage under the ACE and ASIC policies.[48] The core issues in the two pending declaratory judgment actions, i.e, insurance coverage to Knight for the Underlying Litigation, are identical.[49] Because it is undisputed that there is "substantial overlap" between the two declaratory judgment actions, ASIC respectfully submits that it is incumbent upon this Court to decide the instant action since it was the First-Filed Declaratory Judgment Action. Moreover, as will be shown below in the *Trejo* analysis, there are no compelling circumstances that exist in the instant suit that would preclude this Court from adhering to the first-to-file rule.

### C.  An Actual Controversy Exists Between the Parties.

Because this Court is the proper court to adjudicate the issues, this Court must determine whether an actual controversy exists between ASIC and ACE, on the one hand, and Knight and Rippy, on the other hand, and whether the issues are justiciable. As shown below, contrary to Rippy's assertion, an actual controversy does exist and the issues are justiciable.

The Declaratory Judgment Act provides that the Court, "[i]n a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading, may declare the rights and

---

[46] *See* R. Doc. 1.
[47] *Id.*
[48] *See* R. Doc. 1-2.
[49] *See* R. Doc. 1; R. Doc. 1-2, pp. 19–20 ¶¶ 49–50.

other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."[50] "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."[51] Furthermore, dismissing a declaratory judgment action based on nothing but a "whim or personal disinclination" would be an abuse of the district court's broad discretion.[52]

Knight contends that ASIC's claims related to the Underlying Lawsuit are moot due to the bankruptcy court's discharge of Knight's personal liability in the Joint Chapter 11 Plan of Reorganization, and therefore, are insufficient to justify an actual controversy.[53] Knight is mistaken.

The Joint Chapter 11 Plan of Reorganization that was confirmed by the United States Bankruptcy Court for the Western District of Louisiana states, in pertinent part, "Notwithstanding anything to the contrary in the Plan, the Confirmation Order, any bar date notice or other order of the Bankruptcy Court:

\*                           \*                           \*

 (b) all Insurance Policies and the respective obligations of the Debtors (and, after the Effective Date, of the Reorganized Debtors) and the Insurers under such Insurance Policies, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, released, discharged or impaired in any respect, and shall be honored, notwithstanding any release in the Plan or Confirmation Order, in accordance with the Insurance Policies and applicable non-bankruptcy law;

 (c) nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Reorganized Debtors), or any other individual or entity, as applicable, under any Insurance Policies;

---

[50] 28 U.S.C. § 2201(a).
[51] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).
[52] *Rowan Cos. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989) (quotation omitted).
[53] *See* R. Doc. 42, pp. 7–8.

 (d) the injunctions set forth in Article VIII.E of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit:

            *                       *                      *

 (II) the Insurers to administer, handle, defend, settle, and/or pay, under and in accordance with the terms of the applicable Insurance Policy and without further order of this Bankruptcy Court, (A) workers' compensation claims; (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered in this Bankruptcy Court granting a claimant relief from the automatic stay or the Plan injunction to proceed with its claim (but not against the property of a Reorganized Debtor other than any applicable Insurance Policy)."[54]

Furthermore, the Agreed Order Granting Relief from the Automatics Stay states, in pertinent part, "IT IS FURTHER ORDERED that nothing herein (i) alters or amends the terms and conditions of any insurance policies issued to the Debtor . . . or (v) precludes or limits, in any way, any rights of [insurer] to contest and/or litigate the existence, primacy and/or scope of available coverage."[55]

      Clearly, the bankruptcy court did not intend to strip ASIC of its ability to properly evaluate and determine its coverage obligations (or lack thereof) with regard to the claims against Knight in the Underlying Lawsuit. ASIC's instant declaratory judgment action does not violate the bankruptcy court's orders; in fact, it is contemplated by them, and "without further order of this Bankruptcy Court."[56]

      Rippy, on the other hand, contends that when ASIC filed the present action against Knight, it violated a Texas Rule of Civil Procedure Rule 11 Agreement filed in the Underlying Lawsuit.[57]Rippy further argues that ASIC's continued defense of Knight in the appeal to the Texas Supreme Court in the Underlying Lawsuit demonstrates that there is absolutely no "case or controversy" at this time between ASIC and Knight.[58]  Rippy too is mistaken on both fronts.

---

[54] *See* Exhibit B, pp. 12–13 ¶ D. *Insurance Policies.*
[55] *See* R. Doc. 1-4, p. 3.
[56] *See* Exhibit B, pp. 12–13 ¶ D. *Insurance Policies.*
[57] *See* R. Doc. 36-1, p. 5 ¶ 2.
[58] *See id.*

A Rule 11 agreement was entered in the Underlying Lawsuit between Knight and Rippy, which states that Plaintiffs, i.e., Rippy:

> agree not to execute on the judgment against Defendant or its insurers until the appellate courts' issuance of the mandate. As part of this agreement, Plaintiffs agree not to file or assert a judgment lien, abstract judgment, writ of garnishment, or any other post-judgment enforcement mechanism in any court or elsewhere against Defendant prior to the issuance of the mandate. This agreement is not intended to prejudice any rights Plaintiffs may have to enforce the judgment once the appellate courts' mandate issues.[59]

Neither Knight nor its insurers, who were not parties to the Underlying Lawsuit, agreed to abstain from having their rights under the policy declared, which is the purpose of the present action.[60]

Furthermore, Rippy's argument that there is no case or controversy between ASIC and Knight because ASIC is defending Knight in the Underlying Lawsuit is baseless and erroneous.[61] ASIC is an excess insurer and has no obligation to defend Knight. Merely because an insurer participates in an insured's defense, which ASIC has a right to do under the policy, does not mean that there is no actual controversy between the insurer and the insured. Indeed, an agreement to defend subject to a reservation of rights is evidence of an actual controversy between insurer and insured. There is no doubt that an actual controversy exists between the insurers (ASIC and ACE), on the one hand, and the insured (Knight) and judgment creditor (Rippy) on the other.

### D.  This First-Filed Declaratory Judgment Action is Justiciable.

Rippy argues that the declaration ASIC seeks from this Court is not justiciable or ripe for review. However, Rippy is currently seeking the same remedy in the United States District Court

---

[59] *See* R. Doc. 36-8, pp. 2–6.

[60] *See id.*

[61] ASIC disputes many of the factual assertions Rippy makes in its Motion to Dismiss. For example, ASIC and ACE jointly hired appellate counsel for Knight, and that counsel attended the trial of the Underlying Lawsuit. However, as the Underlying Lawsuit does not address coverage issues, and neither ASIC nor ACE were parties to the Underlying Lawsuit, such counsel was acting solely on behalf of Knight—not ASIC or ACE. *See* R. Doc. 36-1, pp. 5, 20, 27.

for the Southern District of Texas. It is disingenuous that Rippy actively opposes the instant action when it has acknowledged itself that these issues are ripe and are seeking adjudication on them in a different federal court. Despite Rippy's claims to the contrary, the determination of whether the ASIC policy provides coverage for Knight's liability arising out of the already litigated Underlying Lawsuit is ripe for adjudication. Although there is a pending Petition for Review in the Texas Supreme Court related to the Underlying Lawsuit, the record is still the record. The facts have been developed, there is no ongoing discovery, there has been a ruling, and there is a judgment. Based upon that, this Court can, as a matter of law, apply the policy to the facts that have already been developed in the Underlying Lawsuit to make a legal conclusion as to the lack of availability of coverage.

The Fifth Circuit has explained that when considering a declaratory judgment action, a district court must engage in a three-step inquiry to determine whether to decide or dismiss a complaint for declaratory relief.[62] In deciding whether to abstain from exercising jurisdiction in a declaratory judgment action, a district court must consider: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."[63]

### 1. The Declaratory Action is Justiciable as there is an Actual Controversy Among the Parties that is Ripe for Adjudication.

In determining whether to grant a declaratory judgment, the Court must first determine whether the declaratory judgment is justiciable.[64] The justiciability doctrines of standing, mootness, political question, and ripeness derive from Article III's "case or controversy"

---

[62] *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).
[63] *Id.*; *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003).
[64] *See Orix*, 212 F.3d at 895.

requirement.[65] In a declaratory judgment action, justiciability often turns on ripeness.[66] The purpose of this doctrine is to forestall "entangl[ement] . . . in abstract disagreements" through "avoidance of premature adjudication."[67] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[68]

Under Fifth Circuit jurisprudence, the question of the duty to indemnify is premature and nonjusticiable until the underlying liability lawsuit is resolved and the defendant is cast in judgment.[69]The Fifth Circuit has articulated, however, that a case is generally ripe if the remaining questions are purely legal; a case is not ripe if further factual development is required.[70]

In *Hardware Mutual Casualty Company v. Schantz*, 178 F.2d 779, 779–80 (5th Cir. 1949), the insurer filed a declaratory judgment seeking an adjudication of the rights of the parties under a policy. The insured sought to have the case dismissed for lack of jurisdiction, asserting that the court lacked jurisdiction over the case because no actual controversy existed as there was a pending wrongful death state court suit against the insured and the sought declaration was not yet justiciable.[71] The lower court agreed with the insured and dismissed the suit.[72] On appeal, the Fifth Circuit evaluated whether the trial court had jurisdiction.[73]The Fifth Circuit noted that the insurer sought a declaratory judgment in an effort to escape liability in the underlying state court suit.[74] In determining whether the lower court had jurisdiction, the Fifth Circuit held that the declaratory

---

[65] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).
[66] *See id.*; *Orix*, 212 F.3d at 895; *Rowan*, 876 F.2d at 27–28.
[67] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds* by *Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L.Ed.2d 192 (1977).
[68] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149, 87 S. Ct. 1507).
[69] *New England Ins. Co. v. Barnett*, 465 Fed. Appx. 302, 308 (5th Cir. 2012) (noting the duty to indemnify is triggered by the actual facts that establish liability in the underlying is cast in judgment, the issue of indemnity is premature and non-justiciable).
[70] *See New Orleans Pub. Serv.*, 833 F.2d at 587.
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*

judgment presented an *actual controversy* because the parties disputed coverage and was indeed ripe for review.[75]

Similarly in *Central Surety & Insurance Corporation v. Hampton*, 179 F.2d 261 (5th Cir. 1950), the Fifth Circuit addressed whether the federal district court had jurisdiction over an action for declaratory judgment filed by an automobile liability insurer seeking a declaration as to its liability under such policy. The Fifth Circuit found that declaration on the issue of liability under the policy of insurance was justiciable and ripe for review, notwithstanding the pendency of an underlying state court action against the insured relating to the death of the insured's employee.[76] The Fifth Circuit explained that the question of the insurer's obligations and liabilities under the policy could not be determined in the state court since the coverage of the policy was not a material question to be disposed of in that suit.[77]

Here, ASIC's insurance policy excludes coverage based on the facts found in the Underlying Lawsuit.[78] ASIC does not make this assertion merely based on the allegations made the Underlying Lawsuit's complaint, but rather on the factual findings and the Judgment against Knight in the Underlying Lawsuit. ASIC's indemnity obligation is not premature because the facts establishing Knight's liability have already been determined, and the issue of coverage is purely a question of law. Accordingly, this First-Filed Declaratory Judgment Action is ripe for adjudication, as the only questions ASIC is asking this Court to decide are purely legal ones. Therefore, because the determination of whether ASIC's policy will cover the damages established in the Underlying Lawsuit is ripe for adjudication, this action is justiciable.[79] Here, just like in *Hardware Mutual* and

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *See* R. Doc. 1.

[79] The issues on appeal in the Texas Supreme Court will have no impact on coverage for Rippy's damages contained in the Underlying Lawsuit's record.

*Central Surety*, there is an actual controversy in the instant matter sufficient to justify the exercise of this Court's subject matter jurisdiction that is ripe for adjudication.

### 2.   This Court has Authority to Grant Declaratory Relief.

Upon determining that ASIC's declaratory judgment claims are justiciable (which they are), the Court must also determine whether it has the authority to grant declaratory relief. The Fifth Circuit has explained that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."[80] The Anti-Injunction Act states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[81] Therefore, the district court cannot consider the merits of a declaratory judgment action when (1) a declaratory judgment action defendant has previously filed a cause of action in state court against the declaratory judgment action plaintiff; (2) the state court case involves the same issues as those involved in the federal court case; and (3) the district court is prohibited from enjoining the state court proceedings under the Anti-Injunction Act.[82]

Here, ASIC is not a party in the Underlying Lawsuit in state court and there are not any state-court proceedings involving the same issues now being examined.[83] Therefore, the Anti-Injunction Act does not apply, as there is no pending state-court action between ASIC and any of the defendants in this case, including Knight and Rippy as an intervenor, or ACE as a potential

---

[80] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc*., 996 F.2d 774, 776 (5th Cir. 1993).
[81] 28 U.S.C. § 2283.
[82] *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 179 F.Supp. 3d 656, 670–71 (E.D. La. 2016) (citing *Travelers*, F.2d at 776; *Sherwin–Williams*, 343 F.3d at 387).
[83] *See* R. Doc. 1-3; Exhibit A.

16

intervenor. Accordingly, the Court's authority to grant declaratory relief on the duty to indemnify turns on whether subject matter jurisdiction is proper.[84]

As established in ASIC's Complaint for Declaratory Judgment, this Court has subject matter jurisdiction over the instant claim pursuant to 28 U.S.C. 1332(a) because the parties in the instant litigation are completely diverse and the amount in controversy exceeds $75,000.[85] Therefore, since the Court has diversity jurisdiction over this matter and the Anti-Injunction action does not apply because there is no pending state court action between ASIC and any of the declaratory judgment defendants, the Court has the authority to grant declaratory relief here.

### 3. This Court Should Exercise its Discretion to Decide ASIC's Declaratory Judgment.

As ASIC's First-Filed Declaratory Judgment Action presents a justiciable claim, and this Court has the authority to issue the declaratory judgment, the only remaining consideration is whether this Court should accept or decline jurisdiction over this action. The Fifth Circuit has developed seven nonexclusive factors—the so-called "*Trejo* factors"—that a district court should consider when deciding whether to exercise jurisdiction over a declaratory judgment action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[86]

---

[84] *See Sherwin–Williams*, 343 F.3d at 387–88.
[85] *See* R. Doc. 1, p. 2 ¶ 3.
[86] *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994).

These nonexclusive *Trejo* factors ensure district courts considering whether to exercise jurisdiction over a declaratory judgment suit adhere to three fundamental principles of our justice system: federalism, fairness, and efficiency.[87] As set forth below, the *Trejo* factors weigh in favor of exercising jurisdiction and deciding the instant declaratory judgment.

### a.   Applying the *Trejo* Factors: The Federalism Concerns.

The first *Trejo* factor (whether there is a pending state action in which all the matters in the controversy may be litigated) and the seventh *Trejo* factor (whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending) require the Court to examine comity and federalism concerns.[88]

The first *Trejo* factor requires comparison of the declaratory judgment action with the underlying state court action.[89] If the declaratory judgment action presents the same issues as the state court action, involves the same parties, and is not governed by federal law, the federal court should generally decline to exercise jurisdiction.[90] The Fifth Circuit has explained that a state court action is not truly parallel if it does not involve all the same parties or issues as the declaratory judgment action.[91] The Fifth Circuit has also made clear that while there is no per se rule requiring a district court to hear a declaratory judgment action where there is no pending state litigation, the absence of a pending parallel state litigation is a factor that weighs strongly against dismissal of the federal declaratory judgment action.[92]

---

[87] *See Sherwin-Williams*, 343 F.3d at 390–91.
[88] *See id.*
[89] *See id.* at 393–94.
[90] *See id.*
[91] *See id.* at 394, n. 5.
[92] *Id.*

Here, ASIC is not a party to the Underlying Lawsuit in state court. Moreover, whereas the underlying state court lawsuit involved issues of fact, fault, and causation, the determination of whether there is a duty to indemnity involves a straightforward examination of the Underlying Lawsuit's factual findings and the insurance policy ASIC issued to Knight. Furthermore, the resolution of the Underlying Lawsuit that is currently pending petition for review in the Texas Supreme Court will not determine ASIC's duty to provide coverage. The state and federal proceedings are clearly not parallel. As the lack of a pending parallel state proceeding weighs strongly against dismissal, the first *Trejo* factor weighs in favor of this Court exercising jurisdiction over ASIC's First-Filed Declaratory Judgment Action.[93]

Alternatively, Knight argues that while there is not a parallel state court case, there is a parallel federal "identical suit" pending, which should be considered under this factor.[94] Of course, the first *Trejo* factor specifically examines whether there is a pending *state court* action where the matters in controversy may be fully litigated. Even assuming *arguendo* that the parallel Second-Filed Declaratory Judgment Action should be considered under this factor, as previously established, this instant declaratory judgment action is the First-Filed Declaratory Judgment Action. As such, and given that there is no parallel state court action pending in which the matters in controversy in the instant case can be fully litigated, this factor weighs in favor of this Court deciding this action.

The seventh *Trejo* factor focuses on pending parallel state court actions.[95] Here, the Underlying Lawsuit and this instant action are clearly not parallel, so the seventh *Trejo* factor does

---

[93] *See id.* at 394.
[94] *See* R. Doc. 41, pp. 14–15.
[95] *See Sherwin-Williams*, 343 F.3d at 390–91.

not need to be examined. Accordingly, this factor is neutral in determining whether this Court should exercise jurisdiction.

### b.  Applying the *Trejo* Factors: The Fairness Concerns.

The second, third, and fourth *Trejo* factors analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds. Federal declaratory judgment suits are routinely appropriately filed in anticipation of other litigation.[96] As such, the Fifth Circuit has voiced that these three *Trejo* labels cannot be literally applied.[97] A proper purpose of a declaratory judgment is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires.[98] Further, the mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court.[99]

Here, ASIC filed the instant suit against Knight on December 7, 2021.[100] Rippy filed its declaratory judgment against ASIC, ACE, and improperly joined Risk Specialists on December 29, 2021, after ASIC had already filed the instant suit.[101] It was eminently reasonable of ASIC to conclude that coverage under the policy for Knight's liability established in the Underlying Lawsuit would become an issue following the judgment (which is in excess of $5 million), particularly since ACE's underlying policy is subject to a $1 million limit and Knight's personal liability is off the table pursuant to its reorganization in bankruptcy court. Even though the final judgment was rendered in the Underlying Lawsuit on June 4, 2018, ASIC still did not file the

---

[96] *See id.* at 391–92.
[97] *Id.*
[98] *See Texas Employers' Ins. Assoc. v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988).
[99] *See Sherwin-Williams*, 343 F.3d at 397.
[100] *See* R. Doc. 1.
[101] *See* R. Doc. 1-2.

instant suit until after the judgment was appealed and affirmed, not once, but twice.[102] Furthermore, ASIC warned Knight of the significant coverage issues related to Rippy's claims through several coverage position letters.[103] In the latest letter issued to Knight on February 26, 2020, ASIC advised Knight that if the judgment was affirmed on appeal, there would be no coverage under the ASIC policy for the judgment in favor of Rippy and against Knight.[104] Thus, even though ASIC filed the instant suit with knowledge that Rippy might eventually seek to recover the judgment against Knight from ASIC, this action was not the product of ASIC attempting to gain access to a federal forum on improper or unfair grounds. Furthermore, the fact that a declaratory judgment action is brought in anticipation of a coverage dispute does not require dismissal of the declaratory judgment action by the federal court.[105] Given the nature of the facts, the second *Trejo* factor does not weigh against this Court exercising jurisdiction.

As to the third *Trejo* factor, the Fifth Circuit has noted that the filing of every lawsuit requires forum selection.[106] Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive "forum shopping."[107] Moreover, courts are less likely to find forum

---

[102] Tenth Circuit Court of Appeals, at Waco, Texas, affirmed the June 4, 2018 judgment on December 30, 2020. On rehearing, the Texas Tenth Circuit Court of Appeals reaffirmed the trial court's judgment once again on November 10, 2021. *See* R. Doc. 36-1, p. 7 ¶ f–h.

[103] ASIC issued multiple coverage position letters to Knight related to the ASIC policy, which was issued and delivered to Knight in Louisiana. Specifically, ASIC issued coverage position letters to Knight on March 26, 2018, August 9, 2018, and February 26, 2020. *See* ASIC's March 26, 2018 coverage position letter to Knight, attached hereto as Exhibit D; ASIC's August 9, 2018 coverage position letter to Knight, attached hereto as Exhibit E; ASIC's February 26, 2020 coverage position letter to Knight, attached hereto as Exhibit F. In each of those letters, ASIC warned Knight of significant coverage issues regarding Rippy's claims, and ASIC reserved its right to disclaim coverage. *See id.* In its February 26, 2020 letter, ASIC advised Knight that if the judgment is affirmed on appeal, there would be no coverage under the ASIC policy for the judgment in favor of Rippy and against Knight. *See* Exhibit F.

[104] *See* Exhibit F.

[105] *See Sherwin-Williams*, 343 F.3d at 397.

[106] *See id.* at 391–92.

[107] *Id.* at 391.

shopping where, as here, (1) a foreign insurer files a diversity action in federal court, and (2) the selection of the federal forum does not change the applicable law.[108]

Here, the ASIC policy was issued by ASIC, an eligible surplus lines insurer, to the Named Insured, Knight, in Lafayette, Louisiana, through Knight's surplus lines producing broker, Knox Insurance Group, LLC, also located in Lafayette, Louisiana.[109] Because the ASIC policy was issued to Knight in Louisiana through a Louisiana producing broker, ASIC is merely asking this Court to make a determination of coverage under a policy that is governed by Louisiana's laws, statutes, and regulations for Knight's liability established in the Underlying Lawsuit.[110] As such, ASIC did not engage in impermissible forum shopping by filing this declaratory judgment action in this federal Court (which has jurisdiction to hear it), and the third *Trejo* factor weighs in favor of this Court exercising jurisdiction over the instant action.

As to the fourth *Trejo* factor, ASIC was not a party to the Underlying Lawsuit, and as such it is not seeking to "change forum." As explained above, the Underlying Lawsuit in state court and this action are not parallel in any material sense. There are no inequities that flow from allowing this action to proceed while the Underlying Lawsuit remains pending in the Texas Supreme Court under a petition for review. Thus, the fourth *Trejo* factor weighs in favor of this Court exercising jurisdiction.

### c.  Applying the *Trejo* Factors: The Efficiency Concerns.

The fifth and sixth *Trejo* factors primarily address efficiency considerations.[111] Under an efficiency analysis, a federal district court should avoid duplicative or piecemeal litigation where

---

[108] *Id.* at 399.
[109] *See* Declaration of Tanya E. Kent of Risk Specialists filed in the United States District Court for the Southern District of Texas, Civil Action No. 4:22-cv-00276, attached hereto as Exhibit G; *see also* Exhibit A; R. Doc. 1-11.
[110] *See infra* n. 126.
[111] *See Sherwin-Williams*, 343 F.3d at 391.

possible.[112] A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum because that leads to piecemeal litigation and duplication of effort in state and federal courts.[113]

Here, once again, the Underlying Lawsuit, which has been litigated to a judgment, is not a parallel suit to the instant action. The witnesses in the Underlying Lawsuit have nothing to do with the issue of coverage, which is the only issue before this Court. Nevertheless, the witnesses in the Underlying Lawsuit have already testified and it is not necessary to consider whether the federal forum is more convenient for them. Additionally, Rippy's Second-Filed Declaratory Judgment Action is already pending in federal court, thus this Court need not consider whether the federal forum is convenient for the parties. Thus, the fifth *Trejo* factor is neutral.

Finally, the Underlying Lawsuit has been pending since December 28, 2010.[114] The Underlying Lawsuit has been fully litigated, the facts establishing Knight's liability have been determined, and a judgment has been rendered.[115] Further, it would be a waste of judicial resources to dismiss this action when ASIC is merely asking this Court to make a legal determination of coverage under a policy of insurance. Exercising jurisdiction is clearly in the interest of judicial economy, and thus, the sixth *Trejo* factor weighs in favor if this Court deciding the instant declaratory judgment action.

As set forth above, all three aspects of the *Trejo* Factors—federalism, fairness, and efficiency—support this Court exercising jurisdiction and deciding the instant declaratory judgment.

---

[112] *See id.*
[113] *Id.*
[114] *See* R. Doc. 36-1, p. 6 ¶ 4(a).
[115] *See* R. Doc. 1-6.

### E.  Legal Standard for a Stay of Proceedings.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[116] It is, therefore, well established that a federal district court has wide discretion to grant a stay in a pending matter.[117] Whether to grant a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[118]

Since the issues in the instant suit are justiciable,[119] this Honorable Court should decide ASIC's declaratory judgment and deny the Motions to Dismiss. However, in the event that this Court deems the instant action non-justiciable based upon the petition for review pending in the Underlying Lawsuit in Texas Supreme Court, ASIC respectfully requests that this Court stay the instant matter pending resolution of the Underlying Lawsuit.

### F.  Venue is Proper in the Western District of Louisiana.

Rippy also alleges that ASIC's declaratory judgment action should be dismissed based on improper venue.[120] As explained below, however, courts have consistently held that the proper venue for a declaratory judgment action regarding insurance coverage includes the district where the policy was issued.  Here, the ASIC Policy was issued to Knight Oil Tools, Inc. in Lafayette, Louisiana, through the producing broker, Knox Insurance Group, LLC, in Lafayette, Louisiana.[121] Because the policy was issued in the Western District, venue is proper in this Court.

---

[116] *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

[117] *See Amec Constr. Mgmt., Inc. v. Fireman's Fund Ins. Co.*, CV 13-00718-JJB-EWD, 2016 WL 7468808, at *2 (M.D. La. May 31, 2016).

[118] *Landis*, 299 U.S. at 254–55; *see also Atterbery Truck Sales, Inc. v. Navistar, Inc*., 12-0497, 2012 WL 2952762, at *2 (W.D. La. July 16, 2012).

[119] As shown in this brief and as are exemplified by the fact that Rippy is currently seeking the same remedy requested here in the United States District Court for the Southern District of Texas. It is noteworthy that Rippy actively opposes the instant action when it has acknowledged that these issues are ripe and is seeking adjudication on them in a different federal court.

[120] *See* R. Doc. 36-1.

[121] *See* Exhibit G; *see also* R. Doc. No. 1-11.

Venue is governed by 28 U.S.C. § 1391, which provides: "A civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[122] This transactional venue provision is available as an alternative to Section 1391(a)(1) that permits venue to be based on the residence of the defendants, meaning venue can be proper in a district if either the transactional or the residential provision is satisfied.[123] It is now "absolutely clear" that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.[124]

In *Clarendon Nat. Ins. Co. v. T.M.I. Enterprises, LLC*, 2008 WL 3838025 (W.D. La. 8/14/08), an insurer filed a declaratory judgment action seeking a declaration of non-coverage under its policy for an underlying claim arising out of a tanker trailer rupture in Bogalusa.  Like Rippy, the insured defendant in *Clarendon* argued that, because the underlying claim took place in the Eastern District, venue was not proper in the Western District. This Court rejected that argument.[125] Although the underlying claim did not occur in the Western District, venue in the Western District was proper because a substantial part of the events or omissions giving rise to the claim occurred in this district. The insurer established that the policy was bound and generated in Shreveport, that the policy was issued from Shreveport, that the insurer's coverage decisions were made in Shreveport, and that all claims handling activities occurred in Shreveport.[126]   As the

---

[122] 28 U.S.C. § 1391(a)(2).

[123] *See* 14D Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3rd § 3806.1, p. 200 (2007 ed.).

[124] *Id.* at p. 201.

[125] *See id.*

[126] *Id.* at p. 2; *see also Praetorian Specialty Ins. Co. v. Aguillard Const. Co., Inc.*, 829 F.Supp. 2d 456 (W.D. La. 5/20/10) (substantial part of events giving rise to insurance coverage dispute occurred in Western District, and thus it was an appropriate venue for insurer's declaratory judgment action seeking declaration that its policies provided no coverage for underlying accident, where policies were received, rated, underwritten, bound, generated, issued, and administered within Western District); *Starnet Ins. Co. v. Fueltrac, Inc.*, 2009 WL 1210508 (W.D. La. 5/1/09) (in insurance coverage declaratory judgment action, venue is proper in district where policy was negotiated and delivered and premiums were paid); *American Motorists Ins. Co. v. Cellstar, Corp.*, 61 Fed. Appx. 119 (5ᵗʰ Cir. 2003) (court held that district in which formation and execution of policy occurred was proper venue); *Arch Specialty Ins. Co. v. Entertainment Specialty Services, Inc.*, 2005 WL 696897 (S.D.N.Y. 2005) (New York was a proper venue for declaratory action regarding insurance coverage related to a Texas lawsuit when defendants obtained the policy

Southern District of Texas has acknowledged, even when the insured is not located in a city, the procurement of a policy in a city for a company based elsewhere by its insurance broker is a satisfactorily significant event to establish venue in that city.[127]

The fact that the underlying claim did not occur in this district does not render this district an improper venue.  Indeed, as the court in *Transcontinental Ins. Co. v. Coreslab Structures (OKLA) Inc.*, 2002 WL 570880, *FN8 (N.D. Tex. 4/12/02) noted, "[i]t is not uncommon for an insurance coverage contract dispute to be located in a different forum from that of the underlying claim."[128]

To resolve Rippy's Motion to Dismiss, this Court does not need to determine the "best venue," but only if the venue is proper.[129]  Because venue is proper in the Western District of Louisiana, Rippy's Motion to Dismiss should be denied.

---

through an agent from a New York office, negotiation involved correspondence to New York, the policy issued from New York and the claim for coverage was submitted to the New York office); *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F.Supp. 1247 (S.D.N.Y. 1995) (New York was proper venue in declaratory action regarding coverage under reinsurance contracts for damages arising from Texas litigation when reinsurance contracts were negotiated by communications between Texas and New York, and contracts were executed and to be performed in New York); and *Harleysville Ins. Co. of New Jersey v. Clark*, 2006 WL 2135834 (D. N.J. 2006) (New Jersey was proper venue for declaratory action regarding insurance coverage for a Maryland car accident because the negotiation, payment and issuance of the policy to a New Jersey insured occurred in New Jersey).

[127] *Am. Motorists Ins.*, 61 Fed. Appx. 119, at *1 (5th Cir. 2003); *see also Old Republic Ins. Co. v. Admiral Ins. Co.*, 2016 WL 10788990 (S.D. Tex. 8/8/16) (the delivery to and acceptance of a policy is a satisfactorily substantial event that can establish venue).

[128] *See, e.g.*, *Nobel Ins. Co. v. Acme Truck Line, Inc.*, No. 99–2950, 2000 WL 298908, *3 (N.D. Tex. March 21, 2000) (denying defendant's motion to transfer venue to the site of the underlying accident in an insurance coverage dispute case); *AVEMCO Ins. Co. v. GSV Holding Corp.*, 1997 WL 566149, *6 (S.D.N.Y. September 11, 1997) (transferring venue to New Jersey even though the underlying accident occurred in New York because "the pivotal issue in this declaratory judgment action is the interpretation of an insurance policy between defendants" and that centers on telephone conversations in New Jersey); *Evangelical Lutheran Church of America v. Atlantic Mutual Ins. Co.*, 973 F.Supp. 820, 823 (N.D. Ill. 1997) (although the place where the sexual misconduct occurred was Texas, the important event underlying the declaratory judgment action, the decision to deny coverage, was made at the corporate offices in New York); *AFA Enterprises, Inc. v. American States Ins. Co.*, 842 F.Supp. 902, 909 (S.D.W. Va. 1994) (transferring venue to Pennsylvania even though the underlying accident occurred in West Virginia because "the material facts of this litigation surround plaintiffs' purchase of insurance from defendant and a previous insurer"); *Home Ins. Co. v. Liberty Mutual Ins.*, 678 F.Supp. 1066, 1071 (S.D.N.Y. 1988) (place of accident giving rise to coverage dispute was unrelated to the sole issue to be determined—the parties' understanding of the policy provisions).

[129] *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 459 (S.D. Tex. Sept. 6, 1996) (Atlas, J.).

**G.  Rippy Cannot Establish that a Transfer to the Southern District of Texas is Appropriate.**

Next, Rippy argues, in the alternative, that this Court should transfer this case to the Southern District of Texas.  Title 28, section 1404 of the United States Code provides: "[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[130] Under this statute, Rippy, as the defendant, bears the burden of demonstrating that the Court, in the exercise of its sound discretion, should transfer this case.[131] As the statute indicates, the moving party should first demonstrate that the district where the party would like the action transferred to is a district where the case "might have been brought."[132]

Assuming arguendo that venue is proper in the Southern District of Texas, this Court must next consider several public and private interest factors to determine if the convenience of the parties and witnesses and the interest of justice is best served by a transfer of venue, including: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; and (6) the local interest in having localized interests decided at home.[133] "Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer. [A proper venue transfer] analysis directly manifests the importance that [ ] must [be] give[n] to the plaintiff's choice . . . [W]hen the transferee venue is

---

[130] 28 U.S.C. § 1404(a).
[131] *See Time Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).
[132] *See* 28 U.S.C. § 1404(a).
[133] *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

not clearly more convenient than the venue chosen by the plaintiffs, the plaintiff's choice should be respected."[134]

In its Motion to Dismiss, the only support Rippy provides in support of a transfer of venue is the fact that the underlying lawsuit and many of the underlying fact witnesses are in Texas; these factors, however, are irrelevant.[135]  The instant action seeks a declaration of non-coverage under the ASIC Policy for Knight's liability, which has already been established through a trial and judgment in the Underlying Lawsuit.[136]  Rippy's Motion to Dismiss is devoid of any other support and Rippy has failed to provide support for any of the six factors.[137] The ASIC Policy was issued to Knight in Louisiana through a Louisiana broker.[138] Louisiana has an interest in adjudicating disputes over contracts entered into in Louisiana. Further, Louisiana law will apply to the interpretation of the ASIC Policy.[139] It is unlikely that any witnesses will be called at the trial of this declaratory judgment action; indeed, it is likely this action will be resolved via the summary judgment process, as opposed to trial, as this Court will be asked to apply the policy terms to the already-established underlying facts.

When a defendant is hauled into court, some inconvenience is expected and acceptable.[140] Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.[141] In other words, the

---

[134] *Id.*
[135] Rippy continues to wrongfully allege that Risk Specialists is a citizen of Texas. As asserted in the notice of removal in the Southern District of Texas, Risk Specialists is *not* a citizen of Texas. *See* Exhibit A.
[136] *See* R. Doc. 1.
[137] *See generally* R. Doc. 36-1.
[138] *See* Exhibit G; R. Doc. 1-11.
[139] *See Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F.Supp. 3d 574, 580 (E.D. La. 2021), *aff'd sub nom. Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252 (5th Cir. 2022) (noting that Louisiana's choice of law rules provide that "the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract" (citing *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (applying Louisiana law) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999)).
[140] *See Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022).
[141] *Id.*

standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.[142] Rippy has utterly failed to "clearly demonstrate" that the Southern District of Texas is a "clearly more convenient" forum than this district, where the ASIC Policy was issued and where the broker who placed the policy resides.

Therefore, ASIC respectfully submits that this Court should deny Rippy's Motion to Dismiss regarding improper venue and deny transfer venue of the instant action.

## IV.     CONCLUSION

Because the First-Filed Declaratory Judgment Action, which presents an actual controversy and is ripe for adjudication, addresses the same issue as the Second-Filed Declaratory Judgment—i.e., whether or not the ASIC policy provides coverage for the judgment against Knight in the Underlying Lawsuit filed by Rippy—ASIC respectfully requests that this Court deny the Motions to Dismiss and exercise jurisdiction over the instant action.

Respectfully Submitted,

*/s/ Robert I. Siegel*
ROBERT I. SIEGEL (#10263)
ALISTAIR M. WARD (#24693)
**GIEGER, LABORDE & LAPEROUSE, LLC**
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone:  (504) 561-0400
Facsimile:  (504) 561-1011
E-mail: rsiegel@glllaw.com
E-mail: award@glllaw.com
*Attorneys for AIG Specialty Insurance Company*

[*Certificate of Service on Next Page*]

---

[142] *See id.* (citing *In re Volkswagon*, 545 F.3d at 314–315).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of April 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties to this proceeding**.**

*/s/ Robert I. Siegel*
ROBERT I. SIEGEL (#10263)
